VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

JIMMY A. LAMPLEY, )
 )
              Petitioner, )
 )
vs. )
MARC ANTRIM, and )
SCOTT J. NORDSTRAND, )
 )
              Respondents )
 )   Case No.: A05-293 Cv. (RRB)

## SUPPLEMENT TO AMENDED 28 U.S.C. § 2254 PETITION

COMES NOW Jimmy A. Lampley, by and through counsel, David R. Weber, of the firm of Vasquez & Weber, P.C., and submits this, his Supplement To Amended 28 U.S.C. § 2254 Petition. By Order dated December 22, 2005 this Court directed appointed counsel for Mr. Lampley to confer with him and file an amended 28 U.S.C. 2254 petition or state that no amended petition would be filed. With this document and the amended form document as well as the various attachments and Exhibits to each, Mr. Lampley complies with the Court's Order.

Petitioner, Jimmy A. Lampley, petitions this Court for a writ of *habeas corpus*, and by this verified petition, alleges as follows:

### I.    FACTS ALLEGED

1.    In December of 1997, Mr. Lampley had a fight with his girlfriend, D.M. As a consequence, Mr. Lampley was arrested and placed in the Cook Inlet Pretrial Facility ("CIPT").

2.    On January 7, 1998, D.M. availed herself of Alaska Statute ("AS") 18.66.100 *et seq*. and secured an *ex parte* domestic violence restraining order ("DVRO") against Mr. Lampley in <u>D.M. v. Lampley</u>, 3AN-98-44 DV. Exhibit A.

3. Mr. Lampley was not notified of D.M.'s legal action in <u>D.M. v. Lampley</u>, 3AN-98-44 DV. before the January 7, 1998 Order was issued. Mr. Lampley was still in CIPT at the time. Due to both ignorance of <u>D.M. v. Lampley</u>, 3AN-98-44 DV. and indigency, Mr. Lampley was not represented at the hearing in <u>D.M. v. Lampley</u>, 3AN-98-44 DV. The State of Alaska did not provide counsel to indigent respondents at AS § 18.66.100 *et seq.* hearings as of January 7, 1998.

4. As of January 7, 1998, an *ex parte* hearing pursuant to AS § 18.66.100 *et seq.* could result in a DVRO: depriving respondents of rights to speech and association (AS § 18.66.100 (c)(2)); depriving respondents of real property (AS § 18.66.100 (c)(3)); depriving respondents of freedom of movement and association (AS § 18.66.100 (c)(4)); depriving respondents of child custody (AS § 18.66.100 (c)(9)), require respondent to pay money for support (AS § 18.66.100 (c)(12)); and award "other relief" (AS § 18.66.100 (c)(16). AS § 18.66.110. Respondents then become subject to a specialized criminal law, applicable only to them. AS § 11.56.740.

5. The January 7, 1998 *ex parte* DVRO in <u>D.M. v. Lampley</u>, 3AN-98-44 DV. imposed a prior restraint on Mr. Lampley's speech. Mr. Lampley was forbidden to "telephone, contact or otherwise communicate, directly or indirectly" with D.M.[1] There was no time when communication was to be allowed. There was no place where communication was to be allowed. There was no manner in which communication was to be allowed. A review of the hearing record reveals

---

[1] Mr. Lampley was also ordered "not to threaten to commit or commit acts of domestic violence stalking or harassment." Except insofar as non threatening speech in violation of such an order is defined as "domestic violence" (which it is, AS 18.66.990(3)(G)), Mr. Lampley does not dispute his obligation not to threaten D.M. with violence.

no effort to limit the scope of the Order so as to burden no more speech than was necessary to achieve the legitimate end of the State.[2]

6. Between January 7, 1998 and January 26, 1998, Mr. Lampley wrote a number of letters, from jail. Exhibit B, pages 1 - 35.[3] The letters contain no threats of violence.

7. On January 26, 1998, there was another hearing in D.M. v. Lampley, 3AN-98-44 DV. to determine whether a long term DVRO would issue. As of Januyary 26, 1998, a long term DVRO hearing pursuant to AS § 18.66.100 *et seq*. could result in a DVRO: depriving respondents of rights to speech and association (AS § 18.66.100 (c)(2)); depriving respondents of real property (AS § 18.66.100 (c)(3)); depriving respondents of freedom of movement and association (AS § 18.66.100 (c)(4)); depriving respondents of the right to bear or possess arms (AS § 18.66.100 (c)(6) and (7)); depriving respondents of child custody (AS § 18.66.100 (c)(9)), require respondent to pay money for support, award damages, fees and costs (AS § 18.66.100 (c)(12) (13) and (14)); and award "other relief" (AS §

---

[2] This DVRO was not unique in its breadth. Most, if not all, DVROs preclude all speech of any sort, all the time, everywhere to the specified targets. Skywriting and a newspaper add would violate the standard terms.

[3] Counsel for Mr. Lampley has tried to provide legible copies of the letters from materials in the files. Where identified, notes of prior counsel have been removed from the letters. Discovery markings have been removed from the letters. Black splotches, where not associated with any content, have been removed from the letters. In undertaking this process, counsel has tried to be extremely cautious but feels obliged to notify the Court and the State of the alterations. The State is, presumably, in possession of the original letters. The letters in the Alaska Trial Court file have been redacted and thus do not reveal all Mr. Lampley wrote. The letters' contents were compared with the last Amended complaint to ensure that they were the subjects of the various Counts and the letters are in order, by Count.

1  18.66.100 (c)(16). Respondents continue to be subject to a specialized criminal law, applicable only to them. AS § 11.56.740.

8. On January 26, 1998, Mr. Lampley was still in CIPT. He was still indigent and did not have counsel to represent him at the hearing. The State did not provide Mr. Lampley with counsel. As of January 26, 1998, the Alaska Department of Corrections ("DOC") did not allow pretrial inmates to attend their civil hearings either in person or telephonically. Mr. Lampley was not allowed to attend the January 26, 1998 hearing, either in person or telephonically.

9. On January 26, 1998, the Alaska Court issued a long tern DVRO imposing a prior restraint on Mr. Lampley's speech in D.M. v. Lampley, 3AN-98-44 DV. Exhibit C. Mr. Lampley was forbidden to "telephone, contact or otherwise communicate, directly or indirectly" with D.M. In addition, the Alaska Court specifically forbid "letter writing." There was no time when communication was to be allowed. There was no place where communication was to be allowed. There was no manner in which communication was to be allowed. A review of the hearing record reveals no effort to limit the scope of the order so as to burden no more speech than was necessary to achieve the legitimate end of the State.

10. After January 26, 1998, Mr. Lampley wrote a number of letters, from jail. Exhibit B, pages 36 - 39. The letters contain no threats of violence.

11. Based on the letters contained in Exhibit B Mr. Lampley was charged by the State of Alaska with violation of AS § 11.56.740. State of Alaska v. Jimmy Lampley, 3AN-S98-397 Cr. The final Amended Complaint was filed on October 6, 1998 and alleged thirteen Counts. Exhibit D.

12. The order of the letters in Exhibit B corresponds to the Counts in Exhibit D.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122     FACSIMILE (907) 279-9123

1     13. In January of 1998, the Alaska Public Defender Agency ("PD") began providing counsel to Mr. Lampley in State of Alaska v. Jimmy Lampley, 3AN-S98-397 Cr.

    14. On January 21, 1998 the PD moved to withdraw from State of Alaska v. Jimmy Lampley, 3AN-S98-397 Cr. On February 5, 1998 that motion was denied.

    15. Mr. Lampley made numerous requests to represent himself in the Trial Court in State of Alaska v. Jimmy Lampley, 3AN-S98-397 Cr. The requests were all denied.

    16. In July 1998, while in State custody, Mr. Lampley was assaulted by another PD client. Mr. Lampley reported the assault to the State of Alaska. Mr. Lampley communicated the fact of the assault to the Public Defender, Ms. Barbara Brink, on July 24, 1998.[4]

---

[4] From 1989 to 1996, undersigned counsel worked for the PD and Ms. Brink. The small handwriting is hers. From the context of remainder of the PD file it appears that the other handwriting belongs to Ms. Farrell. Upon information and belief, "VN" stands for Mr. Vennie E. Nemecek, a PD and the author of the January 21, 1998 Motion to Withdraw.

> 7/24/98 pc Jimmy Lampley
> The sgt. yesterday comes into jail and cuts the phone off while I'm off - Now have a problem w/ inmate in here too....
>
> Jill needs to come down here and see me. I can't get through on the phone. She needs to take a picture of my face - another inmate assaulted me - Chu Lee - The sgt. just sat there and laughed because she got in trouble for hanging up the phone during a telephonic court hearing. YOUR CLIENT - VN represents an misdo assault on jail guard of CIPT
>
> 7/24/98 spoke to Frank Lake - Asked to use an investigator, go down & take pictures of Lampley's face at CIPT

17. On or about July 30, 1998, Mr. Lampley communicated the fact of the PD client assault to the Court in an effort to secure new counsel. On October 5, 1998 Mr. Lampley's renewed effort to have the PD withdraw because it represented his assailant was denied. [Tape 33-750, l 550] On October 6, 1998, Mr. Lampley again tried to have the PD withdraw and he was again denied. [Tape 35-852, l. 657 – 1618]

18. On or about October 7, 1998, Mr. Lampley allegedly engaged in a criminal act in Court during the State of Alaska v. Jimmy Lampley, 3AN-S98-397 Cr. proceedings. His counsel was a witness. On October 8, 1998, Mr. Lampley sought new counsel because his counsel had become a witness against him. [Tape B2-835, l. 3950 – end; Tape B2-836, l. 1 – 831; 1380; 2025 – 2144] Mr. Lampley's request was denied. See, Exhibit E.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122    FACSIMILE (907) 279-9123

19. At no time prior to trial in <u>State of Alaska v. Jimmy Lampley</u>, 3AN-S98-397 Cr. did Mr. Lampley's counsel raise any issue concerning Mr. Lampley's Constitutional right to Freedom of Speech. U.S. Const., Amend. I.

20. At no time during trial of <u>State of Alaska v. Jimmy Lampley</u>, 3AN-S98-397 Cr. did Mr. Lampley's counsel raise any issue concerning Mr. Lampley's Constitutional right to Freedom of Speech. U.S. Const., Amend. I.

21. At trial in <u>State of Alaska v. Jimmy Lampley</u>, 3AN-S98-397 Cr. the Trial Court precluded the Defense from arguing to the jury that from January 7 to January 26, 1998 Mr. Lampley was not "subject to" the first DVRO in <u>D.M. v. Lampley</u>, 3AN-98-44 DV. because the DVRO by its terms was effective on "1/7/97" and for twenty days thereafter.

22. On October 21, 1998, Mr. Lampley was convicted as charged on all thirteen Counts in <u>State of Alaska v. Jimmy Lampley</u>, 3AN-S98-397 Cr.

23. At no time after trial but before sentencing in <u>State of Alaska v. Jimmy Lampley</u>, 3AN-S98-397 Cr. did Mr. Lampley's counsel raise any issue concerning Mr. Lampley's Constitutional right to Freedom of Speech. U.S. Const., Amend. I.

24. On December 30, 1998 Mr. Lampley again sought new counsel in <u>State of Alaska v. Jimmy Lampley</u>, 3AN-S98-397 Cr. His request was denied. [Tape 35-908, l. 1260 – 2704]

25. On January 15, 1999, Mr. Lampley again sought to have the PD discharged from <u>State of Alaska v. Jimmy Lampley</u>, 3AN-S98-397 Cr. His request was denied.

26. Mr. Lampley was sentenced on February 5, 1999 in <u>State of Alaska v. Jimmy Lampley</u>, 3AN-S98-397 Cr.

27. At no time after sentencing in State of Alaska v. Jimmy Lampley, 3AN-S98-397 Cr. did Mr. Lampley's PD counsel raise any issue concerning Mr. Lampley's Constitutional right to Freedom of Speech. U.S. Const., Amend. I.

28. The PD represented Mr. Lampley on appeal of State of Alaska v. Jimmy Lampley, 3AN-S98-397 Cr. The appeal was denominated Lampley v. State, A-7539.

29. On August 30, 2000 Mr. Lampley moved for appointment of counsel in State of Alaska v. Jimmy Lampley, 3AN-S98-397 Cr. so he could pursue a claim for Ineffective Assistance of Counsel. Exhibit F.

30. On September 7, 2000 the PD filed its appellate brief in Lampley v. State, A-7539. Exhibit G.

31. Unable to obtain the assistance of counsel, Mr. Lampley filed his own Application For Post Conviction Relief ("PCR") in the State of Alaska v. Jimmy Lampley, 3AN-S98-397 Cr. matter. The PCR was finally accepted for filing on December 26, 2000 and denominated Lampley v. State of Alaska, 3AN-00-13209 Ci. Exhibit H.

32. On March 23, 2001 the PD moved to withdraw from Lampley v. State, A-7539, citing the existence of Lampley v. State of Alaska, 3AN-00-13209 Ci. Exhibit I. The motion was denied on April 4, 2001. Exhibit J.

33. On October 12, 2001 the Alaska Court of Appeals denied all relief to Mr. Lampley in Lampley v. State, A-7539. (Lampley v. State, 33 P.3d 184 (Alaska App. 2001)). Exhibit K.

34. PD counsel did not have any tactical reason for not raising Mr. Lampley's Constitutional right to Freedom of Speech in State of Alaska v. Jimmy Lampley, 3AN-S98-397 Cr. or Lampley v. State, A-7539. U.S. Const., Amend. I.

35. The failure to raise Mr. Lampley's Constitutional right to Freedom of Speech as a defense in <u>State of Alaska v. Jimmy Lampley</u>, 3AN-S98-397 Cr. or <u>Lampley v. State</u>, A-7539, a criminal case involving non-threatening written speech, was a professional error and deprived Mr. Lampley of effective assistance of counsel.

36. Requiring Mr. Lampley to go to trial and appeal in <u>State of Alaska v. Jimmy Lampley</u>, 3AN-S98-397 Cr. or <u>Lampley v. State</u>, A-7539 with counsel who had conflicts of interest deprived Mr. Lampley of effective assistance of counsel. The conflict of interest adversely affected the attorneys' performance.

37. On April 30, 2001 Mr. Lampley filed a First Amended Application For Post Conviction Relief. On November 18, 2002, Mr. Lampley filed his Second Amended Application For Post Conviction Relief. Exhibit L.

38. On June 13, 2003 the Alaska District Court entered an Order Denying Post Conviction Relief in <u>Lampley v. State of Alaska</u>, 3AN-00-13209 Ci. There was no evidentiary hearing or discovery prior to the dismissal. Exhibit M.

39. On February 16, 2005, in <u>Lampley v. State</u>, A-8629, the Alaska Court of Appeals affirmed the Alaska District Court's dismissal of <u>Lampley v. State of Alaska</u>, 3AN-00-13209 Ci. Exhibit N

40. On May 5, 2005, in <u>Lampley v. State</u>, S-11849 the Alaska Supreme Court declined to hear Mr. Lampley's appeal of the Alaska Court of Appeals' decision in in <u>Lampley v. State</u>, A-8629 affirming <u>Lampley v. State of Alaska</u>, 3AN-00-13209 Ci. Exhibit O.

41. Mr. Lampley incorporates his First Amended Petition For Writ of *Habeas Corpus* herein as if fully set forth at this point.

1   42.     Mr. Lampley is unlawfully confined as a result of State v. Lampley, 3AN-S98-397 Cr.

## II.    LEGAL OVERVIEW

### A.    Freedom of Speech

There is an obvious constitutional problem with a conviction predicated on speech.[5] In Virginia v. Black, 538 U.S. ___, 123 S. Ct. 1536; 155 L. Ed. 2d 535 (2003) the Court addressed "cross burning" as "speech." After analyzing cross burning as a potential "true threat" ***and*** as permissible, protected speech, the Court allowed (5/3) the criminalization of cross burning ***only where done with the intent to intimidate*** if that intimidation amounted to a "***true threat***." The Court found the statutory presumption of an intent to intimidate unconstitutional: that is, not all cross burnings, all the time, everywhere may be forbidden. Black, 123 S. Ct. at 1550 - 1551. Thus, ***some narrow tailoring was required***.

Black is a recent reaffirmation of old law. An assaultive "threat" must be a "true threat," one that on its face and in the circumstances in which it is made, is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution. Watts v. United States, 394 U.S. 705 (1969); United States v. Kelner, 534 F.2d 1020, 1027 (2d. Cir.1976).

Here there was no assaultive threat much less a "true threat." Here is a prosecution based solely on the violation of a facially overbroad DVRO. A Court Order is supposed to be more circumspect of speech, not less.

---

[5]    U.S. Const., Amend. I, XIV.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122    FACSIMILE (907) 279-9123

Many of the seminal freedom of speech cases are directed at judicial orders. New York Times Co. v. United States, 403 U.S. 713 (1971); National Socialist Party v. Skokie, 432 U.S. 43 (1977); Vance v. Universal Amusement Co., 445 U.S. 308 (1980); Madsen v. Women's Health Center, Inc., 512 U.S. 753, (1994). Madsen explains that the traditional time, place and manner analysis ***is insufficient*** in addressing a judicial injuction. Injunctions carry "***greater risks of censorship and discriminatory application*** than do general ordinances […] these differences require a somewhat ***more stringent application*** of general First Amendment principles in this context." The Court "must ask instead whether the challenged provisions of the injunction ***burden no more speech than necessary to serve a significant government interest***." Madsen, 512 U.S. at 764 – 765 [emphasis supplied]; citing Califano v. Yamasaki, 442 U.S. 682, 702 (1979) and Railway Express Agency, Inc. v. New York, 336 U.S. 106, 112 - 113 (1949) ("[T]here is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally.") In evaluating a content-neutral injunction, the governing standard is whether the challenged provision burdens no more speech than necessary to serve a significant government interest. Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 184 (1968). The order must be couched in the narrowest terms that will accomplish its pinpointed objective. Id., at 183.

"No contact, direct or indirect," fails to make even a token effort at complying with Madsen's requirement to "burden no more speech than necessary" or to "pinpoint" the objective. Indeed, the second DVRO was crafted to be sure to burden letter writing.

## B. Due Process, The Rights to Response and Counsel

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) noted that a fundamental tenant of Due Process of Law[6] is an opportunity to respond. Quoting Grannis v. Ordean, 234 U.S. 385, 394 (1914), Mullane observed: "The fundamental requisite of due process of law is the opportunity to be heard." See also, Nelson v. Adams USA, Inc., 529 U.S. 460 (2000). "[D]ue process does not countenance such swift passage from pleading to judgment in the pleader's favor. Id. at 465. That opportunity, at a minimum, requires that *someone* be allowed to show up and contest for the side in question. Depending on the circumstances, Due Process may require that the someone be an attorney.

Bounds v. Smith, 430 U.S. 817, 828 (1977) notes that that States must affirmatively protect a prisoner's right of access to the Courts. Bounds traced its roots to cases where the Court protected the right of access to the courts by prohibiting state prison officials from actively interfering with inmates' attempts to prepare legal documents, *e. g.,* Johnson v. Avery, 393 U.S. 483 (1969), or file them, *e. g.,* Ex parte Hull 312 U.S. 546, 547 – 549 (1941). Precedent required the States to waive filing fees, *e. g.,* Burns v. Ohio, 360 U.S. 252, 258 (1959) and transcript fees, *e. g.,* Griffin v. Illinois, 351 U.S. 12, 19 (1956) for indigent inmates. I beggars the imagination that a State required to do those things would be allowed to prevent an (un-convicted) inmate from responding to serious charges against him. Yet Mr. Lampley was deprived of access to the Court and his

---

[6] U.S. Const. Amend. V, XIV.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123

opportunity to respond: he was in jail. He was not allowed to attend by person or by telephone.[7] Nor was he afforded or offered the assistance of counsel.

As noted in Gideon v. Wainwright, 372 U.S. 335, 345 (1963), "Even the intelligent and educated layman has small and sometimes no skill in the science of law." The potential penal consequences of a DVRO make them very critical proceedings. In addition, DVROs intrude into the most basic of constitutionally protected rights and behaviors (speech, association, right to bear arms, possession/use of real and personal property, obligations to pay money, requirements of substance abuse counseling including residential treatment, obligations to refrain from the lawful ingestion of alcohol, loss of child custody and visitation.).

Mathews v. Eldridge, 424 U.S. 319, 335 (1976), provides a three step analysis in deciding what Due Process requires. What are the private interests at stake? What is government's interest? What is the risk that the procedure used will lead to erroneous decisions? These elements must balanced against each other, to determine whether Mr. Lampley had: a) a right to be allowed to be present at the DVRO hearings; and b) a right to the assistance of appointed counsel at the DVRO hearings.

The failure to offer Mr. Lampley the assistance of counsel at the DVRO proceedings, especially where done without prior notice and where the State

---

[7] The Trial Court found fault with Mr. Lampley's failure to present State documents or testimony concerning the Department of Corrections policy. Of course, Mr. Lampley's opponent controls those documents and witnesses. Further, this matter was disposed on summary disposition, before the parties were allowed to engage in any civil discovery. Finally, neither the State nor the Court asserted this evidentiary "failure" as a basis for dismissal prior to dismissal.

prevented any response, was unconstitutional. The risk of error in one sided proceedings is high. The State's interest in distributing *ex parte* DVROs in situations where the *situs* of the respondent is known to be jail is low. The State's interest between the two contesting litigants is supposed to be neutral. Therefore the State's interest in preventing the respondent from responding is low. Conversely, the respondent's interests at risk are very significant and of constitutional dimension. The indigent inmate Mr. Lampley should have been afforded the opportunity to respond and to be represented by appointed counsel at both DVRO hearings. If the State cannot allow attendance for a response then the need for appointed counsel is all the greater.

## C. Ineffective Assistance of Conflicted Counsel

The Sixth Amendment[8] provides that a criminal defendant shall have the right to the assistance of counsel for his defense. The assistance of counsel who are ineffective does not meet the constitutional mandate. Strickland v. Washington, 466 U.S. 668, 685-686 (1984). Where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" a Sixth Amendment violation occurs. Strickland, 466 U.S. at 694.

As noted above, Mr. Lampley's PD counsel failed to raise the First Amendment as a defense in a criminal trial based upon letters. That is an "unprofessional error." The magnitude of that error makes it reasonably probable that the result in State v. Lampley, 3AN-S98-397 Cr. would have been different.

---

[8] U.S. Const., Amend. VI.

In addition however, PD counsel labored under a conflict of interests. Mr. Lampley was assaulted by PD client. His own lawyer became a potential witness against him. If the PD and The Alaska Court did not recognize the conflicts, Mr. Lampley certainly did. He lost all trust in his PD counsel.

While <u>Mickens v. Taylor</u>, 535 U.S. 162 (2002) requires Mr. Lampley to establish that the conflict of interest adversely affected his trial attorney's performance, he can do so. Unlike Mr. Mickens, Mr. Lampley knew of his attorneys' conflicts at the time. As a consequence, they were at loggerheads throughout. Representation was harmed by the lack of trust and there was good reason for the lack of trust: the conflicts.

**D.     Trial by Jury**

Whether Mr. Lampley was "subject to" the DVROs was an element of the crimes charged. Mr. Lampley was precluded from disputing that element to the jury. That evidentiary ruling was not "harmless beyond a reasonable doubt." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 630 – 638 (1993); <u>Chapman v. California</u>, 386 U.S. 18, 22- 24 (1967)

**E.     Self Representation**

The right to represent one's self is constitutionally protected. <u>Faretta v. California</u>, 422 U.S. 806, 821 (1975). Faced with conflicted counsel, and denied alternative counsel, Mr. Lampley tried to represent himself. He was not allowed to do so.

### III.     PRAYER FOR RELIEF

WHEREFORE, premises considered, Mr. Lampley prays for relief as follows:

A. This Court should take judicial notice of the records of the Alaska Court System in State v. Lampley, 3AN-S98-397 Cr., Lampley v. State, 33 P.3d 184 (Alaska App. 2001) [A-7539], Lampley v. State, 3AN-00-13209 Ci., Lampley v. State, A-8629, and Lampley v. State, S-11849;

B This Court should Order an evidentiary hearing at which petitioner can prove his allegations;

C. This Court should issue a Writ of *Habeas Corpus* or, alternatively, Order respondent to show cause before this court why Mr. Lampley's convictions should not be set aside;

D. Upon final review of the petition, this Court should order that Mr. Lampley's convictions be set aside;

E. This Court should provide such other relief as may be deemed appropriate and in the interests of justice.

Respectfully submitted this 23rd day of January 2006.

Vasquez & Weber, P.C.
Attorneys for Jimmy A. Lampley

S.S.: David R. Weber,
Ak. Bar Assn. No. 8409083

I attest that the forgoing is true and correct to the best of my knowledge.

Jimmy A. Lampley

S.S.: Jimmy Lampley