IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA, ) | FILED |
| ) | IN THE CHAMBERS OF |
| Plaintiff, ) | PETER A. MICHALSKI |
| ) | Superior Court |
| vs. ) | State of Alaska, Third District |
| ) | Time 4:00 pm |
| JIMMY LAMPLEY, ) | Date 10-8-98 |
| ) | Initials LJ |
| Defendant. ) | |
| _____ ) | Case No. 3AN-S98-397 Cr. |

VRA CERTIFICATION    I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any crime unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

### MOTION TO RECUSE JUDICIAL OFFICER

Comes now the Defendant, Jimmy Lampley, by and through counsel Jill E. Farrell, Assistant Public Defender, and hereby moves for recusal of the Honorable Natalie Finn as the judicial officer in the above captioned case.

### I. FACTS

On October 7, 1998, the above-captioned case was set for trial before the Honorable Natalie Finn. This was the second day of the jury trial, but due to pre-trial matters, the jury panel had not yet been brought into the courtroom. Mr. Lampley was transported from Cook Inlet Pre-Trial Facility to the courthouse in handcuffs only. When he arrived at the courthouse, the Judicial Services Officers placed him in leg



Exhibit E
Page 1 of 6

irons. Mr. Lampley complained that the particular leg irons being used on him caused him pain, and that he could not walk with them on. Eventually, the leg irons were removed, Mr. Lampley was escorted into the courtroom in handcuffs only, and he complied as the officers placed him again in leg irons and secured the leg irons to an I-bolt in the floor.

Mr. Lampley was informed that the bail hearing he had scheduled in his municipal cases was being moved up from 1:30 p.m. to 11:30 a.m. Mr. Lampley requested that he be able to contact either his attorney on those cases or the third-party custodian he had intended to propose at the bail hearing. The court denied Mr. Lampley's request.

At this point, Mr. Lampley expressed dissatisfaction with the court's ruling, arguing his due process rights were being violated. The court informed him that he was being disruptive, that he would get three chances to remain in the courtroom, that he would be removed for the third outburst, and that he had just used "strike" number one. In response, Mr. Lampley stated "F___ing C___." Mr. Lampley denies this comment was directed at the court, but rather the complaining witness in this case and a municipal assault case.

The court "struck him out" - strike two for the "F" word, and strike three for the "C" word. Mr. Lampley calmed down for

2

a moment and politely requested to be able to remain in the courtroom. The court informed Mr. Lampley that it was too late and that he would be removed.

The Judicial Services officers then handcuffed Mr. Lampley, unbolted him from the floor, and wheeled him towards the prisoner transport door. As they stopped to open the door, Mr. Lampley spit at Officer Kornchuk, causing spit to land on the officer and Assistant District Attorney KeriAnn Scott.

Anchorage Police Department responded and took witness statements from all those present, including Judge Finn. Mr. Lampley was subsequently cited for Disorderly Conduct.

On October 8, 1998, Mr. Lampley moved to have Judge Finn recuse herself from the case. On record, the court phoned Municipal Prosecutor John Richards, who informed the court that neither defense counsel nor Judge Finn would be called as witnesses in the case against Mr. Lampley. Nonetheless, Mr. Lampley asserts that the fact Judge Finn witnessed the alleged offense and the fact that she gave a statement against him to the police officer creates at minimum the appearance of partiality in the above captioned case.

## II. ARGUMENT

AS 22.20.020(a)(9) states that a state judge must refrain from acting in any matter in which the judge "feels that, for any reason a fair and impartial decision cannot be given".

In Perotti v. State, 806 P.2d 325, 327 (Alaska App. 1991) (citations omitted), the court evaluated AS 22.20.020 (a)(9) as follows:

> Although this provision speaks only of actual impartiality, under Canon 3(c)(1) of the Code of Judicial Conduct, which provides that a judge "should disqualify himself in a proceeding in which his impartiality might reasonably be questioned", a judge challenged under AS 22.20.020(a)(9) is independently required to consider not only actual impartiality, but also the appearance that is likely to flow from participation in the case at issue. Moreover, the need to consider the appearance of impartiality seems implicit in the language of AS 22.20.020(a)(9), for whenever it is predictable that an unmistakable appearance of bias will arise from a judge's participation in a case, there will be "reason" for concluding that " a fair and impartial decision cannot be given."

The requirement that the court appear impartial promotes a separate value from the requirement that the court be free of actual bias. The appearance of impartiality by the court fosters public confidence in the judiciary. Perotti v. State, 806 P.2d at 327. Therefore, in assessing the appearance of impartiality, an objective test is used. If a reasonable person, with knowledge of the facts would harbor doubts about

Alaska Public Defender Agency
900 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 264-4400

4

the judge's impartiality, the judge must step aside. Code of Judicial Conduct, Canon 3C(1). See Note, <u>Disqualification of Judges and Justices in the Federal Courts</u>, 86 Harv. L.Rev. 736, 745 (1973).

In <u>In re Allied-Signal, Inc</u>, 891 F.2d 967 (1st Cir. 1989), the court applied three factors to determine whether an appearance of partiality is likely to occur:

> 1. The more common a potentially biasing circumstance and the less easily avoided it seems, the less likely the circumstance will appear to be a sign of partiality.
> 2. The greater the likelihood the potentially disqualifying circumstance facilitates just resolution of the case, the less likely the reasonable observer will be to believe judicial partiality exists.
> 3. The reasonable observer will rely on words and deeds in concluding judicial partiality exists.

Applying the <u>Allied-Signal</u> factors to this case demonstrates that a reasonable observer would conclude that the appearance of judicial partiality exists in this case. It is not a common event for the court to witness a defendant committing an alleged offense and be called upon to give a statement to a police officer. A reasonable observer of the events in the courtroom that day would believe that judicial partiality exists as a result thereof.

5

Exhibit E
Page 5 of 6

Based on the above arguments, the Honorable Natalie Finn should have recused herself from the above-captioned case.

Respectfully submitted this 8th day of October, 1998, at Anchorage, Alaska.

_Jill E. Farrell_
Jill E. Farrell
Assistant Public Defender

I Jill Farrell, Assistant Public Defender swear or affirm as follows:

① I am the attorney appointed to represent Mr. Lampley in this case.

② Everything in the motion to recuse is true & correct to the best of my knowledge.

_Jill E. Farrell_
10/8/98

Subscribed and sworn to or affirmed before me at Anchorage, AK on October 8, 1998.

_Lore H. Newby_
Clerk of Court.
My commission expires with office

6