IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JIMMY A. LAMPLEY,                    )
                                     )
                    Appellant,       )
                                     )
        vs.                          )   Court of Appeals No. A-07539
                                     )
STATE OF ALASKA,                     )
                                     )
                    Appellee.        )
_____)

(Trial Court No.  3AN-S98-397 CR)

APPEAL FROM THE DISTRICT COURT
THIRD JUDICIAL DISTRICT
NATALIE FINN, JUDGE

<u>OPENING BRIEF OF APPELLANT</u>

PUBLIC DEFENDER AGENCY

BARBARA K. BRINK (82-06009)
PUBLIC DEFENDER

Michael D. Dieni (8606034)
Assistant Public Defender
900 West 5th Avenue, Suite 200
Anchorage, Alaska  99501
Telephone: (907)264-4400

Filed in the Court of Appeals
Of the State of Alaska
_7-Sep_____ , 2000

MARILYN MAY, CLERK
Appellate Courts

_____
Deputy Clerk

VRA CERTIFICATION AND APP. R. 513.5 CERTIFICATION

I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court. I further certify, pursuant to App. R. 513.5, that the font used in this document is Univers 12.5 point.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

AUTHORITIES RELIED UPON .............................................................................. vi

STATEMENT OF JURISDICTION ........................................................................... 1

ISSUES PRESENTED FOR REVIEW ..................................................................... 2

STATEMENT OF THE CASE .................................................................................. 3

      A.   Introduction ........................................................................................... 3

      B.   Facts ..................................................................................................... 3

           1.  The Offense ................................................................................... 5

           2.  State's Protective Order and Defendant's Motion for Judgment of Acquittal Regarding Effective Date of First Protective Order ............................................................................ 5

           3.  Self-representation ........................................................................ 6

           4.  Excessive Sentence ...................................................................... 7

ARGUMENT ............................................................................................................ 8

  I.    THE TRIAL COURT ERRED BY FAILING TO GRANT MR. LAMPLEY'S MOTION FOR JUDGMENT OF ACQUITTAL ........................ 8

      A. Standard of Review ............................................................................... 8

      B. Argument .............................................................................................. 8

  II.   THE TRIAL COURT ERRED BY TAKING JUDICIAL NOTICE OF AN ELEMENT OF THE OFFENSE AND FORECLOSING ARGUMENT TO THE JURY CHALLENGING THE ENFORCEABILITY OF THE PROTECTIVE ORDER .............................. 10

      A.  Standard of Review ............................................................................. 10

      B. Argument ............................................................................................ 11

  III. THE TRIAL COURT DENIED MR. LAMPLEY HIS CONSTITUTIONAL RIGHT TO SELF-REPRESENTATION AND FORCED HIM TO PROCEED THROUGH TRIAL WITH COUNSEL HE DID NOT TRUST ................................................................................. 12

IV. THE SENTENCE IS EXCESSIVE ................................................................. 16

    A.  Standard of review ..................................................................... 16

    B.  Argument.................................................................................... 16

CONCLUSION .......................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

Adams v. State,
  829 P.2d 1201 (Alaska App. 1992) ........................................................................ 14

Allen v. State,
  759 P.2d 541 (Alaska App. 1988); ........................................................................ 17

Burks v. State,
  748 P.2d 1178 (Alaska App.1988) ........................................................................ 13

Chapman v. California,
  386 U.S. 18, 22-24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), partially overruled
  by Brecht v. Abrahamson, 507 U.S. 619, 630-38, 113 S.Ct. 1710, 123
  L.Ed.2d 353 (1993) .............................................................................................. 11

Collins v. State,
  977 P.2d 741 (Alaska App. 1999) .......................................................................... 8

Curl v. State,
  843 P.2d 1244 (Alaska App. 1992) ...................................................................... 17

Dorman v. State,
  622 P.2d 448 (Alaska 1981) ................................................................................... 8

Evans v. State,
  550 P.2d 830 (Alaska 1976) ................................................................................. 11

Faretta v. California,
  422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) .......................................... 13

Fielding v. State,
  842 P.2d 614 (Alaska App.1992); ........................................................................ 12

Guin v. Ha,
  591 P.2d 1281 n.6 (Alaska 1979) ........................................................................ 11

Hancock v. State,
  706 P.2d 1164 (Alaska App. 1985) ...................................................................... 17

Jacko v. State,
  981 P.2d 1075 (Alaska App. 1999) ...................................................................... 10

Knix v. State,
  922 P.2d 913 (Alaska App. 1996) ........................................................................ 14

M.R.S. v. State,
  897 P.2d 63 (Alaska 1995)................................................................................. 10

Maal v. State,
  670 P.2d 708 (Alaska App. 1983) ....................................................................... 17

McClain v. State,
  519 P.2d 811 (Alaska 1974)............................................................................... 16

McCracken v. State,
  518 P.2d 85 (Alaska 1974)........................................................................... 13, 15

McKaskle v. Wiggins,
  465 U.S. 168, 104 S.Ct. 944 (1984). .................................................................. 14

Ortberg v. State,
  751 P.2d 1368 (Alaska App.1988) ...................................................................... 13

Rae v. State,
  884 P.2d 163(Alaska App. 1994) ........................................................................ 12

Ross v. State,
  586 P.2d 616 ( Alaska 1978);............................................................................... 8

Sheldon v. State,
  796 P.2d 831 (Alaska App. 1990) ......................................................................... 8

Simpson v. State,
  877 P.2d 1319 (Alaska App.1994) ........................................................................ 8

Smallwood v. State,
  781 P.2d 1000 (Alaska App.1989) ...................................................................... 12

Smithart v. State,
  988 P.2d 583 (Alaska 1999).......................................................................... 10, 11

State v. Andrews,
  707 P.2d 900 (Alaska App. 1985) ....................................................................... 18

## Statutes

AS 12.55.135.............................................................................................. 16

AS 11.56.740...................................................................................... 8, 11, 16

AS 18.66.100............................................................................................... 9

AS 18.66.180............................................................................................... 9

## Rules

Alaska Appellate Rule 202 .............................................................................. 1

Alaska Appellate Rule 215 .............................................................................. 1

Alaska Evidence Rule 203(c) ......................................................................... 12

Alaska Rule of Civil Procedure 58.1.(2) ............................................................ 9

Alaska Rule of Civil Procedure 60(a) ............................................................... 10

## Constitutional Provisions

Alaska Constitution, Art. 1 Sec. 11 ................................................................. 14

United States Constitution, Amendment VI ......................................... 5

## AUTHORITIES RELIED UPON

### STATUTES

**Alaska Statute 12.55.135 provides:**

Sentences of imprisonment for misdemeanors. (a) A defendant convicted of a class A misdemeanor may be sentenced to a definite term of imprisonment of not more than one year.

(b) A defendant convicted of a class B misdemeanor may be sentenced to a definite term of imprisonment of not more than 90 days unless otherwise specified in the provision of law defining the offense.

(c) A defendant convicted of assault in the fourth degree committed in violation of the provisions of an order issued under AS 25.35.010 or 25.35.020 shall be sentenced to a minimum term of imprisonment of 20 days.

(d) A defendant convicted of assault in the fourth degree upon a uniformed or otherwise clearly identified peace officer, fire fighter, correctional officer, emergency medical technician, paramedic, ambulance attendant, or other emergency responder who was engaged in the performance of official duties at the time of the assault shall be sentenced to a minimum term of imprisonment of 30 days.

(e) The execution of a sentence under (c) or (d) of this section may not be suspended and probation or parole may not be granted until the minimum term of imprisonment has been served. Imposition of a sentence under (c) or (d) of this section may not be suspended, except upon condition that the defendant be imprisoned for no less than the minimum term of imprisonment provided in (c) or (d) of this section, and the minimum sentence provided for in (c) or (d) of this section may not be otherwise reduced.

**Alaska Statute 11.56.740. Violating a Protective Order**

(a) A person commits the crime of violating a protective order if the person is subject to a protective order containing a provision listed in AS 18.66.100(c)(1)-(7) and knowingly commits or attempts to commit an act in violation of that provision.

(b) Violation of this section is a class A misdemeanor.

(c) In this section, "protective order" means an order issued or filed under AS 18.66.100-18.66.180.

Alaska Statute 18.66.100. Protective Orders: Eligible Petitioners; Relief

(a) A person who is or has been a victim of a crime involving domestic violence may file a petition in the district or superior court for a protective order against a household member. A parent, guardian, or other representative appointed by the court under this section, may file a petition for a protective order on behalf of a minor. The court may appoint a guardian ad litem or attorney to represent the minor. Notwithstanding AS 25.24.310 or this section, the office of public advocacy may not be appointed as a guardian ad litem or attorney for a minor in a petition filed under this section unless the petition has been filed on behalf of the minor.

(b) When a petition for a protective order is filed, the court shall schedule a hearing, and provide at least 10 days' notice to the respondent of the hearing and of the respondent's right to appear and be heard, either in person or by an attorney. If the court finds by a preponderance of evidence that the respondent has committed a crime involving domestic violence against the petitioner, regardless of whether the respondent appears at the hearing, the court may order any relief available under (c) of this section. The provisions of a protective order issued under

(1) (c)(1) of this section are effective until further order of the court;

(2) (c)(2)-(16) of this section are effective for six months unless earlier dissolved by court order.

(c) A protective order under this section may

(1) prohibit the respondent from threatening to commit or committing domestic violence, stalking, or harassment;

(2) prohibit the respondent from telephoning, contacting, or otherwise communicating directly or indirectly with the petitioner;

(3) remove and exclude the respondent from the residence of the petitioner, regardless of ownership of the residence;

(4) direct the respondent to stay away from the residence, school, or place of employment of the petitioner or any specified place frequented by the petitioner or any designated household member;

(5) prohibit the respondent from entering a propelled vehicle in the possession of or occupied by the petitioner;

(6) prohibit the respondent from using or possessing a deadly weapon if the court finds the respondent was in the actual possession of or used a weapon during

the commission of domestic violence;

(7) direct the respondent to surrender any firearm owned or possessed by the respondent if the court finds that the respondent was in the actual possession of or used a firearm during the commission of the domestic violence;

(8) request a peace officer to accompany the petitioner to the petitioner's residence to ensure that the petitioner

(A) safely obtains possession of the petitioner's residence, vehicle, or personal items;  and

(B) is able to safely remove a vehicle or personal items from the petitioner's residence;

(9) award temporary custody of a minor child to the petitioner and may arrange for visitation with a minor child if the safety of the child and the petitioner can be protected;  if visitation is allowed, the court may order visitation under the conditions provided in AS 25.20.061;

(10) give the petitioner possession and use of a vehicle and other essential personal items, regardless of ownership of the items;

(11) prohibit the respondent from consuming controlled substances;

(12) require the respondent to pay support for the petitioner or a minor child in the care of the petitioner if there is an independent legal obligation of the respondent to support the petitioner or child;

(13) require the respondent to reimburse the petitioner or other person for expenses associated with the domestic violence, including medical expenses, counseling, shelter, and repair or replacement of damaged property;

(14) require the respondent to pay costs and fees incurred by the petitioner in bringing the action under this chapter;

(15) order the respondent, at the respondent's expense, to participate in (A) a program for the rehabilitation of perpetrators of domestic violence that meets the standards set by, and that is approved by, the Department of Corrections under AS 44.28.020(b), or (B) treatment for the abuse of alcohol or controlled substances, or both;  a protective order under this section may not require a respondent to participate in a program for the rehabilitation of perpetrators of domestic violence unless the program meets the standards set by, and that is approved by, the Department of Corrections under AS 44.28.020(b);

(16) order other relief the court determines necessary to protect the petitioner or any household member.

(d) If the court issues a protective order under this section, it shall

(1) make reasonable efforts to ensure that the order is understood by the petitioner and by the respondent, if present;  and

(2) have the order delivered to the appropriate local law enforcement agency for expedited service and for entry into the central registry of protective orders under AS 18.65.540.

(e) A court may not deny a petition for a protective order under this section solely because of a lapse of time between an act of domestic violence and the filing of the petition.


## RULES

### Alaska Appellate Rule 202. Judgments from which appeal may be taken

(a) An appeal may be taken to the supreme court from a final judgment entered by the superior court, in the circumstances specified in AS 22.05.010.

(b) An appeal may be taken to the court of appeals from a final judgment entered by the superior court or the district court, in the circumstances specified in


### Alaska Evidence Rule 203(c).  Procedure for Taking Judicial Notice provides in pertinent part:

***

(c) instructing the jury.  In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed.  In a criminal case, the court shall instruct the jury that it may, but it is not required to, accept as conclusive any fact judicially noticed.  Judicial notice of any matter of law falling within the scope of rule 202 shall be a matter for the court and not the jury.


### Alaska Rule of Civil Procedure 58.1(2) Judgments And Orders--Effective Dates And Commencement Of Time For Appeal, Review And Reconsideration

(a) Effective Dates of Orders and Judgments.  Orders and judgments become

effective the date they are entered.

(1) Oral Orders. The date of entry of an oral order is the date the order is put on the official electronic record by the judge unless otherwise specified by the judge. At the time the judge announces an oral order, the judge shall also announce on the record whether the order shall be reduced to writing. If the oral order is reduced to writing, the effective date shall be included in the written order.

(2) Written Orders Not Preceded by Oral Orders. The date of entry of a written order not preceded by an oral order is the date the written order is signed unless otherwise specified in the order.

(3) Judgments. The date of entry of a civil judgment is the date it is signed unless otherwise specified in the judgment. All judgments shall be reduced to writing.

(b) Commencement of Time for Appeal, Review and Reconsideration. The time within which a notice of appeal may be filed and reconsideration or review of orders and judgments may be requested begins running on the date of notice as defined below.

(c) Date of Notice.

(1) Oral Orders.

(i) As to the parties present when an oral order is announced, the date of notice is the date the judge announces the order on the official electronic record, unless at that time the judge announces that the order will be reduced to writing in which case the date of notice is the date shown in the clerk's certificate of distribution on the written order.

(ii) As to parties not present at the announcement of an oral order, the date of notice is the date shown in the clerk's certificate of distribution of notice of the order. If, however, at the time the judge announces the oral order the judge announces that the order will be reduced to writing, the date of notice is the date shown in the clerk's certificate of distribution on the written order.

(2) Written Orders. The date of notice of a written order is the date shown in the clerk's certificate of distribution on the written order.

(3) Judgments. All judgments must be reduced to writing. The date of notice of a judgment is the date shown in the clerk's certificate of distribution on the written judgment.

(4) Other Service Requirements.  The notice provisions apply to the notice of orders and judgments under Rule 73(d) and do not affect the service requirements of any other rule of civil procedure.

(d) Clerk's Certificate of Distribution.  Every written notice of an oral order and every written order and judgment shall include a clerk's certificate of distribution showing the date copies of the notice, order or judgment were distributed, to whom they were distributed, and the name or initials of the court employee who distributed them.

**Alaska Rule of Civil Procedure 60(a)  Relief from Judgment or Order** provides in pertinent part:

(a) Clerical Mistakes.  Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.  During the pendency of an appeal or petition for review to the supreme court, such mistakes may be so corrected before the record is filed in the supreme court, and thereafter may be so corrected with leave of the supreme court.

***

CONSTITUTIONAL PROVISIONS

**Alaska Constitution, Art. 1, Sec. 11** provides in pertinent part:  **Rights of Accused**

In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve, except that the legislature may provide for a jury of not more than twelve nor less than six in courts not of record.  The accused is entitled to be informed of the nature and cause of the accusation;  to be released on bail, except for capital offenses when the proof is evident or the presumption great;  to be confronted with the witnesses against him;  to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

**United States Constitution, Sixth Amendment** provides:

Right to speedy trial, witnesses, etc.  In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusations; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

## STATEMENT OF JURISDICTION

Mr. Lampley appeals to this court from the Judgment and Commitment entered by the Honorable Natalie Finn, District Court Judge, Third Judicial District at Anchorage, Alaska on February 5, 1999. The judgment was distributed on February 5, 1999. Notice of criminal appeal was filed on or about November 9, 1999. This court accepted Mr. Lampley's late-filed notice of appeal by order dated November 19, 1999.

This merit and sentence appeal is brought as a matter of right in accordance with Alaska Appellate Rules 202 and 215. This court has jurisdiction over this appeal from a final judgment pursuant to AS 22.07.020.

## ISSUES PRESENTED FOR REVIEW

I.    Whether the trial court erred by denying Mr. Lampley's motion for judgment of acquittal as to counts I-XI.

II.   Whether the trial court erred by taking judicial notice of a contested element of the offense.

III.  Whether the court erred by denying Mr. Lampley's motion to discharge counsel and represent himself.

IV.   The sentence is excessive.

## STATEMENT OF THE CASE

### A. Introduction

While incarcerated Mr. Lampley wrote thirteen love letters to D.M., his off and on girlfriend for several years. Because these letters allegedly violated domestic violence restraining orders, (hereinafter referred to as DVRO) the jury convicted Mr. Lampley of thirteen correlative counts of Violating a Domestic Restraining Order. (hereinafter VDVRO)   Each count is a Class A misdemeanor. Judge Finn issued thirteen consecutive sentences totaling six years, four months with four years, eight months suspended. Upon release, Mr. Lampley will be on probation for ten years. Mr. Lampley appeals the convictions and the total sentence.

### B. Facts

#### 1. The Offense

On or about December 30, 1997, as she had done two other times during their on again – off again boyfriend-girlfriend relationship, D.M. accused Jimmy Lampley of misdemeanor assault. (Tr. 476-478, 503-504, 507) Police arrested 29 year-old Jimmy Lampley and lodged Mr. Lampley in the Cook Inlet Pretrial Facility (hereinafter CIPT). (Tr. 507, 513, 365)

Eight days later, on or about January 7, 1998, D.M. apparently requested a twenty-day, ex parte restraining order.[1] On January 7, 1998 Officer Latham served

---

[1] The date D.M. applied for the DVRO is unclear. D.M. testified she made the request on Dec. 31, 1997. (Tr. 412) However, review of the petition in D.M vs. Jimmy Lampley Case No. 3AN-S98-00044DV suggests she sought the petition on January 7, 1998.

Mr. Lampley at CIPT with the restraining order. (App. B, Tr. 360-365)

By its own terms, however, the restraining order had already expired. On January 7, 1998 Magistrate Brian Johnson issued a restraining order with an effective date of January 7, **1997**. (App. B, p. 8 of 8)  The date is hand recorded next to the Magistrate's signature. Id.  The restraining order defined its own expiration date as twenty days from the effective date of January 7, 1997. Id. In the restraining order Mr. Lampley received notice that there would be a hearing on January 26, 1998 to consider D.M.'s request for a six-month order. (App. B, p. 6 of 8)

Magistrate Johnson did not make an oral order or findings. There is no electronic record.[2] The restraining order contains no log or tape records. (App. B. p. 2 of 8) The written order is the only existing order.

Upon receipt of the restraining order, Mr. Lampley proceeded to write and mail a series of love letters to D.M.[3] (App. F)  In his letters, Mr. Lampley acknowledged his belief that by sending these letters he was handing D.M. the power to have Mr. Lampley further incarcerated for violating a restraining order. (Tr. 421, 422, 433, 434, App. F, p. 6, and 15 of 40)

On January 26, 1998, Magistrate Wells issued the six-month restraining

---

[2] Undersigned counsel checked the original court file, 3AN-S98-00044DV, and discovered no record of any tape or log numbers. When asked, the clerk on duty could not provide tape and log numbers for the January 7 writ. (See Affidavit of Counsel).

[3] The letters were addressed to Jimmy and [D.] Lampley. D.M. testified at trial that Mr. Lampley, out of hopeful affection, occasionally called her Mrs. Lampley. (Tr. 416-17)

order. (App. C)

On January 15, 1998 the state filed the original complaint, charging a single count of VDVRO.  On March 26, 1998, the state filed a seventeen count Information replacing Complaint.  On the eve of trial, on or about October 5, 1998, the state filed an Amended Information narrowing the charges to the thirteen counts noted above.  (App.  A. Tr. 3)

Counts I-XI asserted violations of the first restraining order issued by Magistrate Johnson, effective January 7, 1997, and counts XII and XIII alleged violations of the second restraining order issued January 26, 1998.  (App. A)

### 2.  State's Protective Order and Defendant's Motion for Judgment of Acquittal Regarding Effective Date of First Protective Order

On October 15, 1998, during the trial, the state made an oral motion for protective order requesting that the defendant be precluded from arguing that the first DVRO did not apply to Mr. Lampley because it had been backdated to January 7, 1997.  (Tr. 451-455) Mr. Lampley opposed, generally arguing that the language in the operative criminal statute defining the charged offense required the state to prove that Mr. Lampley was "subject to" a DVRO.  If the court granted the state's motion the court would deprive Mr. Lampley of his [Article I, Sec, 11 and Sixth Amendment] right to have the jury decide a contested issue. Id.

The court responded by repeatedly declaring that the date on the DVRO did not affect the validity of the DVRO. (Tr. 453-55)  The court ruled that Mr. Lampley could still argue that he misunderstood the order; however, the court

ruled [as a matter of law] that the order was valid and in effect at the time of the events. (Tr. 454-55)

After the state rested, Mr. Lampley completed the record on this point by making a motion for judgment of acquittal as to counts I-XI, all of which came within the ambit of the first restraining order. (Tr. 525) Mr. Lampley argued that the restraining order was not in effect at the time, and that he could not be found guilty of counts I-XI. (Counts XII and XIII occurred after the second restraining order was issued).

The court denied the motion. (Tr. 525-26)

At the end of the trial the court punctuated this ruling by providing the jury with an instruction which narrowed the question of the meaning behind the term "subject to" as it appears in the charging statute, AS 11.56.740, to whether the defendant was the named party in the DVRO and whether he was properly served with the DVRO. (App. D, p. 3 of 3)

### 3. Self-representation

On or about January 22, 1998, shortly after the state filed the original complaint, counsel for Mr. Lampley filed a motion to withdraw, asserting that Mr. Lampley wished to represent himself. (App. E) Counsel asserted that Mr. Lampley had the intellectual ability to represent himself. Id. At a hearing February 5, 1998, Judge Fuld generally agreed. (Tape 32-641, Log 801) However, Judge Fuld apparently concluded that Mr. Lampley would need the assistance of counsel to procure witnesses, make phone calls, etc, and Judge Fuld denied the motion. (App.

E, p. 4 of 4, Tape 32-644, Log 801)

On October 5, 1998, at trial call before Judge Ashman, Lampley renewed the motion to fire appointed counsel. Mr. Lampley stated he was prepared to proceed pro se. (Tape 33-750, Log 550) The court declined to rule and deferred the matter to Judge Finn, the assigned trial judge. Id.

The next day, October 6, 1998, Lampley unsuccessfully raised the matter again. (Tr. 4-20) Judge Finn denied the motion, generally noting a concern that Mr. Lampley would not "behave" himself. (Tr. 20-22)

### 4. Excessive Sentence

It will be argued below, on the "just deserts" theory of punishment, that there is no basis in the facts of this offense to impose a sentence approaching double the maximum for DVRO.

## ARGUMENT

### I.  THE TRIAL COURT ERRED BY FAILING TO GRANT MR. LAMPLEY'S MOTION FOR JUDGMENT OF ACQUITTAL

#### A.  Standard of Review

When considering a motion for judgment of acquittal, this court evaluates the evidence in the light most favorable to the state.  Dorman v. State, 622 P.2d 448, 453 (Alaska 1981);  Ross v. State, 586 P.2d 616, 618 ( Alaska 1978); Sheldon v. State, 796 P.2d 831, 839 (Alaska App. 1990). Viewing the evidence from this perspective, the court must decide whether a fair-minded juror exercising reasonable judgment could conclude that the State met its burden of proving guilt beyond a reasonable doubt.  Collins v. State, 977 P.2d 741,  747 (Alaska App. 1999), see also  Simpson v. State, 877 P.2d 1319, 1320 (Alaska App.1994).

#### B.  Argument

The DVRO served on Mr. Lampley on January 7, 1998 was backdated by the issuing judge to January 7, 1997.  By its own terms the DVRO expired January 27, 1997.  The letters Mr. Lampley wrote which formed the basis for counts I-XI did not and could not have violated an effective DVRO and Mr. Lampley's motion should have been granted.

A person is guilty of VDVRO only if the person is "subject to" the terms of a DVRO:

AS 11.56.740. Violating a protective order

> (a) A person commits the crime of violating a protective order if the person is subject to a protective order containing a provision listed in AS

> 18.66.100(c)(1)-(7) and knowingly commits or
> attempts to commit an act in violation of that
> provision.
>
> (b) Violation of this section is a class A
> misdemeanor.
>
> (c) In this section, "protective order" means an
> order issued or filed under AS 18.66.100-18.66.180.

Because the order expired January 27, 1997, Mr. Lampley was not "subject

to" the terms of the protective order when he wrote letters to D.M. (Counts I-XI).

It is notable that this was not a "scribner's error," or a clerical error, or a

typographical error.  (Tr. 451) From the appearance of the order, the date was not

written by a scribe, or a secretary.  Nor was it produced mechanically.  It was

handwritten by the magistrate next to his signature.

Because the magistrate apparently did not go on electronic record to issue

oral findings and an oral order setting the effective date, the written order stands, as

written.  The rule of court establishing the rule of law on this subject is clear:

> (2) Written Orders Not Preceded by Oral Orders.  The
> date of entry of a written order not preceded by an oral
> order is the date the written order is signed unless
> otherwise specified in the order.

Alaska R. Civ. Pro. 58.1.(2)

In this case, the order specified an effective date of January 7, 1997.  It is also

important to note that the facts of the case which form the groundwork for the DVRO

does not vitiate the order itself. This court has taught that an order is an order, and

the parties cannot nullify the requirements of an order by looking at and relying upon

errors and mistakes in the underlying facts of the case.  Jacko v. State, 981 P.2d

1075 (Alaska App. 1999). Just as Mr. Jacko was punished for violating the terms of what turned out to be a flawed order, D.M. (and the State of Alaska) must live with the fact that the order issued by Magistrate Johnson was dead upon arrival.

D.M. and the State of Alaska had a lawful remedy here. The applicable rules of court provide that the issuing court may, on its own accord, correct errors:

### RULE 60. RELIEF FROM JUDGMENT OR ORDER

> (a) Clerical Mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

Alaska R. Civ. Pro. 60(a)

Having failed to do so, Lampley committed no crime in counts I-XI. He was not accused of violating the intent of the magistrate. The state sought to put Lampley in jail for violating the terms of this written order. The state cannot have it both ways. When the terms of the order make legal Lampley's actions, the state is bound by the result. The trial court should have granted Lampley's motion for judgment of acquittal.

## II.    THE TRIAL COURT ERRED BY TAKING JUDICIAL NOTICE OF AN ELEMENT OF THE OFFENSE AND FORECLOSING ARGUMENT TO THE JURY CHALLENGING THE ENFORCEABILITY OF THE PROTECTIVE ORDER

### A.  Standard of Review

The court reviews a trial court's evidentiary rulings for abuse of discretion. Smithart v. State, 988 P.2d 583, 586 (Alaska 1999); M.R.S. v. State, 897 P.2d 63, 66 (Alaska 1995) Any questions of law presented by the court's evidentiary

rulings are reviewed *de novo*. Id. On questions of law, this court must "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." Guin v. Ha, 591 P.2d 1281, 1284 n.6 (Alaska 1979)

If the trial court erred in its evidentiary rulings and in so doing affected the defendant's constitutional rights, the court must reverse the conviction unless all errors were harmless beyond a reasonable doubt. Smithart v. State, 988 P.2d 583, 586 (Alaska 1999). See also Chapman v. California, 386 U.S. 18, 22-24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), partially overruled by Brecht v. Abrahamson, 507 U.S. 619, 630-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (holding that the "harmless beyond a reasonable doubt" analysis is inapplicable in habeas cases); Evans v. State, 550 P.2d 830, 840 (Alaska 1976).

### B. Argument

As set forth above, Mr. Lampley's letters, which formed the basis for counts I-XI, occurred outside the effective date and prohibited time frame of the first DVRO. Even if there was an argument to defeat the motion for judgment of acquittal, Mr. Lampley should have been allowed to take the issue to the jury.

Judge Finn summarily curtailed the argument by ruling that the order was valid, leaving Lampley only to argue the potential question of whether he misunderstood the order. (Tr. 454-55)

As noted above, AS 11.56.74 Lampley violated the DVRO only if he was, in fact, "subject to" the terms of a restraining order. This is a critical element of the offense. The judge erred, in effect, by taking judicial notice of this fact.

The trial court repeated the same error by narrowly defining the meaning behind the term "subject to" in jury instruction no. 4a. (App. D)  By doing so, the court, in effect, deleted the effective date question from jury consideration.

It is plain error to remove an element of the offense from jury consideration:

> The taking of conclusive judicial notice of an element of a criminal charge violates Alaska Evidence Rule 203(c), and deprives the defendant of his right to be convicted only upon a jury's finding of proof beyond a reasonable doubt of every element of the offense.  This is reversible error without regard either to whether there was an objection from the defense, or to whether the defendant suffered any prejudice other than having had his guilt adjudged by the wrong entity.  Fielding v. State, 842 P.2d 614 (Alaska App.1992); Smallwood v. State, 781 P.2d 1000 (Alaska App.1989).

Rae v. State, 884 P.2d 163, 166-67(Alaska App. 1994)(plain error when trial court took judicial notice of the fact that Rae's driver's license had been revoked at the time of the offense in DWLR case)

The court's ruling in response to the state's motion for protective order, combined with the specific terms of Jury Instruction 4a had the same effect as a formally taking judicial notice of an element of the offense. see ARE 203 .  Mr. Lampley did not waive jury on this point, and the fact that the jury did not get to decide the matter detonates the validity of entire trial.

### III.  THE TRIAL COURT DENIED MR. LAMPLEY HIS CONSTITUTIONAL RIGHT TO SELF-REPRESENTATION AND FORCED HIM TO PROCEED THROUGH TRIAL WITH COUNSEL HE DID NOT TRUST

Mr. Lampley repeatedly and vigorously sought to represent himself. (App. E, Tr. 4-20) Judge Fuld did not make specific findings, other than to point out that

Lampley might have the intellectual means to articulate his defense, but that he

needed help to get witnesses. (Tape 32-641, Log 801) Later Judge Finn denied

the same motion noting that Lampley might not be able to behave himself. (Tr. 11,

20-22)

Judge Finn's ruling turned out to be a self-fulfilling prophecy. The next day

after the court denied Mr. Lampley the right to represent himself; Mr. Lampley had

an outburst in court involving profanity and his forcible ejection from court. (Tr.

146, 149-150)

Generally, a defendant has a right to self-representation. Faretta v.

California, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975);

McCracken v. State, 518 P.2d 85, 91 (Alaska 1974). The right is not absolute.

However; it attaches only when the defendant:

> (1) having the competency to knowingly, intelligently, and
> voluntarily waive counsel,
> (2) does waive assistance of counsel, and
> (3) is at least minimally capable of presenting a coherent
> case to the jury.

Burks v. State, 748 P.2d 1178, 1180 (Alaska App.1988). See also Ortberg v. State,
751 P.2d 1368, 1375 (Alaska App.1988).

A defendant must unequivocally voice a desire to waive counsel and

represent himself:

> A criminal defendant who does not affirmatively and
> expressly waive the right to counsel must proceed with
> legal representation. But while forfeiture of the right to
> counsel is not tolerated, forfeiture of the right of self-
> representation is the established norm: the right is
> commonly ignored unless a defendant affirmatively
> asserts it, and even then, the trial court must attempt to

> discourage the defendant from proceeding without
> counsel and must ensure that the defendant is minimally
> qualified to pursue a course of self-representation.

Knix v. State, 922 P.2d 913, 923 (Alaska App. 1996)

Self-representation is a fundamental constitutional right. The trial court does not have discretion to paternalistically deny the average defendant the right to represent himself.

> "...[I]t seems clear that the average criminal defendant
> must be allowed self-representation if the trial court makes
> a careful inquiry in which the court determines that the
> defendant understands his right to counsel, is determined
> to forego that right, and can conduct his defense without
> being unusually disruptive."

Adams v. State, 829 P.2d 1201, 1205 (Alaska App. 1992)

Analysis on the basis of outcome-affecting harmless error is inapplicable to review of the improper denial of a defendant's request to represent themselves. The United States Supreme Court rejected an outcome-affecting harmless error test for deprivation of the right of self-representation, in part because applying an outcome-affecting harmless error test would make denial of a fundamental right virtually never a reversible error. McKaskle v. Wiggins, 465 U.S. 168, 177 n.8, 104 S.Ct. 944, 950 n. 8 (1984).

In McCracken, the Alaska Supreme Court found that the right to self-representation was of such paramount importance, it was a right reserved to the people under Art. I sec. 21 of the Alaska constitution. ('(t)he enumeration of rights in this constitution shall not impair or deny others retained by the people.') The court explained with great eloquence the reasoning behind this exceptional ruling:

> In considering the fundamental importance of self-representation, we
> are mindful that ours is a society valuing the autonomy of the individual
> and his freedom of choice. When accused of a crime, or, as here,
> when seeking relief from a conviction resulting in imprisonment, the
> opportunity to determine whether to present one's own case or to be
> represented by appointed counsel is of paramount importance to the
> individual. Under some circumstances, he may indeed be the only
> person who will forcefully advance arguments in an unpopular cause.
> Alaska has been and is endowed with courageous attorneys who have
> zealously represented those accused of crime, but such dauntless
> representation may not always be available to one who is the object of
> opprobrium. The opportunity to present one's own position where
> liberty itself is at stake should not lightly be disregarded, and the right
> to counsel should not be used to bar self-representation. '(T)he
> procedural safeguards of the Bill of Rights are not to be treated as
> mechanical rigidities. What were contrived as protections for the
> accused should not be turned into fetters.'

McCracken v. State, 518 P.2d 85, 91 (Alaska 1974)

Of most importance to the evaluation of Judge Finn's ruling is the question of

whether she gave Mr. Lampley a fair opportunity to express and demonstrate a

willingness to behave himself. As the court in McCracken stated, self-representation

carries with it a duty to follow courtroom decorum:

> Finally, the trial judge should determine that the prisoner is
> willing to conduct himself with at least a modicum of courtroom
> decorum.

McCracken v. State, 518 P.2d 85, 92 (Alaska 1974)

Judge Finn simply assumed that a self-representing Lampley would fail to

"maintain a modicum of courtroom decorum". Based upon Lampley's outburst in

court after Lampley had been denied his right to represent himself, Judge Finn's

finding is supported. However, throughout most of the proceedings, Mr. Lampley

demonstrated more than a modicum of courtroom decorum.

This court should look at the situation as it existed at the time Lampley made

his request to Judge Finn. He had previously told Judge Ashman he was ready to proceed pro se. He voiced extreme frustration over the fact that he could not speak for himself and that he did not trust an attorney the court was forcing upon him in his own case.

It is not the least bit inconceivable that, if empowered to be his own attorney, he would not have lashed out as he did during the early part of the trial.

## IV.  THE SENTENCE IS EXCESSIVE

### A.  Standard of review

A sentence will be upheld unless shown to be clearly mistaken. McClain v. State, 519 P.2d 811, 813-14 (Alaska 1974).

### B.  Argument

Mr. Lampley received twenty months of incarceration for writing thirteen, take-me-back, Valentine's letters to his long time girlfriend after she had asked a court to order Mr. Lampley not to do so. Appendices F and G. This sentence is eight months more than the twelve-month maximum sentence for any one of the offenses. AS 11.56.740.   AS  12.55.135 . In addition, the court ordered a maximum period of ten years informal probation, during which Mr. Lampley will have four years and eight months suspended time hanging over his head. AS 12.55.090.

When Mr. Lampley attempted to explain how his personal background related to the offenses, the court repeatedly cut him off in mid-sentence and told him that his personal background information was irrelevant. According to Judge Finn, Mr. Lampley was being sentenced only for the thirteen letters (Tr. 836) In Judge Finn's words, the rest was "extraneous". (Tr. 944-45) Mr. Lampley now wishes this court

to do what Judge Finn said she was going to do.

On the basis of the "just deserts" theory of sentencing, Judge Finn hit Lampley too hard. The letters are attached. (Appendix F) They contain no threat of violence. The letters reflect a simple effort to regain the affection of a recently lost, girlfriend. As a violation goes, writing a letter to someone from inside a jail cell is among the least serious of potential violations of a domestic violence restraining order. (as compared to physical contact or stalking, for example.) As noted by defense counsel, the victim made her own choice to open the letters and read them. (Tr. 921)

Mr. Lampley argues herein that the sentence imposed clearly exceeds his "just deserts" for the offense committed.

The "just deserts" basis for sentencing focuses upon the crime committed and has been observed and followed by this court on numerous occasions. Curl v. State, 843 P.2d 1244, 1245 (Alaska App. 1992); Allen v. State, 759 P.2d 541, 552 (Alaska App. 1988); State v. Andrews, 707 P.2d 900, 917, n.14 (Alaska App. 1985) Hancock v. State, 706 P.2d 1164, 1173 (Alaska App. 1985); Maal v. State, 670 P.2d 708, 712 (Alaska App. 1983).

It is articulated as follows:

> The Alaska Criminal Code Revision Subcommission explained the "just deserts" theory as follows:
>
> In determining the appropriate sentence to be imposed, two basic principles guide the court:
>
> (1) the least severe measure should always be used which accomplishes the purposes of sentencing; and

(2) primary consideration in imposing sentence should always be given to the seriousness of the offense and the prior criminal history of the convicted person.

Under the "just deserts" theory of punishment, as a matter of justice or fairness, decisions with respect to a particular defendant ought to be made on the basis of what the person has done, not on some speculative expectation of what he might do in the future.   Neither rehabilitation nor deterrence, as such, are primary considerations in determining the appropriate sentence, although both remain objectives of a "deserved" sentence.  If a person's crime is serious, his punishment should be severe.  If the offense is minor, the sanction should be mild.

State v. Andrews, 707 P.2d 900, 917, n.14 (Alaska App. 1985)

It is true that Lampley has a substantial misdemeanor record, but no felony record.   To some extent Lampley's courtroom behavior mirrored his criminal record. When he felt he had been wronged, he said so, with a sailor's tongue. (Tr. 146) When people roughly manhandle him, he objects and, on occasion, resists. (Tr. 838) As a result, he has drawn more than his share of attention from authority figures. (Lampley is currently serving his misdemeanor sentence with guys doing life sentences at Spring Creek Correctional Center.)

Mr. Lampley is a passionate fellow who, on occasion sees fit to defy authority. While there may be cause to impose such a severe sentence for acts of violence, the present case doesn't fit the bill.  Any sentence greater than one year, inclusive of suspended time, in the present case is excessive.

## CONCLUSION

Based on the forgoing argument and authority, this court should reverse Judge Finn's denial of Lampley's motion for judgment of acquittal as to counts I-XI and dismiss those counts. Mr. Lampley should receive a new trial as to the remaining counts. Mr. Lampley's sentence should be reduced to an amount not exceeding one year for the entirety of the offenses, inclusive of suspended time.

DATED at Anchorage, Alaska September 7, 2000.

PUBLIC DEFENDER AGENCY

By:

MICHAEL D. DIENI (8606034)
ASSISTANT PUBLIC DEFENDER

19