Lampley v. State, 33 P.3d 184 (Alaska App. 2001)
(Cite as: 33 P.3d 184)

Court of Appeals of Alaska.

Jimmy A. LAMPLEY, Appellant,
v.
STATE of Alaska, Appellee.

No. A-7539.

Oct. 12, 2001.

Defendant was convicted in the District Court, Third Judicial District, Anchorage, Natalie K. Finn, J., of thirteen counts of violating a domestic violence protective order. Defendant appealed. The Court of Appeals, Mannheimer, J., held that: (1) inadvertent clerical mistake in effective date of protective order did not alter legal effect of order; (2) disruptive behavior warranted denial of permission for defendant to represent himself; and (3) jail sentence was justified by history of repeated violations of protective orders.

Affirmed.

West Headnotes

[1] Criminal Law k734
110k734

[1] Criminal Law k814(1)
110k814(1)

In a jury trial, factual questions must be resolved by jury, but trial judge gives jury binding instructions on proper legal characterization or effect of the facts as jury views them.

[2] Breach of the Peace k16
62k16

Inadvertent clerical mistake, in which magistrate wrote incorrect year when entering effective date of domestic violence protective order, had no effect on intended effective date of restraint on defendant's conduct. AS 11.56.740(a).

[3] Criminal Law k996(1)
110k996(1)

Term "clerical mistake," as used in rule authorizing correction of clerical mistakes in judgments and order, encompasses not only errors of transcription or typing made by a secretary or clerk, but also errors made by judge when composing the judgement or order. Rules Civ.Proc., Rule 60(b).

[4] Criminal Law k734
110k734

Question of legal effect of clerical error in domestic violence protective order was issue of law and not a matter for jury. AS 11.56.740(a).

[5] Criminal Law k641.4(1)
110k641.4(1)

Criminal defendants have a constitutional right to represent themselves.

[6] Criminal Law k641.4(2)
110k641.4(2)

Court can deny defendant's request for self-representation if defendant is not minimally capable of presenting case in coherent fashion; and even if defendant is capable of presenting a coherent case, court can nevertheless deny request for self-representation if defendant is not capable of conducting defense without being unusually disruptive.

[7] Criminal Law k641.10(2)
110k641.10(2)

Defendant, whose voice rose and who twice threatened judge, was properly refused permission to discharge his public defender and represent himself; judge was concerned that jury would not be able to disregard defendant's disruptive behavior.

[8] Breach of the Peace k15.1
62k15.1

Defendant's conduct in repeatedly and admittedly violating domestic violence protective order, along with his lengthy record of violating past orders and committing assaults, justified sentence of 20 months to serve. AS 11.56.740(a).

*184 Michael Dieni, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Michael T. Burke, Assistant District Attorney, Susan A. Parkes, District Attorney, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MANNHEIMER and STEWART, Judges, and ANDREWS, Superior Court Judge. [FN*]

  FN* Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution.

*OPINION*

MANNHEIMER, Judge.

Jimmy A. Lampley appeals his thirteen convictions for violating a domestic violence *185 protective order that prohibited him from contacting his girlfriend, D.M. [FN1] Lampley first contends that his trial judge violated his constitutional right to a jury trial, by preventing Lampley from arguing to the jury that he was not actually subject to the protective order on the particular days when he contacted his girlfriend. Lampley next contends that the trial judge violated his constitutional right to represent himself, by refusing to allow Lampley to discharge his court-appointed attorney and proceed *pro se*. Finally, Lampley argues that his composite sentence (20 months to serve) is excessive.

  FN1. AS 11.56.740(a).

For the reasons explained here, we uphold the trial judge's decisions and we therefore affirm Lampley's convictions and sentence.

*The controversy as to whether the protective order governed Lampley's*

*conduct for 20 days in January 1998 or 20 days in January 1997*

The major question in this appeal concerns a defect in the wording of the initial 20 day domestic violence protective order issued against Lampley. That protective order was issued on January 7, 1998. It prohibited Lampley from contacting his girlfriend for 20 days, and it also informed Lampley that the court would hold a hearing on January 26, 1998 to decide whether to issue a longer-term protective order. But when Magistrate Brian Johnson signed the order and entered the date on the line labeled "effective date", he mistakenly wrote "1/7/97"--*i.e.,* January 7th of the previous year.

No one noticed this inconsistent date until the middle of Lampley's trial, when a police officer referred to the protective order during his testimony and mentioned that the effective date was off by one year. After the error was discovered, Lampley's attorney told the trial judge that she wanted to argue to the jury that the protective order was effective for 20 days in January *1997*-- and that Lampley was not subject to this order when he repeatedly contacted his girlfriend in January 1998.

The trial judge, District Court Judge Natalie K. Finn, told the defense attorney that Lampley was free to argue that he was misled by the 1997 date and that he mistakenly believed that the protective order governed his conduct for 20 days during the previous January. However, Judge Finn prohibited the defense attorney from arguing that the true effect of the order was to restrain Lampley's conduct for 20 days in January 1997 (and not 20 days in January 1998).

To prove that Lampley had violated AS 11.56.740(a), the State was required to prove that Lampley was "subject to" a domestic violence protective order when he contacted his girlfriend. [FN2] Lampley contends that the trial judge's ruling amounted to a directed verdict in favor of the government on this element of the offense.

> FN2. AS 11.56.740(a) reads: "A person commits the crime of violating a [domestic violence] protective order if the person is subject to a protective order containing a provision listed in AS 18.66.100(c)(1)-(7) and knowingly commits or attempts to commit an act in violation of that provision."

[1] Whether Judge Finn's ruling constituted a "directed verdict" hinges on whether she precluded Lampley from raising a factual issue or a legal issue. In a jury trial, factual questions must be resolved by the jury, but the trial judge gives the jury binding instructions on the proper legal characterization or effect of the facts as the jury views them.

If Lampley had argued that Magistrate Johnson actually issued the protective order on January 7, 1997 (instead of January 7, 1998), this would have been a factual issue that the jury should have decided. Similarly, if Lampley had

argued that Magistrate Johnson issued the protective order in January 1998 but intended the order to retroactively govern Lampley's conduct during 20 days in January 1997, this too would have been a factual issue that the jury should have decided.

But Lampley concedes that the protective order was issued on January 7, 1998. Further, Lampley acknowledges that Magistrate Johnson's intent, when issuing the order, was to restrain Lampley's conduct for the 20 days commencing January 7, 1998. That is, Lampley acknowledges that the magistrate *186 made an inadvertent mistake when he wrote "1/7/97". Lampley's argument is that, despite these facts, the legal effect of the protective order was governed by the written date of "1/7/97" and thus, as a matter of law, the order restrained Lampley from contacting his girlfriend for 20 days during the previous year-- from January 7 to January 26, 1997. Lampley's opening brief declares:

> The [domestic violence protective order] served on Mr. Lampley on January 7, 1998 was backdated by the issuing judge to January 7, 1997. By its own terms, the [order] expired [on] January 27, 1997.... [T]he order issued by Magistrate Johnson was dead upon arrival.

Lampley concedes that, because the 1997 date was an inadvertent mistake, it could have been corrected at any time under Alaska Civil Rule 60(a), which authorizes a court to correct clerical mistakes in judgements and orders. [FN3] But Lampley argues that, unless and until the mistaken date was corrected under Civil Rule 60(a), the legal effect of the protective order was to govern his behavior for 20 days in January *1997*. Lampley contends that a defendant can not be prosecuted under AS 11.56.740 "[for] violating the intent of the magistrate", but only "for violating the terms of [the] written order." Thus, Lampley asserts, he could not be convicted of violating Magistrate Johnson's protective order unless the district court took action to correct the effective date of that order *before* Lampley committed the acts for which he is charged.

> FN3. Civil Rule 60(a) reads: "Clerical mistakes in judgments, orders [,] or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."

[2] Based on this argument about the legal effect of the protective order, Lampley contends that Judge Finn should have granted him a judgement of acquittal (because no reasonable person could dispute his innocence). But Lampley's assertion about the legal effect of the protective order is wrong. Because Magistrate Johnson's act of writing "1/7/97" was a "slip of the pen"-- an inadvertent, clerical mistake--the protective order *always* governed Lampley's behavior for 20 days starting January 7, 1998 (the date the order was

actually issued). This was true even before the clerical error was caught and corrected.

 [3] Civil Rule 60(b) authorizes a court to correct "[c]lerical mistakes in judgments [and] orders...." The term "clerical mistake" encompasses not only errors of transcription or typing made by a secretary or clerk, but also errors made by the judge when composing the judgement or order. Indeed, relief is available under Civil Rule 60(a) for mistakes made by the judge, a clerk, the jury, or a party. [FN4] Thus, in *DeVaney v. Dept. of Revenue, Child Support Enforcement Div.,* 928 P.2d 1198, 1200 (Alaska 1996), the court rejected the argument that Rule 60(a) was unavailable to correct an error in a child support decree "[when] the error in the [decree] was judicial in character rather than clerical." The court stated:

> FN4. *See Babinec v. Yabuki,* 799 P.2d 1325, 1337 (Alaska 1990) (citing J. Moore, *Federal Practice and Procedure* (1986), § 60.06[3], Vol. 6A, p. 60-43).

Authorities agree that relief, pursuant to Rule 60(a), is not limited to those errors made by clerks. *Allen v. Bussell,* 558 P.2d 496, 501 n. 8 (Alaska 1976).... Here, the clear intent of the parties was for William to pay child support of $175.00 per month, per child, ... for a total of $700 per month[, and the] court's clearly stated intent [in issuing the order] was to give force to the "agreements of petitioners as outlined in the petition." The court's order of $175.00 per month total child support was in direct conflict with both the parties' and the court's intent. It is properly characterized as a clerical error [for purposes of Rule 60(a) ]. *DeVaney,* 928 P.2d at 1200-01.

 What makes a mistake "clerical" is not the identity of the person who made the mistake, but rather the nature of the mistake itself. As the supreme court stated in *Jensen v. Froissart,* 982 P.2d 263 (Alaska 1999), Civil *187 Rule 60(a) allows a court to correct an "objectively ascertainable error[ ] in form":
> [T]he relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties ... or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule.
> *Id.,* 982 P.2d at 267-68.

 As indicated by these cases, a judge's authority to correct a clerical mistake under Civil Rule 60(a) rests on the proposition that the judge's act of correcting the mistake does not alter the intended effect of the judgement or order. In other words, an amendment to the text of an order under Rule 60(a) is proper only when, from a legal standpoint, the intended operation of the order remains the same as it was before the correction. As our supreme court said in *DeVaney,* "The correction contemplated by Rule 60(a) must be undertaken for the purpose of reflecting the actual intention of the court...." [FN5] If the intended effect of the order is indeed altered by the "corrective"

action, then, by definition, the judge's act of amending the order exceeds the authority granted by Civil Rule 60(a) to correct clerical errors.  Conversely, if correction of the mistake *is* proper under Civil Rule 60(a), then, from a legal viewpoint, the corrected text of the order now only states what the order always meant.

FN5. 928 P.2d at 1200.

Lampley concedes that the text of Magistrate Johnson's protective order could properly be amended under Civil Rule 60(a) to accurately reflect the intended effective date of January 7, 1998.  It therefore follows that, despite the magistrate's erroneous entry of the date "1/7/97", the protective order *always* restrained Lampley's conduct from January 7, 1998 to January 26, 1998.

Lampley is wrong in asserting that, initially, the protective order governed his conduct for 20 days in 1997 and only later, after the text of the order was corrected, did it govern his conduct for 20 days in 1998.  Despite Magistrate Johnson's mistake in writing a 1997 effective date, the protective order always restrained Lampley's conduct from January 7 to January 26, 1998. Judge Finn therefore correctly denied Lampley's motion for a judgement of acquittal based on the mistaken date.

[4] Lampley alternatively contends that Judge Finn at least should have allowed him to argue this theory of innocence to the jury--and that her refusal to let him raise this argument amounted to a directed verdict.  But Lampley's proposed argument is not an assertion about the facts of his case. He and the State agree that Magistrate Johnson inadvertently wrote a mistaken effective date of "1/7/97" on a protective order that was actually issued on January 7, 1998 and was intended to take effect on that same day.  Instead, Lampley's argument is an assertion about the legal meaning or effect of the magistrate's mistake.

Issues of law are decided by the court, not the jury.  Because the facts were undisputed and the only question was the proper legal characterization of those facts, Judge Finn acted correctly when she decided this question herself and stopped Lampley's attorney from suggesting that the jurors were free to reach a different decision.

(As explained above, Judge Finn did allow Lampley to argue that, even though he was served with the protective order on January 7, 1998, the "1/7/97" notation misled him into thinking that the order governed his conduct for 20 days in 1997 (*i.e.,* one year earlier). Lampley's subjective understanding of the order was, of course, a factual issue. Had this issue been raised, it would have been for the jury to resolve.  But Lampley ultimately chose not to present this argument to the jury.)

For these reasons, we uphold Judge Finn's handling of the issues raised by the mistaken date.

*Judge Finn's refusal to allow Lampley to represent himself*

Lampley was represented by the Public Defender Agency. At the beginning of trial, Lampley's assistant public defender informed Judge Finn that Lampley wished to discharge her and represent himself. In response *188 to questions from Judge Finn, Lampley explained at length (and often in a rambling fashion) that he wished to represent himself because he believed that his assistant public defender was manipulating him (*i.e.,* counseling him to do things that he did not wish to do), and was refusing to accede to his wishes about how to litigate the case.

The assistant public defender then told the court:
*Defense Attorney:* [It has become] clear to me in the last several weeks that Mr. Lampley does not trust me.... [T]here's really not anything that I can do about that. That doesn't affect my ability to represent him, but I think it is impacting his ability to listen to me.
We have a fundamental disagreement on which witnesses to call, what line of defense to use, what he should say, what he should not say, [whether] he should testify--on all those points. And it's not because we haven't discussed them.... We've discussed them *ad infinitum,* and we are never going to agree on these things. [But as far as] manipulation, I do not believe that I have manipulated Mr. Lampley in any way. I gave my opinion on things. [In particular,] my very, very, very strong opinion was that he should take the deal [offered by the State].... [And] we disagreed as to whether [particular evidence] was relevant or useful in any manner. And when he continued to go on and on and on about it, [I told him], "If you really feel that I did something wrong, then you have the remedy of filing [an] ineffective assistance of counsel [claim]." [But] I do not believe that I did anything wrong ..., nor do I believe that [Mr. Lampley's requested evidence] would have been relevant[.]

Judge Finn ruled that Lampley could be co-counsel, so that he would have the right to speak, but she told Lampley that his assistant public defender would be lead counsel, "your co-counsel, and your advisor, and your spokesperson, so that we can keep going [in] a fairly professional format". Judge Finn explained to Lampley that she was basing her ruling on her past experiences with him:
*The Court:* You know, you're a really smart guy, and you have a lot of [courtroom] experience and a lot of ability. But the reason why [your proceeding] *pro se* does not strike me as a very good idea is that you tend to get a little wound up in your own matters. And I don't think, frankly, that you would be very effective in representing yourself in a jury trial.... I think there are ... times when you are going to be best off having somebody speak for you, because you can't stick to the topic sometimes.... When you get wound up, you tend to go astray. And you can't do that in a jury trial. So I'm not going to let you [represent

yourself].

Lampley continued to argue that he should be allowed to represent himself because many of his previous lawyers had violated his constitutional rights and had acted dishonestly. Judge Finn told Lampley that if he could not behave, she would have him removed from the courtroom and taken to a place where he could participate in the trial by telephone. This led to the following colloquy:

*Lampley:* [Then] I can guarantee you [that] I'll spend the rest of my life in jail, because I will start stopping where the problem starts. [*sic*] That is a threat to the court.... Note that for the record.

*The Court:* Mr. Lampley, hang on a minute. I'm counting on the fact that you're going to continue to behave the way you have behaved the last several times that you've been in court--which is to listen, to be cooperative, to be agreeable, and to have the process go as court proceedings are supposed to go. But in case you can't, you need to have an attorney. [Your assistant public defender] is a competent attorney, and she will represent you....

*Lampley:* Well, if the court is going to impose punishments like that upon me because ... I feel strongly against her representing me, then I have no choice but to act upon what I have to do. I mean ...

*The Court:* I didn't say [that] I am doing [this] because you disagree with her representation.... This has to do with your behavior, Mr. Lampley....

*189 *Lampley:* ... I've been forgiving for too long. It's time for me, for Jim Lampley, to stay the hell out of jail. Period. I do not like prison, okay? I don't deserve it.

And if my actions go a certain way and get me in trouble, why is this happening? And if I can't have counsel to help defend me on that, because they won't discuss the issues to help me think of a better way for a defense, I'm denied effective assistance of counsel. Then I've got the court saying [that] if I acted because I feel a certain way, [the court is] going to ... conduct a jury trial without my presence. Then I'm going to be screwed out of my freedom.

And when I'm screwed out of my freedom, I'm going to do what every American soldier does to fight for our country: I'm going to start killing people. I'm going to fight for what's mine. I have a constitutional right, and you, Your Honor, are not going to take that from me.

As he spoke these last two paragraphs, Lampley's voice rose to a crescendo. At this point, Judge Finn acted to defuse the situation:

*The Court:* Pull yourself together here for a minute.... [I]f you behave calmly and quietly, you get to sit [in the courtroom] and watch your trial and participate in it. If you can't behave calmly and quietly--and you are working yourself up here to [the point] where I'm wondering if you can ..., if you can't behave calmly and quietly, [I can't allow you] to be in here making noise.... So it's your call on that.... [But your assistant public defender] is going to represent you.

[5][6] On appeal, Lampley renews his argument that Judge Finn should have allowed him to discharge his assistant public defender and represent himself at trial. Criminal defendants have a constitutional right to represent themselves. [FN6] However, this is a conditional right. The court can deny a defendant's request for self-representation if the defendant is not minimally capable of presenting their case in a coherent fashion. [FN7] And even if the defendant is capable of presenting a coherent case, a court can nevertheless deny a request for self-representation if the defendant is not capable of conducting their defense without being unusually disruptive. [FN8]

> FN6. *See Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975); *Ramsey v. State,* 834 P.2d 811, 814 (Alaska App.1992).
>
> FN7. *See Ramsey v. State,* 834 P.2d 811, 814 (Alaska App.1992).
>
> FN8. *See Adams v. State,* 829 P.2d 1201, 1205 (Alaska App.1992).

[7] Lampley's behavior during the above-quoted discussion illustrates the basis of the trial judge's concerns about letting Lampley proceed *pro se.* When Lampley was unable to convince the court to discharge his assistant public defender, he uttered two threats against the trial judge within the space of a few minutes. Although it is clear that Judge Finn was able to deal with Lampley's behavior and keep the proceedings on track, she was justifiably concerned that Lampley would later be disruptive in front of the jury, and that the jury would not be able disregard Lampley's behavior when deciding the case.

For these reasons, we uphold Judge Finn's decision not to let Lampley discharge his assistant public defender and represent himself.

*Lampley's sentence appeal*

For thirteen counts of violating a domestic violence protective order, Judge Finn sentenced Lampley to a composite term of 6 years, 4 months' imprisonment with 4 years, 8 months suspended--*i.e.,* 20 months to serve.

[8] Lampley has a lengthy criminal history encompassing some twenty prior convictions, including three convictions for assault. One of these assaults was committed on D.M., the girlfriend who was the victim in this case.

In our 1995 decision, *Lampley v. State,* Memorandum Opinion No. 3224, we summarized Lampley's criminal history at that point. Lampley had pleaded no contest to an information charging three counts of violating *190 a domestic violence protective order. Those three counts represented a consolidation of what were originally thirty-three counts of violating a protective order, plus one count of harassment. At the time of his sentencing on those charges, Lampley had fourteen prior misdemeanor

convictions, including a prior assault on the woman, M.B., who obtained the domestic violence protective order, as well as prior violations of domestic violence protective orders in 1992 and 1993.

Based on Lampley's criminal history, we upheld the district court's finding that Lampley was a "worst offender" for sentencing purposes. [FN9] We also upheld Lampley's composite sentence of 3 years (1080 days) with 1 1/2 years (540 days) suspended. [FN10] We stated:

> FN9. *See id.* at 2.
>
> FN10. *See id.* at 1, 3.

> The [district] court ... did not expressly find that a sentence of more than one year was necessary to protect the public, but such a conclusion is implicit in the court's findings that Lampley still felt possessive toward M.B., that in his mind he still had a relationship with her, and that he would not be deterred from future offenses without a substantial period of incarceration.
> *Id.* at 2.

Lampley demonstrated similar behavior in this case. On December 30, 1997, he was arrested for assaulting his girlfriend, D.M. One week later, on January 7, 1998, while Lampley was still being held in the Cook Inlet Pre-Trial Facility, D.M. obtained a domestic violence protective order against him. This protective order was served on Lampley later that same day. Even though this order prohibited Lampley from contacting D.M. in any fashion, Lampley proceeded to write eleven letters to D.M. In many of these letters, Lampley openly acknowledged that he knew he was violating the protective order. On January 26, 1998, the district court granted D.M. a long-term protective order. Lampley wrote two more letters to D.M. after being served with this order. After Lampley was charged with these offenses and was awaiting trial, he made 50 to 60 telephone calls to D.M.

In her sentencing remarks, Judge Finn concluded that Lampley was a worst offender and that Lampley needed to be confined for a substantial length of time to protect the public, because "only time in jail will deter this defendant." Lampley's conduct in this case, combined with his lengthy record of similar offenses, amply supports the judge's findings. In 1995, we upheld Lampley's sentence of 18 months to serve for several counts of violating a domestic violence protective order. Lampley has now received a composite sentence of 20 months to serve for similar conduct (involving a different victim). We conclude that Lampley's composite sentence is not clearly mistaken. [FN11]

> FN11. *See McClain v. State,* 519 P.2d 811, 813-14 (Alaska 1974) (an appellate court is to uphold a criminal sentence unless the sentence is clearly mistaken).

*Conclusion*

The judgement of the district court is AFIRMED.

COATS, Chief Judge, not participating.

33 P.3d 18