While the law allowed for the first DV Order to be *ex parte*, it did not allow for the second order to be. Six (6) month hearings are held in the absence of the Respondent pursuant to the proposition that voluntarily choosing to be absent waives the opportunity to respond. That is, the proposition relies on a fiction of choice as regards Mr. Lampley: He didn't "choose" to absent himself; he was forcibly detained.

Mr. Lampley was not allowed to attend court for his DV Hearing. The course of this litigation will reveal that it is the State of Alaska's pattern and practice to deny inmates the ability to attend civil DV Hearings. The same State of Alaska then prosecutes those Respondents for violating the DV Orders issued at hearing they could not attend. This is a systematic due process of law violation that specifically harmed Mr. Lampley.

People with money for lawyers (and bail) can defend their rights at a DV Hearing. Indigents, such as Mr. Lampley cannot. In similar situations public counsel has been mandated, even where the litigant is not incarcerated. Otton v. Zaborac, 525 P.2d 537 (Alaska 1974) [nonsupport hearing]; Flores v. Flores, 598 P.2d 893 (Alaska 1979) [child custody battle]; Reynolds v. Kimmons, 569 P.2d 799 (Alaska 1977) [paternity suit]; V.F. v. State, 666 P.2d 42 (Alaska 1983) [termination of parental rights]; In re. K.L.J., 813 P.2d 276 (Alaska 1991) [contested adoption]. The potential penal consequences of a DV Order, as well as their routine intrusion into the most basic of constitutionally protected rights and behaviors (speech, association, right to bear arms, possession/use of real and personal property, obligations to pay money, requirements of substance abuse counseling including residential treatment, obligations to refrain from the lawful ingestion of alcohol, loss of child custody and visitation), means that indigent persons forced to respond to such cases must be afforded counsel. Failure to do so is unconstitutional, and convictions founded on DV Orders entered in derogation of this due process right are

void. See generally, Pananen v. State, 711 P.2d 528 (Alaska App. 1985); State v. Peel, 843 P.2d 1249 (Alaska App. 1992).

### 3. Counsel

Mr. Lampley had a constitutional right to counsel at his trial and on appeal. Violation of that right is thus a constitutional violation, actionable under these provisions of law. Mr. Lampley's argument in this regard is set forth below in Section C. That argument is incorporated herein by reference as if fully set forth at this point.

### 4. Overview

The above three claims are each a viable basis for post conviction relief whether or not Mr. Lampley relieved ineffective assistance of counsel. AS 12.72.010, "Scope of post-conviction relief," includes relief for "A person who has been convicted of, or sentenced for, a crime […] in violation of the Constitution of the United States or the constitution or laws of this state[.] AS 12.72.010(1). While some the same substantive claims may be raised in the ineffective assistance of counsel section as the basis for the ineffective assistance claims, they also stand alone as constitutional claims.

### B. Unlawfully Restraint: Criminal Rule 35.1(a)(5); AS 12/72.020(5).

Mr. Lampley disagrees with the various losses of "good time" that were imposed upon him over the course of his incarceration. These various proceedings suffered from serious procedural defects. Mr. Lampley was often advised that he had to defend one claim only to show up for the hearing to learn he had to defend several additional claims. Correctional Officer witnesses who were not supposed to discuss their testimony amongst

themselves routinely did.[19] In addition, Mr. Lampley suffered loss of good time for communicating, by telephone, with his attorneys.[20]

The records of these disciplinary proceedings are in the custody of DOC. Mr. Lampley cannot secure access to and copies of these records without the aid of the Court's process. These records will establish the date of Mr. Lampley's last disciplinary proceeding. They will also established what falls before and after the December 26, 1999 limitation date for this application.

For the requisite period[21] before Mr. Lampley asked for restoration of his "good time" there were no disciplinary notices served upon him. There were no disciplinary hearings. There were no findings of violation. Mr. Lampley then made proper application for restoration of his "good time."

Mr. Lampley was improperly denied the restoration of his "good time" well after the December 26, 1999 limitation date. 22 AAC 472 provides that "good time" is to be restored when an inmate completed a specified period of "good conduct."[22] "Good conduct" is defined to mean the absence of a violation or infractions, guilt for which has been established *via* the disciplinary process. There is no "bad conduct/good conduct" defined without reference to the formal disciplinary process. It is that process that DOC abandoned. In the absence of that process DOC abused its discretion in refusing to restore Mr. Lampley's good time and release him from jail. In essence, it imposed

---

[19]   Contra, 22 AAC 05.405 (b).

[20]   Cf. Fajeriak v. State, 520 P.2d 795 (Alaska 1974).

[21]   22 AAC 05.472(b)(2).

[22]   The referenced Policy and Procedure § 809.07, directive of May 14, 1992, is attached as Exhibit 10. It makes the same provisions, but its punctuation may have been a source of confusion.

additional discipline without resort to the disciplinary process in direct contravention of 22 AAC 05.470. That section states, in pertinent part:

> (a) ***Only a disciplinary tribunal may impose punishment*** for an infraction. The disciplinary tribunal shall impose at least one, and may impose all, of the following penalties if the prisoner is found guilty of an infraction:

[emphasis supplied]. See also, DOC Policy & Procedure § 809.02 "Prohibited Conduct and Penalties" Section F, "Only a disciplinary committee/hearing officer may punish a prisoner after it convicts him or her of a disciplinary infraction."

There were no disciplinary processes involving Mr. Lampley, much less findings of guilt, for the requisite time period. That is the applicable standard contained in the Alaska Administrative Code. DOC nevertheless denied the *presumptive* restoration of "good time" based upon allegations of misconduct of which Mr. Lampley was given neither notice nor any opportunity to respond.[23]

As a consequence of the improper refusal to restore "good time," Mr. Lampley was incarcerated for longer than he should have been. He also has more remaining suspended time than would be the case had he not been unlawfully detained.

### C. Ineffective Assistance of Counsel: Criminal Rule 35.1(9); AS 12.72.010(9).

The United States Const. Amend. VI and XIV and Alaska Const. Art. I, § 11 guarantee criminal defendants the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 691 (1984); McCracken v. State, 521 P.2d 499 (Alaska 1974). The test for determining the constitutional adequacy of counsel was set forth in Risher v. State, 523 P.2d 421 (Alaska 1974):

---

[23] Contra, 22 AAC 05.415 *et seq.*

> Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Risher, 523 P.2d at 424 (footnotes omitted).

> Before reversal will result, there must first be a finding that counsel's conduct either generally throughout the trial or in one or more specific instances did not conform to the standard of competence which we have enunciated. Secondly, there must be a showing that the lack of competency contributed to the conviction. If the first burden has been met, all that is required additionally is to create a reasonable doubt that the incompetence contributed to the outcome.

Id. at 425 (footnote omitted).

To meet the first prong of the Risher test, Mr. Lampley must establish, by a preponderance of the evidence that his counsel failed to perform at least as well as a lawyer with ordinary training and skill in the criminal law. Arnold v. State, 685 P.2d 1261, 1264 (Alaska App. 1984). The second prong of the Risher test, that the ineffectiveness of trial counsel contributed to the outcome of the trial, "is akin to the harmless error test applied to errors of constitutional magnitude." Wilson v. State, 711 P.2d 547, 549 (Alaska App. 1985). The harmless error test, when applied to errors of constitutional magnitude, "requires reversal unless the reviewing court can declare a belief that the error was 'harmless beyond a reasonable doubt.'" Evans v. State, 550 P.2d 830, 840 (Alaska 1976), quoting Chapman v. California, 386 U.S. 18 (1967). See also, State v. Jones, 759 P.2d 558, 567-68 (Alaska App. 1988).

The standard for effective assistance of counsel is one of minimal competence. State v. Jones, 759 P.2d at 568. This Court must presume competence and apply "the further presumption that trial counsel's actions were motivated by sound tactical considerations." Id. at 569. Minimal competence does not equate to error-free representation. "There are mistakes that no competent counsel would make. But all

reasonably competent counsel can and do make mistakes." <u>Id</u>. at 568. A "mistake made out of ignorance rather than from strategy cannot later be validated as being tactically defensible." <u>Id</u>. at 569.

Mr. Lampley's ineffective assistance of counsel claim is fourfold. First, Ms. Farrell labored under conflicts of interest, those conflicts caused Mr. Lampley not to trust Ms. Farrell and lead to the breakdown in the attorney-client relationship between Mr. Lampley and Ms. Farrell. Second, and far more importantly, Ms. Farrell failed to recognize and present controlling law, based on constitutional principals, concerning Mr. Lampley's rights to freedom of speech. Third, Mr. Dieni labored under the same conflicts of interest that beset Ms. Farrell. Finally, Mr. Dieni also failed to recognize and present controlling law, based on constitutional principals, concerning Mr. Lampley's rights to freedom of speech in Mr. Lampley's appeal.

### 1. The Appeal

With regard to Mr. Deini's conflict of interest, all arguments directed at Ms. Farrell are also directed at him. He was her "partner." With regard to the failure to appeal the freedom of speech issues, that claim is raised because the State has argued that it must be and the Court has apparently agreed. Mr. Lampley observes that the waived constitutional claims and ineffective assistance of counsel claims are required to be raised in a collateral action. Alaska does not allow them to be reviewed, *ab initio*, on direct appeal. <u>Barry v. State</u>, 675 P.2d 1292, 1296 (Alaska App.1984).

Mr. Dieni's failure to raise the freedom of speech issue on appeal was not a tactical choice. He did not recognize the issue. Please see Exhibit 12, Affidavit of Michael Dieni. Had Mr. Dieni recognized and raised the speech issue on appeal the error would have been subjected to "plain error" analysis because it was not raised by Ms. Farrell in the Trial Court. <u>Carman v. State</u>, 602 P.2d 1255, 1262 (Alaska 1979); <u>Nelson</u>

v. State, 874 P.2d 298, 308 (Alaska App. 1994); Pruitt v. State, 829 P.2d 1197, 1200 (Alaska App. 1992). "Plain error" requires a showing that (1) error occurred, (2) the error was so obvious that any competent judge or lawyer would have perceived it, (3) there was no tactical reason for the defendant's lawyer not to object at trial, and (4) the error was so prejudicial to the fairness of the trial that it would be a miscarriage of justice to allow the error to go uncorrected. See Potts v. State, 712 P.2d 285, 290 (Alaska App. 1985).

Even so, the speech issue would have met the "plain error" standard and should have been raised by Mr. Dieni on appeal. The first two premises, that an error occurred and should have been noted by competent lawyers, has been argued. That Ms. Farrell lacked any tactical motivation not to raise the issue has been established by her affidavit. That the error resulted in a miscarriage of justice is the conclusion advanced by this litigation. Mr. Dieni was ineffective in failing to raise the issue on appeal.

### 2. The Trial

The trial record is replete with instances of Mr. Lampley complaining that his counsel was laboring under a conflict of interest. The fact that Mr. Lampley did not trust his trial counsel is readily apparent from the record. Similarly, representations concerning a lack of communication are scattered throughout the record.

Trial counsel was Ms. Jill E. Farrell. Ms. Farrell was an Assistant Public Defender at the time, as was Mr. Dieni. During the course of Ms. Farrell's representation, and known to the Trial Court, Mr. Lampley became a victim/witness to an assault by another Alaska Public Defender ("PD") client. Also during the course of Ms. Farrell's representation, and known to the Trial Court, Ms. Farrell became a witness to an alleged assault by Mr. Lampley. The former incident occurred on or about July 30, 1998. The latter incident occurred on or about October 8, 1998.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123

The Court does not appear to have addressed the assault on Mr. Lampley at any length.[24] The Court attempted to address the assault by Mr. Lampley by having the prosecuting authorities forswear the use of Ms. Farrell as a witness. That solution was inadequate. First, Ms. Farrell had already become a witness against her client: she had given a statement to the police. Second, Mr. Lampley knew that Ms. Farrell had already given a statement to the police. Finally, the fact that Ms. Farrell was "guaranteed"[25] not to become a witness in no way protected Mr. Lampley from harm arising from her prior statement: it could be used to "refresh" another witness' recollection. Evidence Rule 612(a). Indeed, if Mr. Lampley used it to prepare for his testimony it could be introduced against him.[26] Evidence Rule 612(a) & (b).

The record establishes the breakdown of the attorney-client relationship between Mr. Lampley and Ms. Farrell. In Love v. State, 630 P.2d 21, 25 (Alaska App. 1981), the Court of Appeals held that such a breakdown establishes a fair and just reason for withdrawal of a plea. If prejudice was established in Love when there was a "total and complete breakdown in confidence between attorney and client" (Love, 630 P.2d at 23) at a relatively simple change of plea, then forcing Mr. Lampley to trial with Ms. Farrell in the face of such a breakdown in the attorney-client relationship was even more prejudicial. As in Love, Mr. Lampley indicated that he felt his trial counsel would not properly defend him. Further, Mr. Lampley was told he could not get another attorney to represent him and that he could not

---

[24] As the Court may be aware, Mr. Lampley is not a trusting soul. While undersigned knows Ms. Farrell and Mr. Deini (and Ms. Brink) would never do so, it was entirely understandable that Mr. Lampley would come to believe that his Public Defenders would fail to zealously represent him, and leave him in jail, in order to prevent him from becoming a willing or effective witness against the Public Defender's other client.

[25] It is unclear exactly how this "guarantee" could be enforced.

[26] "Ladies and gentlemen of the jury, his own lawyer at the time, Ms Jill Farrell, said he did it." Given Mr. Lampley's propensity to testify at his trials, the above scenario and closing is entirely predictable.

represent himself. As in <u>Love</u>, Ms. Farrell confirmed that the attorney-client relationship had broken down, but Ms. Farrell claimed the breakdown was one sided.

The inability to communicate with Ms. Farrell caused her to overlook or forgo investigation of Mr. Lampley's claim that the State's evidence concerning service of the DV Orders was mistaken, at best. A precursory investigation into DOC procedures with regard to legal documents would have revealed: 1) Documents severed on a prisoner are placed in the prisoner's "jacket"; 2) Mr. Lampley's "jacket" has neither the (20) day nor the six (6) month orders in it; 3) "Bravo" module at Cook Inlet Pretrial (where Mr. Lampley was housed) does not have a "common telephone"; 4) the inmates of "Bravo" module are not allowed to use the telephone outside their cells; 5) the inmates of "Bravo" module are chained whenever they are outside their cells; and 6) Cook Inlet Pretrial maintains a log of entrances and exits to the modules.[27] The breakdown in the attorney-client relationship was at the core of Mr. Lampley's inability to convince Ms. Farrell to investigate and introduce this evidence.

More troubling than the ineffective assistance of counsel arising from the conflict of interest and the lack of communication is the failure to recognize and present the constitutional defense concerning Mr. Lampley's right to speak freely. Ultimately it is more than troubling, presentation of the defense would have saved Mr. Lampley a great deal of time in jail.

The ineffective assistance inquiry does not end with a determination that counsel's performance fell below a standard of minimal competence. There must be a reasonable doubt that the incompetence contributed to the outcome. <u>Risher</u>, 523 P.2d at 45. The freedom of speech issue is set forth in Section A, above. It is incorporated here by reference. The issue raises far more than a mere reasonable doubt.

---

[27] <u>Please see</u>, Exhibit 11, Affidavit of Counsel, David R. Weber.

Ms. Farrell was not presented with some obscure form of speech. She was not presented with a mixed formula of speech and action. No, the *actus reus* here was writing letters: placing words on paper for communication at a distance *via* the United States Postal Service.

The fact that the State sought to criminalize acts of speaking should have triggered a concern that there might be a freedom of speech issue involved in the case. The situation presents a first year Constitutional Law examination question softball.[28]

Second or third year Criminal Law should have provided the second clue. Writing letters is not a *malum in se* offense. It is, at worst, a *malum prohibitum* offense. The latter type of offense is due some minimal scrutiny to determine whether what the government purports to prohibit is within the power of the government to prohibit. When what the government purports to prohibit is some form of speech, that scrutiny should be especially strict and the issue easy to spot. It was Ms. Farrell's duty to provide that level of scrutiny. She did not.

Instead Ms. Farrell seems to have succumbed and subscribed to an oversight based on popular opinion that equates any solution to an acknowledged evil as being a social good. That is, because domestic violence is bad, any action directed at its eradication must be good. It is this syllogism that allows Courts to issue DV Orders on a daily basis that more often than not include absolute prohibitions on speech without even an attempt to fine tune them with regard to efficacy, time, place or manner.

---

[28] Indeed, one of the Jurors, Mr. Take, recognized the issue and expressed concern to the Court, *ex parte*, that he was troubled by the fact that this was "just because [Mr. Lampley had] written letters." Trial Transcript on Appeal at page 948.

It was Ms. Farrell's duty to spot and raise this issue. It was her duty to stand against the tide of popular opinion. Instead she allowed Mr. Lampley to be swept away by it. That was ineffective assistance of counsel.

### III. PRAYER

For the forgoing reasons the Court is requested vacate Mr. Lampley's conviction and to dismiss the charges against him. In the alternative only the Court is requested vacate Mr. Lampley's conviction and set the matter on for trial. Finally, the Court is requested order the State of Alaska to restore Mr. Lampley's "good time."

Respectfully submitted this 18th day of November 2002.

Vasquez & Weber, P.C.
Attorneys for Jimmy Lampley

By: David R. Weber,
Ak. Bar Assn. # 8409083

CERTIFICATE OF SERVICE

I certify that on the 18th day of November 2002, a copy of Mr. Lampley's Second Amended Application For Post Conviction Relief and the Exhibits attached thereunto were sent to the District Attorney at 310 K Street, Suite 510, Anchorage, Alaska 99501.

*David R. Weber*

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVE., SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123

Lampley v. State, 3AN-01-13209 Ci.
Second Amended Application For Post Conviction Relief
Page 26 of 26
Exhibit L
Page 26 of 51

IN THE DISTRICT COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

JIMMY LAMPLEY,

   Plaintiff,

vs.

STATE OF ALASKA,

   Defendant

Case No.: 3AN-S00-13209 CI.
T/W  3AN-S98-00397 CR.

**AFFIDAVIT OF JILL E. FARRELL**

> **VRA CERTIFICATION**
> I, David R. Weber, certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any crime unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

Jill E. Farrell, being duly sworn and upon oath, deposes and says:

1. I am a citizen of the State of Alaska and the United States, above twenty-one years of age and an attorney at law admitted to practice in the State of Alaska.

2. The Alaska Public Defender Agency ("PD") represented Mr. Jimmy Lampley in State v. Lampley, 3AN-S98-397 Cr. I was the attorney from the PD assigned to work on Mr. Lampley's case.

2. State v. Lampley, 3AN-S98-397 Cr. involved a series of charges (three Complaints) all counts alleging violation of a Domestic Violence Retraining Order in violation of AS 11.56.740. The violations all took the form of letters written to the Petitioner from jail. The case did not allege any other form or mode of violation. The letters did not contain any overt threats of violence or solicitations to perjury (at the time

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVE. SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9123   FACSIMILE (907) 279-9123

Petitioner was the alleged victim in a pending assault case, which is why Mr. Lampley was in jail.)

3. I recall my representation of Mr. Lampley as having been difficult. He did not trust me. He routinely sought my removal from his case. He asserted that I had conflicts of interest and he repeatedly claimed that I was ineffective, giving rise to another conflict of interest.

4. In the course of my representation of Mr. Lampley I was a witness to an incident where Mr. Lampley spit on the prosecutor and a Judicial Services Officer. I was asked to give a statement to the police concerning the incident and I did so. Mr. Lamply was very displeased that I had become a witness against him (thereafter the Municipality of Anchorage assured the Court that I would not be used as a formal witness should the matter be tried.) After that, Mr. Lampley's already low level of confidence and trust in me went still lower. He again asked that I withdraw.

5. While I believe that I had adequate communication with Mr. Lampley and believe that I did the best I could for him (without benefit of hindsight), I have no doubt that Mr. Lampley truly did not trust me.

6. Mr. Lampley's *actus reus* was writing letters in violation of a Court Order. Thus the case involved a *malum prohibitum*, not a *malum in se*. It never occurred to me to challenge the constitutionality of Mr. Lampley's prosecution on freedom of speech grounds. This was not a tactical choice: I never recognized or researched the issue.

FURTHER AFFIANT SAYETH NAUGHT.

By: Jill E. Farrell
Ak. Bar Assn. # 9410082

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123

Exhibit 1, Affidavit of Jill E. Ferrell
Page 2 of 3

Exhibit L
Page 28 of 51

SUBSCRIBED AND SWORN to before me this 30 day of April 2002.

*[signature]*

Notary Public In And For The State Of Alaska.
My Commission Expires: 10/04

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123

Exhibit 1, Affidavit of Jill E. Ferrell
Page 3 of 3
Exhibit L
Page 29 of 51

IN THE DISTRICT COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

JIMMY LAMPLEY, )
)
Plaintiff, )
)
vs. )
)
STATE OF ALASKA, )
)
Defendant )
) Case No.: 3AN-S00-13209 CI.
   T/W    3AN-S98-00397 CR.

**AFFIDAVIT OF SUSAN ORLANSKY**

> **VRA CERTIFICATION**
> I, David R. Weber, certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any crime unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

Susan Orlansky, being duly sworn and upon oath, deposes and says:

1. I am a citizen of the State of Alaska and the United States, above twenty-one years of age and an attorney at law admitted to practice in the State of Alaska.

2. I have extensive experience in the practice of criminal law before the Courts of the State of Alaska. I was head of the Appellate Division of the Alaska Public Defender Agency for several years. I have engaged in extensive motions practice before the Trial Courts and have tried cases to verdict. As a result of my training and experience I am familiar with the standards of practice for Alaska criminal defense attorneys, ineffective assistance of counsel and prejudice resulting from ineffective assistance of counsel. I believe that I am qualified to render expert opinions on those subjects.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123

3. I have been consulted by David R. Weber and asked to render an opinion in the above captioned action concerning the standards of practice for Alaska criminal defense attorneys as those standards may bear upon Mr. Lampley's claim that he received ineffective assistance of counsel in State v. Lampley, 3AN-S98-397 Cr.

4. I have not reviewed the Court's file in State v. Lampley, 3AN-S98-397 Cr., Mr. Weber's file nor the trial counsel's file. My information concerning Mr. Lampley's case comes solely from my conversation with Mr. Weber.

5. I understand that Mr. Lampley was charged with thirteen (13) counts of violating a domestic violence restraining order in violation of AS 11.56.740. I understand the order in question to have forbidden Mr. Lampley to contact the Petitioner in any manner, direct or indirect. I understand that Mr. Lampley was alleged to have violated the terms of that order by writing thirteen letters to the Petitioner from jail. I have not read the letters.

6. I have not researched free speech issues as they relate to the application and enforcement of AS 11.56.740. Nor have I researched whether the letters at issue, given their content, could, consistent with constitutional limitations, be made the subject of a criminal action. Accordingly, I do not offer an opinion at this time as to whether Mr. Lampley's trial counsel should have raised the issue after researching it. Nor do I offer an opinion at this time as to whether Mr. Lampley was prejudiced by the failure of his trial counsel to research and raise the issue.

7. I understand that Mr. Lampley's *actus reus* was writing letters in violation of a Court Order. Thus the case involved acts that were *malum prohibitum*, not *malum in se*. There is longstanding federal authority (for example, Watts v. United States, 394 U.S. 705 (1969) and its progeny) addressing the interplay of free speech issues with the criminal law. Alaska criminal defense attorneys have recognized and are aware of free

speech defenses to criminal charges. See, Marks v. City of Anchorage, 500 P.2d 644, 646 (Alaska 1972); McKillop v. State, 857 P.2d 358 (Alaska App. 1993). Prior to Mr. Lampley's 1998 trial the possibility of a constitutional defense to the related Stalking statute was noted by the Court of Appeals in Petersen v. State, 930 P.2d 414, 431 (Alaska App.1996). And while Alaska's application of a free speech defense to assault charges (Powell v. State, 12 P.3d 1187 (Alaska App. 2000)) postdated Mr. Lampley's trial, that decision was based on much older precedent. It is my opinion that an Alaskan trial counsel who does not at least recognize and research possible constitutional defenses in cases where the *actus reus* is some form of speech fails to meet the applicable standard of practice and is thus ineffective.

FURTHER AFFIANT SAYETH NAUGHT.

By: Susan Orlansky
Ak. Bar Assn. # 8106042

SUBSCRIBED AND SWORN to before me this 29 day of April 2002.

Notary Public In And For The State Of Alaska.
My Commission Expires: 1/10/03

OFFICIAL SEAL
STATE OF ALASKA
NOTARY PUBLIC
STEPHANIE K. CARPER
My Comm. expires: January 10, 2003

STATE OF ALASKA

DEPARTMENT OF CORRECTIONS

## TIME ACCOUNTING
### 1980 CODE

OBI# 210735

NAME: (Last, First, M.I.) Lampley, Jimmy

D.O.B. 6-10-71

TIME SHEET INITIATED BY: Ofc Demmons CIPT

| CR NUMBER | SENTENCE DATE | SENTENCE BEGAN | SB VALUE | MAX REL DATE | MRD VALUE | SENTENCE(S) |
|---|---|---|---|---|---|---|
| COMPOSITE | | 12-28-97 | 15338 | 10-10-2001 | 16720 | 6MOS/1200 DAYS |
| 3AN-m94-421 | 11-14-97 | 12-28-97 | 15338 | 5-16-98 | 15477 | 140 DAYS |
| 3AN-m97-9170 | 3-3-98 | 12-29-97 | 15339 | 6-26-98 | 15518 | 180 DAYS |
| 3AN-m97-9035 | 10-7-98 | 12-29-97 | 15339 | 12-23-98 | 15698 | 360 DAYS |
| 3AN-m97-10543 CTI | 11-2-98 | 12-24-98 | 15699 | 6-23-99 | 15880 | 6 mos |
| " " " CTIF | 11-2-98 | 6-24-99 | 15881 | 8-22-99 | 15940 | 60 DAYS |
| 3AN-S98-3592 | 8-5-99 | 8-23-99 | 15941 | 10-21-99 | 16000 | 60 DAYS |
| 3AN-S98-397 | 2-5-99 | 10-22-99 | 16001 | 10-10-2001 | 16720 | 720 DAYS |

) CONCURRENT

| BLOCK PROJECTION | PRD VALUE | PROJECTED RELEASE DATE | PRESUMPTIVE SENTENCE | PAROLE ELIGIBILITY DATE |
|---|---|---|---|---|
| 1383 ÷ 3 = 461 | 16259 | 7-6-2000 | YES ( ) NO (✓) | N/A |

| ACTION CODE | DATE | ADJUSTMENT | GOODTIME FORFEIT/RESTORED | ADJUSTED R.O VALUE | ADJUSTED RELEASE DATE | PRIOR SERVICE ||||
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | CASE NUMBER(S) | DATE/TIME BOOKED | DATE/TIME RELEASED | DAYS/HOURS CREDIT |
| 12 | 12-5-98 ERRONEOUS RELEASE | +1 DAY | | 16260 | 7-7-2000 | | | | |
| 2 | GOOD TIME FORFEITED See Back | +461 DAYS | | 16721 | 10-11-2001 | m94-421 | 11-6-97 (IN CUSTODY) 12-8-97 | 11-6-97 12-9-97 | 1 2 |
| 3 | 6-10-99 | VOID | VOID | 16961 | 1-09-01 | m97-9035 | 12-8-97 | 12-9-97 | 2 |
| | | | | | | m97-9170 | 12-8-97 | 12-9-97 | 2 |
| | | | | | | m97-10543 | 12-31-97 REMAND | | |
| | | | | | | TOTAL PRIOR SERVICE | | | |

1. GOODTIME NOT AWARDED
2. GOODTIME FORFEITED
3. GOODTIME RESTORED
4. PAROLED
5. ESCAPED
6. RELEASED ON BOND
7. RETURNED TO CUSTODY
8. SENTENCE MODIFICATION
9. NEW SENTENCE
10. RELEASED ON M.R.
11. CORRECT PRIOR ERROR
12. OTHER

20-602.03 (11/84)

STATE OF ALASKA  DEPARTMENT OF CORRECTIONS

REQUEST FOR INTERVIEW
SCCC

RECORDS REQUEST

Name: Jim Lampley  OBS# 210735  MOD: C-5  Date: 8-5-01

To: SGT. PARRA

Request: I need the date of the last o-board guilty verdict, and what type i.e. Minor, low moderate, High Minor and Major.

Prisoner Signature:

Action Taken: Last guilty finding 9/26/00. Date of IR 9/7/00 (B)(2) Assault Upon Staff.

Employee Signature: [signed]  Date: 8/6/01

Final Action Taken:

I/M ACKNOWLEDGEMENT

Employee Signature:  Date:

Instructions: Requests must be specific and state the action being requested (i.e. interview, hearing, etc.). Requests are to be written within the confines of designated areas.

Distribution: Original to Case Record

EXHIBIT 4
Page 1 of 1

Exhibit L
Page 34 of 51