IN THE DISTRICT COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT

| | |
|---|---|
| JIMMY A. LAMPLEY, )<br>)<br>Applicant, )<br>)<br>vs. )<br>)<br>STATE OF ALASKA, )<br>)<br>Respondent. )<br>_____ ) | Filed in the Trial Courts<br>STATE OF ALASKA, THIRD DISTRICT<br><br>JUN 1 3 2003<br><br>Clerk of the Trial Courts<br>By _____ Deputy |

Case No. 3AN-00-13209 CI.
t/w Case No. 3AN-S98-00397 CR.

## ORDER DENYING POST CONVICTION RELIEF

This is a second amended application for post conviction relief.

### Facts and Procedural Status

Applicant was in jail in January 1998 awaiting trial for assaulting D.M. After receiving several communications from applicant, D. M. sought and received an ex-parte twenty-day domestic violence protective order (DVPO) on January 7, 1998. Pursuant to the terms of that order, a long-term domestic violence protective order hearing was conducted on January 26, 1998. A long-term DVPO was granted to D.M. at the January 26th hearing. Applicant was incarcerated at the time of both DVPO hearings and did not participate in either one. Applicant wrote letters to D.M. after issuance of the twenty-day protective order and continued to write letters to D.M. after the long-term order was granted. He was subsequently convicted of thirteen counts of violating the domestic violence protective orders based upon writing letters to D.M. Eleven of the charges addressed letters written during the twenty-day protective order and two addressed letters written after the long-term protective order was granted. The

applicant appealed the conviction and sentence and that appeal was denied. <u>See</u>, <u>Lampley v. State</u>, 33 P.3d 184 (Alaska App. 2001). Applicant sought review by the Alaska Supreme Court and that was denied. Applicant submitted a pro se application for post conviction relief on December 26, 2000. Counsel was appointed to represent defendant and an amended application for post conviction relief was filed on April 30, 2002. With the consent of the State, a second amended application for post conviction relief was filed on November 18, 2002. After assignment of the case, the court set a deadline for the State to respond and the applicant to reply. The State responded on May 5, 2003.

Applicant asserts four bases for his request for post conviction relief. *First*, he asserts writing letters is constitutionally protected speech that cannot be prohibited or criminalized. *Second*, as to counts XII and XIII, that addressed letters written after entry of the long-term DVPO, applicant asserts he was denied due process because he was denied his right to be present and not provided with counsel. *Third*, applicant asserts his trial counsel, a public defender, had a conflict of interest and therefore he was denied effective assistance of counsel. *Fourth*, applicant asserts his appellant counsel, who was also a public defender, had the same conflict of interest and therefore he was denied effective assistance of counsel on appeal.

## Legal Analysis

1. **Freedom of Speech**

The applicant asserts that he had a constitutional right to write letters to D.M. even if there was a DVPO that included a prohibition on any contact, direct or indirect with D.M. The law is clear that limits can be placed upon speech. There are in fact

times when we speak by sufferance, not right. See, e.g. <u>Marks v. City of Anchorage</u>, 500 P.2d 644, 647 (Alaska 1972)(the state may limit speech in a courtroom while the court is in session); <u>Anniskette v. State</u>, 489 P.2d 1012, 1014 (Alaska 1971) (the category of "fighting words" is recognized as another exception to the freedom of speech guaranteed by the constitution); <u>Petersen v. State</u>, 930 P.2d 414, 431 (Alaska App. 1996)(the Constitution does not guarantee a right to threaten other people; where words or actions cause others to reasonably fear for their safety, the Constitution does not provide a refuge.); <u>Turney v. State</u>, 936 P.2d 533, 541 (Alaska 1997)(utterances involved in obstruction of justice are not protected by the First Amendment.); <u>Virginia v. Black</u>, 123 S.Ct. (2003)(cross-burning with the intent of intimidating any person or group of persons may be prohibited).

Applicant discounts the right of D.M. to seek to have applicant not contact her. The court takes notice that it is routinely reported in domestic violence studies that abusers control victims not solely through violence, but also through establishing power and control in the relationship. See, e.g. <u>Domestic Violence</u>, APRI, 1997. In this case, the applicant wrote letters to D.M. from jail and expressly acknowledged he was writing in violation of the DVPO. He urged D.M. to bring those violations to the attention of the authorities and told her he would fight the charges and force her into court to confront him in a series of trials. The obvious intent was to demonstrate to D.M. that even while in jail, applicant was not willing to abide by court orders. Therefore, even with a court order D.M. had no protection from him. There can be no doubt applicant intended to demonstrate power over D.M. and to intimidate her by these letters.

Intimidating speech is not necessarily less intimidating by the fact it is written or transmitted via the mail.

AS 18.66.100(c)(2) allows the court to limit or prohibit contact between a petitioner for a DVPO and a respondent. Applicant maintains that statute improperly limits speech. At a DVPO hearing the court is required to find probable cause to believe the petitioner for a DVPO has been a victim of domestic violence prior to entering a protective order. The court must then enter a specific order that the respondent not contact the petitioner. The applicant asserts such an order is too broad, as it would prohibit placing notices in a newspaper, skywriting, etc. However the Alaska Supreme Court has recently explained exactly what would be required to support a prosecution for violating a DVPO. These activities would only be criminal as a violation of a DVPO if the evidence established the perpetrator knew of the order, its literal requirements and recklessly disregarded a substantial and unjustifiable risk that the conduct was prohibited by the order. See State v. Strane, 61 P.3d 1284, 1292 (Alaska 2003). Under Strane, if a respondent, knowing there was a DVPO prohibiting his direct or indirect contact with a petitioner, took actions designed to contact the petitioner directly or indirectly, he would be in violation of the DVPO.

Applicant cites McKillop v. State, 857 P.2d 358 (Alaska App. 1993) to support the position that the limitation of speech in a DVPO is overbroad. However, that case supports the constitutionality of the DVPO statute. Where conduct and not merely speech is involved, ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legal sweep. McKillop at 363, citing Broadrick v. Oklahoma, 413 U.S. 601, 615; 93 S.Ct. 2908, 2918; 37 L.Ed. 830 (1973).

The DVPO statute and order seeks to legitimately regulate <u>conduct</u> of an individual toward their victim of domestic violence. Similarly, <u>Siggelkow v. State</u>, 731 P.2d 57 (Alaska 1987) would appear to support the validity of a court order, under the right facts, for an individual to have no contact with someone. The court upheld the criminal contempt conviction of Siggelkow for violating a divorce court's order to have no contact with his ex-wife. The Supreme Court found such an order within the equitable power of the superior court. The legislature has determined victims of domestic violence may need to be protected by the courts through issuance of DVPOs that include prohibiting the perpetrator of the violence from contacting the victim. That meets a significant societal interest to protect victims of domestic violence from intimidation, control and continuing and/or escalating violence. Finally, courts routinely make no contact with victims of violence a condition of bail. In appropriate cases, bail conditions may also prohibit contact with witnesses and co-defendants, in addition to victims. Violations of bail conditions could lead to prosecution for contempt of court under AS 09.50.010(5) or for violation of conditions of release under AS 11.56.757. The right of a victim to be protected by bail conditions is set out in the constitution of Alaska at Article I, section 24. Notably, when considering bail condition in domestic violence cases, the court is required to consider AS 18.66.100(c), including the prohibition on any contact direct or indirect with the victim.

  The limitation on speech by a DVPO under AS 18.66.100 does not violate constitutional protections of free speech and is essential to assuring victim rights under Article I, section 24 of the Alaska constitution.

2.  **Lack of Due Process in Issuing the Long-term Protective Order.**

Applicant asserts he was denied due process because he was incarcerated at the time of the long-term protective order hearing and was both not present and not provided with counsel.

Applicant did not include copies of the records from the domestic violence case file, 3AN-98-44CI, with this application. The application at footnote 2 stated "the Court may take judicial notice of its own files." The footnote went on to state the application "incorporates that Court file herein by reference as if fully set forth at this point." The court would note the burden is on the applicant to present sufficient evidence to support the requested relief. Where the records are unavailable, an affidavit from the applicant setting out alleged facts under oath should have been submitted with the application. State v. Jones, 759 P.2d 558, 566 (Alaska App. 1988).

The court, for purposes of adequately addressing this issue, obtained the micro-fiched files on 3AN-98-44CI.

An indigent person does not have a right to appointed counsel in most civil cases. Appointed counsel has been provided in certain civil cases or quasi-civil proceedings including cases involving termination of parental rights, child custody, paternity suits, and civil contempt proceedings for nonpayment of child support. See, Midgett v. Cook Inlet Pre-Trial Facility, 53 P.3d 1105, 1111 (Alaska 2002). Applicant's claim of denial of due process for failure to provide counsel at a DVPO hearing does not fall into a recognized exception for appointment of counsel in a civil proceeding. Therefore, a balancing test is utilized to determine what process is due. That test looks at three factors: the private interest affected by the official action; the

risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally the government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail. Midgett, at 1111, citing In the Matter of K.L.J., 813 P.2d 276, 279 (Alaska 1991). A long-term DVPO hearing principally limits contact between the petitioner and respondent. It can secondarily affect access to property and, if children are involved, custody of the children. That affect is temporary. If the custody of children is at issue, certainly that might present a compelling interest. Both the twenty-day and long-term DVPOs entered in applicant's case reflect the court did not consider child custody. Applicant was not denied due process by failure to appoint counsel for his long-term DVPO hearing.

    Even if the DVPO proceedings were evaluated under the balancing test set out in Midgett, the custody determination in a DVPO hearing is only a temporary determination. The parties can seek modification of that order, seek a child custody hearing or file for divorce and seek resolution of child custody in that proceeding. Property concerns and/or limitations on contact between the petitioner and respondent decided at a DVPO hearing would not create a compelling case for appointing counsel. If custody of children is involved in a DVPO hearing, the risk of an erroneous deprivation of the right to custody through the procedures used and the probable value of including a right to counsel are both minimal. As noted, parties can readily seek to modify a DVPO through the existing procedures, and seek resolution of custody through a custody or divorce proceeding, both of which could supercede a DVPO. Additionally, a DVPO by its terms has a limited life expectancy. There is no permanent

deprivation of custody. Finally, the fiscal and administrative burden to provide counsel for long-term DVPO proceedings that include child custody issues would be substantial. The balance does not indicate appointing counsel for long-term DVPOs is required.

Applicant also asserts the failure to transport him from jail to the long-term hearing was a violation of due process. The notice for a long-term hearing advises the respondent of the right to appear and that if the date and time are not convenient he could contact the court to reschedule the hearing or to request to appear telephonically. There is no indication in the file that the applicant/respondent requested to reschedule or appear telephonically. It is also unknown how the court hearing the long-term DVPO request would have responded to a request to be transported from confinement to participate in the hearing. Generally, transportation by DOC is not provided to civil proceedings. See, e.g. Midgett, 53 P.3d at 1112. But absent a request from applicant to reschedule, appear telephonically or to be transported to the hearing, this court finds applicant failed to preserve this issue.

3. **Ineffective Counsel at Trial and on Appeal.**

Applicant asserts his trial and appellate counsel were ineffective because of four issues:

    a. Trial counsel, a public defender, had a conflict of interest with applicant that led to a breakdown in communication;

    b. Trial counsel failed to recognize and present controlling law on applicant's right to freedom of speech;

    c. Appellate counsel, another public defender, inherited the conflict of interest trial counsel had; and

    d. Appellate counsel failed to recognize and present controlling law on applicant's right to freedom of speech.

a. As was recognized in <u>Annas v. State</u>, 726 P.2d 552, 559 n.7 (Alaska App. 1986) appointed lawyers and their clients may have strong disagreements over the control and direction of a case. However, just because a client does not like the decisions made by the trial counsel does not mean there was ineffective assistance of counsel. Appointed counsel "must undertake representation and protect the defendant's interests regardless of the defendant's willingness to cooperate." <u>Annas</u> at 558. Applicant had requested a new counsel due to disagreements with trial counsel over handling of his case. Those requests were apparently denied. Applicant has not included a transcript of those proceedings or provided reference to exactly where they are located in the court proceedings. The portions of a record relied upon in a post conviction proceeding must be specifically indicated to the judge. See, <u>Fajeriak v. State</u>, 520 P.2d 795, 806 (Alaska 1974). The reasons the court denied those requests are therefore not known.

Subsequently, during a court proceeding, applicant spit on the prosecutor and a judicial services officer in the presence of his counsel. Applicant's trial counsel was asked to provide a statement to the police concerning this incident and did so. Applicant asserted this created a conflict of interest between himself and his trial counsel. The trial court inquired as to this issue and was advised the municipality would not be calling applicant's trial counsel as a witness in the case. The trial counsel advised the court this increased applicant's suspicions of her and her representation, but that she was able to properly represent the applicant. The trial court determined this was not a reason to replace the trial counsel. This court agrees with that determination. Applicant's trial counsel was not divulging confidential attorney client information when asked to provide a statement as to what she had seen in the courtroom. Serious

questions about manipulation of the judicial system would arise if defendants who have sought to replace appointed counsel and been unsuccessful could then engage in misconduct in the presence of their counsel and use that as a basis to receive a new counsel.

In the affidavit filed by applicant's trial counsel with the PCR package (see exhibit 1 of second amended PCR application), she notes there was a strained relationship with the applicant, but that she felt she was able to continue in his representation. That was the same response she gave to the trial judge. Applicant asserts the attorney client relationship had broken down. However the courts have regularly held a defendant with an appointed counsel has no right to a meaningful relationship with that counsel. See, V. F. v. State, 666 P.2d 42, 46 (Alaska 1983); Mute v. State, 954 P.2d 1384, 1385 (Alaska App. 1998); and Monroe v. State, 752 P.2d 1017, 1020 (Alaska App. 1988).

The court was able to find three Alaska cases involving bad attorney client relationships where there was a finding of deprivation of the right to counsel. Two involved hired counsel (Newcomb v. State, 651 P.2d 1176 (Alaska App. 1982); Smith v. State, 651 P.2d 1191 (Alaska App. 1982)) and one involved an appointed counsel (Love v. State, 630 P.2d 21 (Alaska App. 1981). All of these cases were decided prior to the decision in Annas v. State, 726 P.2d 552 (Alaska App. 1986) and appear to reflect one common aspect in determining when deprivation of counsel occurred: deprivation of the right to counsel occurs when a lawyer in response to a dispute with a client is no longer willing to advise the client, so that the client is effectively left with no counsel at all; or because of the breakdown in communications the counsel has inadequate time to

advise the client. Trial counsel's response to the court and in her affidavit (Ex 1) reflect she was able to adequately represent the applicant. As noted previously, applicant may have been unhappy with his trial lawyer, but a "meaningful relationship" is not required between a defendant and his counsel. The record would need to show the relationship between applicant and his trial counsel had deteriorated to the point where the trial counsel was incapable of effective communication or objective decision-making. See, Mute v. State, 954 P.2d 1384, 1386 (Alaska App. 1998). The strained relationship in this case did not require replacement of trial counsel. See also, Annas v. State, 726 P.2d 552, 559 n.7.

b.    Applicant asserts trial counsel was ineffective because a defense to the charges was not raised based upon freedom of speech. The test for whether counsel was ineffective is laid out in Risher v. State, 523 P.2d 421 (Alaska 1974). That is a two-prong test. The first prong requires trial counsel to "perform at least as well as a lawyer with ordinary training and skill in the criminal law" and to "conscientiously protect his client's interest, undeflected by conflicting considerations." Id. at 424. The second prong indicates even if counsel's conduct was incompetent, reversal of a conviction occurs only if the conduct contributed to the conviction. Id. at 425.

There is a strong presumption of competence whenever a trial counsel's performance is evaluated under Risher. State v. Jones, 759 P.2d 558, 568-69 (Alaska App. 1988). Competent counsel does not necessarily raise every possible motion on a client's behalf. Gaona v. State, 630 P.2d 534, 538 (Alaska App. 1981). A defense lawyer's failure to pursue a potentially dispositive motion is not always a sign of incompetence. The question is whether the lawyer had sound reasons not to file the

motion. <u>Steffensen v. State</u>, 837 P.2d 1123, 1126-27 (Alaska App. 1992). Applicant has submitted an affidavit from his trial counsel (See, Ex 1) indicating the failure to file a challenge to the charges based upon freedom of speech in this case was not a tactical decision. Counsel simply did not consider whether freedom of speech was a potential defense to a charge of writing letters in violation of a DVPO. Applicant has also included an affidavit from a highly experienced defense counsel that asserts failure to recognize that freedom of speech might be a defense to the charges in this case and to research that possibility would amount to ineffective assistance of counsel. See Exhibit 2. The court is reluctant to reach a similar conclusion. The applicant must establish that no competent attorney would have done things as badly as his trial counsel did. The constitutional guarantee of effective assistance of counsel does not assure "error-free representation." The question is whether trial counsel's actions were minimally competent. <u>Tucker v. State</u>, 892 P.2d 832, 835 (Alaska App. 1995). AS 11.56.740 making violation of a DVPO a crime is not new. Yet there are no cases reported in Alaska addressing the interrelationship between freedom of speech and violation of a DVPO. Is the court to assume every defense attorney faced with defending charges for oral or written communications in violation of a DVPO was incompetent? Or that after researching the issue they all chose not to pursue that defense? Certainly if no other Alaska defense counsel has raised this defense the court would be hard pressed to find trial counsel in this case was ineffective for not researching that issue. That leads to the second prong of the ineffective assistance of counsel test.

Even if the trial counsel's performance falls below the level of minimal competence, the conviction will not be overturned if the incompetence made no

difference. The applicant must establish that the motion would have prevailed if it had been made. Tucker, 892 P.2d at 836. As noted above, the court finds the applicant's right to freedom of speech was not violated by the DVPO or the charges from violating that order.

c.   Applicant asserts his conflicts with his trial counsel are equally applicable to his appellate counsel because they both work for the public defender agency. See the findings above in section 3a.

d.   Applicant also asserts his appellate counsel was ineffective for failing to recognize and raise his right to freedom of speech as a defense to the charges in this case. See affidavits at exhibits 2 and 12 of the application. The court finds that there was no prejudice to the applicant in failing to identify this issue. See paragraph 3b above for legal analysis.

Applicant has referenced DOC records of disciplinary proceedings. Some Department of Corrections records were included with the application for post conviction relief at exhibits 3 through 8, however the application notes some records were unable to be obtained. There is no indication in the file that a request for a subpoena for those additional records was made. Without determining whether such a request would have been granted, applicant should have attempted to obtain any necessary records required for the court to adequately review his application. If the records are unavailable, applicant should have included his allegations of fact as to

those documents separately under oath. State v. Jones, 759 P.2d 558, 566 (Alaska App. 1988). The portions of a record relied upon in a post-conviction proceeding must be specifically indicated to the judge. See, Fajeriak v. State, 520 P.2d 795, 806 (Alaska 1974).

Applicant raises concerns about the loss of good time that occurred while he was incarcerated. The court finds these concerns improperly raised in this action. An administrative appeal is the sole procedural mechanism for challenging Department of Corrections disciplinary decisions. See Higgins v. Briggs, 876 P.2d 539, 541 (Alaska App. 1994).

There is no issue of material fact in this case. There is no need for a hearing in this case. See, State v. Jones, 759 P.2d 558, 566 (Alaska App. 1988).

CONCLUSION

The petition for post conviction relief is denied.

DATED this 13 day of June 2003, at Anchorage, Alaska.

*Jack W. Smith*
JACK W. SMITH
District Court Judge

I certify that on 6/16/03 a copy of the above was mailed to each of the following at their addresses of record: D. Weber, DA (Hanley)
_____
Secretary