NOTICE

*Memorandum decisions of this court do not create legal precedent.  <u>See</u> Alaska Appellate Rule 214(d) and Paragraph 7 of the Guidelines for Publication of Court of Appeals Decisions (Court of Appeals Order No. 3).  Accordingly, this memorandum decision may not be cited as binding precedent for any proposition of law.*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JIMMY A. LAMPLEY, ) | |
| ) | Court of Appeals No. A-8629 |
| Appellant, ) | Trial Court Nos. 3AN-00-13209 CI & |
| ) | 3AN-98-397 CR |
| v. ) | |
| ) | <u>MEMORANDUM OPINION</u> |
| STATE OF ALASKA, ) | |
| ) | <u>AND JUDGMENT</u> |
| Appellee. ) | |
| ) | [No. 4968 — February 16, 2005] |

Appeal from the District Court, Third Judicial District, Anchorage, Jack W. Smith, Judge.

Appearances: David R. Weber, Vasquez & Weber, P.C., Anchorage, for Appellant.  Curtis Wayne Martin, Assistant District Attorney, Leonard M. Linton Jr., District Attorney, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: Coats, Chief Judge, and Mannheimer and Stewart, Judges.

STEWART, Judge.

Jimmy A. Lampley was convicted on thirteen counts of violating a domestic violence protective order that prevented him from contacting his girlfriend.[1]  The

---

[1] *Lampley v. State*, 33 P.3d 184, 184-85 (Alaska App. 2001).

convictions were based on thirteen letters he wrote and mailed to the woman in January of 1998.[2]  We affirmed his convictions and composite sentence on direct appeal.[3]

While his appeal was pending, Lampley applied for post-conviction relief. Ultimately, despite two amendments, District Court Judge Jack W. Smith dismissed the application on the pleadings. Lampley appeals. For the following reasons, we affirm Judge Smith's decision.

*Facts and proceedings*

In December 2000, Lampley, acting *pro se*, filed an application for post-conviction relief. In April, 2002 — represented by an attorney — he filed an amended application. This application was later amended a second time.

In his second amended application, Lampley made three claims that his conviction violated the federal and state constitutions. He claimed that he was entitled to relief because domestic violence restraining orders had improperly curtailed his right to free speech, because his right to due process had been violated because he was unable to attend the long-term protective order hearing, and because his right to due process had been violated because he was not provided counsel at public expense for the long-term protective order hearing.

Lampley also claimed that the Department of Corrections had improperly denied his request that his forfeited "good time" be restored.

Finally, he claimed that he had received ineffective assistance of counsel both during trial and during the appeal. Lampley claimed that his trial attorney "labored under conflicts of interests" which caused Lampley not to trust her, resulting in a

---

[2]  *Id.* at 190.

[3]  *Id.*

breakdown of the attorney-client relationship. He also claimed that she "failed to recognize and present controlling law, based on constitutional princip[les], concerning [Lampley's] rights to freedom of speech." Lampley added that his appellate counsel "labored under the same conflicts of interest that beset [Lampley's trial counsel]," and that he too "failed to recognize and present controlling law, based on constitutional princip[les], concerning [Lampley's] rights to freedom of speech."

Lampley included affidavits from his trial and appellate counsel that showed that neither thought to raise a challenge to the protective order based on freedom of speech. Both attorneys also said that they did not make tactical decisions not to raise free speech challenges. Lampley also included an affidavit by a third attorney who, because she had "not researched free speech issues as they relate to the application and enforcement of AS 11.56.740" could not give an opinion "as to whether [Lampley's] trial counsel should have raised the issue after researching it ... [or] whether [Lampley] was prejudiced by the failure of his trial counsel to research and raise the issue." But she did say that, in her opinion, an "Alaskan trial counsel who does not at least recognize and research possible constitutional defenses in cases where the *actus reus* is some form of speech fails to meet the applicable standard of practice and is thus ineffective."

Judge Smith found that there was "no issue of material fact in this case [and] no need for a hearing." He then rejected all of Lampley's claims. Lampley appeals.

*Discussion*

*Lampley's free speech and due process claims*

On appeal, Lampley argues that the domestic violence protective order that he was convicted of violating was an unconstitutional restraint on his right to free speech. He also claims that his right to due process was violated because he was unable to attend

either the *ex parte* 20-day hearing or the long-term hearing, and because he was not afforded the right to appointed counsel at public expense for either hearing.

Lampley did not raise these claims during his criminal trial or in his subsequent appeal. Under AS 12.72.020, he could not pursue these claims for the first time in an action for post-conviction relief.

Although AS 12.72.010 (1) provides that a "person who has been convicted of, or sentenced for, a crime may institute a proceeding for post-conviction relief if the person claims ... that the conviction or the sentence was in violation of the Constitution of the United States or the constitution or laws of this state," this section is limited by AS 12.72.020(a)(2). Section (a)(2) provides that a "claim may not be brought under AS 12.72.010 or the Alaska Rules of Criminal Procedure if ... the claim was, or could have been but was not, raised in a direct appeal from the proceeding that resulted in the conviction." The State, in its trial court pleadings, urged Judge Smith to reject Lampley's free speech and due process claims on these grounds. The State acknowledged that Lampley could assert that his counsel had been ineffective for not raising this issues at the criminal trial or in the criminal appeal, but insisted that he was not allowed to litigate for the first time in a post-conviction relief application a claim that the protective order violated the constitution. Lampley filed his second amended application to raise this ineffective assistance theory because of the State's pleadings.

We agree with the State's argument. Because AS 12.70.020(a)(2) did not allow Lampley to litigate these constitutional claims on their merits for the first time in a post-conviction action, no error occurred when Judge Smith rejected them.

*Lampley's ineffective assistance of counsel claims*

On appeal, Lampley claims that both his trial and appellate attorneys "labored under a conflict of interests such that they should have withdrawn from his

representation." He argues that because of these conflicts, there was a "breakdown of the attorney-client relationship." Lampley also claims that both attorneys were ineffective because neither thought to challenge the protective order on free speech grounds.

An applicant for post-conviction relief claiming ineffective assistance of counsel must first plead that his or her counsel failed to perform at least as well as a lawyer with ordinary training and skill in the criminal law.[4] Second, the applicant must plead that there is a reasonable doubt as to whether counsel's lack of competency contributed to the conviction.[5] As the applicant, Lampley also bears the burden of presenting facts which, if proved, would overcome the strong presumption that counsel performed competently and that the conduct of his trial attorney was motivated by sound tactical decisions.[6]

*Attorney-client breakdown*: *Lampley's claim against his trial counsel*

In his application, Lampley alleged that two events created conflicts with his trial counsel, and that these conflicts resulted in the breakdown of his attorney-client relationship. First, he claimed that while he was incarcerated during the course of the trial, he was assaulted by another inmate who, like Lampley, was represented by the Public Defender Agency. Second, he claimed that his trial counsel had become a witness against him when Lampley committed an "alleged assault" in her presence during the trial. He also pointed out that the counsel provided a statement describing what she had witnessed during the ensuing investigation of the trial incident.

---

[4]   *Risher v. State*, 523 P.2d 421, 424 (Alaska 1974).

[5]   *Id*. at 425.

[6]   *See State v. Jones*, 759 P.2d 558, 569 (Alaska App. 1988).

According to the record, however, the trial counsel brought both of these events to the attention of the judge who presided over Lampley's criminal trial. After each incident, the trial judge held a hearing to address what had transpired and whether the trial counsel should withdraw. On both occasions, Lampley's attorney-client relationship with his trial counsel was discussed. And according to the record, after each hearing, the trial judge ruled that there was no justification for the trial counsel to withdraw because the events had not created any prejudicial conflicts of interest, nor had they adversely affected the attorney-client relationship.

We have previously noted that in some cases, an attorney's conflicts of interest are "a species of ineffective assistance of counsel."[7] And we have also pointed out that "a defendant's claim of ineffective assistance of counsel can rarely be resolved based solely on the record of the proceedings in which the defendant allegedly received the ineffective assistance."[8] But procedurally, Lampley's case is different. Here, the record shows that on both occasions, the question of whether Lampley's trial attorney should withdraw because of conflicts of interest or attorney-client relationship problems was addressed and ruled on by the trial judge. If Lampley wanted to challenge the trial court's rulings, he was obligated to do so in his direct appeal. Because Lampley did not do so, he was not allowed under AS 12.72.020(a)(2) to challenge them for the first time in an application for post-conviction relief. Accordingly, no error occurred when Judge Smith rejected Lampley's claims against his trial attorney.

---

[7] *See Hutchings v. State*, 53 P.3d 1132, 1135 (Alaska App. 2002) (a question of an attorney's conflicting loyalty to another client is a species of ineffective assistance of counsel).

[8] *Id.*

*Attorney-client breakdown*: *Lampley's claim against his appellate counsel*

Lampley summarily asserted in his application that his appellate counsel "labored under the same conflicts of interest that beset [trial counsel]. ... With regard to [appellate counsel's] conflict of interest, all arguments directed at [trial counsel] are also directed at [appellate counsel]" because both, as assistant public defenders, were "partners." This assertion constituted Lampley's entire allegation against his appellate counsel on this issue.

The problem with Lampley's application is that it does not specifically make any allegations against his appellate counsel. In particular, Lampley's application makes no claim addressing his attorney-client relationship with his appellate counsel. Nothing in his pleadings showed that he had any problems communicating with his appellate counsel, or that he had ever objected to his appellate counsel representing him during the appeal. Even though Lampley's trial counsel and his appellate counsel both worked for the Public Defender Agency, they provided different services at different times during the criminal process. In addition, a defendant may choose to have an attorney continue to represent him or her even if there are potential conflicts.[9] Accordingly, Lampley's arguments regarding problems he perceived with his *trial counsel* did not present any facts that, if proven, would support a claim that his attorney-client relationship with his *appellate counsel* had broken down or that his appellate counsel labored under a conflict of interest. Even in the instant appeal, Lampley does not expressly claim or argue that his attorney-client relationship with his appellate counsel broke down.

---

[9] *Cf. Daniels v. State*, 17 P.3d 75, 86-87 (Alaska App. 2001) (In a murder case, this court overturned the trial court's decision to disqualify, over defendant's objection, assistant public defender when it was discovered during trial that assistant public defender had previously represented an important government witness who was also, potentially, a suspect).

Furthermore, even if Judge Smith had construed Lampley's claim as an allegation that his appellate counsel was ineffective because he did not challenge the trial court's rulings in the direct appeal, Lampley failed to provide an affidavit from his appellate counsel addressing that attorney's tactical decisions on this point.[10] Because Lampley's application was deficient, Judge Smith properly concluded that Lampley had not pleaded a prima facie case against his appellate attorney.[11]

*Lampley's claim that his attorneys should have made a free speech challenge*

In his application, Lampley claimed that his trial and appellate attorneys were ineffective because both "failed to recognize and present controlling law, based on constitutional princip[les], concerning [Lampley's] rights to freedom of speech." Judge Smith found that Lampley had not pleaded a prima facie case that his attorneys had been incompetent. We agree.

Lampley did not in his application point to any "controlling law" that supported his position; that is, he did not cite any cases holding that typical domestic violence protective orders violate the "rights to freedom of speech." And the two cases he cited in this application that involved domestic violence protective orders and free speech issues — *State v. Hauge* [12] and *State v. Hardy* [13] — rejected arguments similar to

---

[10] *See Jones*, 759 P.2d at 569 (When an application fails to present "evidence ruling out the possibility of a tactical reason to explain counsel's conduct, the presumption of competence remains unrebutted and operates to preclude a finding of ineffective assistance.").

[11] *See Peterson v. State*, 988 P.2d 109, 113-14 (Alaska App. 1999); *Steffensen v. State*, 837 P.2d 1123, 1126-27 (Alaska App. 1992); *Jones*, 759 P.2d at 570.

[12] 547 N.W.2d 173 (S.D. 1996).

[13] 54 P.3d 645 (Utah App. 2002).

Lampley's. (Other jurisdictions have reached similar results. *See Rzeszutek v. Beck*, 649 N.E.2d 673 (Ind. App. 1995); *Commonwealth v. Thompson*, 699 N.E.2d 847 (Mass. App. 1998); *Kreuzer v. Kreuzer*, 761 N.E.2d 77 (Ohio App. 2001); *Gilbert v. State*, 765 P.2d 1208 (Ok. Crim. App. 1988); and *State v. Mott*, 692 A.2d 360 (Vt. 1997).)

These cases show that Lampley's free speech claim was only arguable; Lampley provided no legal authority to Judge Smith that supported his basic allegation that all competent attorneys would have challenged the protective order on free speech grounds.[14] Nor did the three affidavits that Lampley provided in his pleadings support this allegation. Hence, Lampley did not carry his burden of pleading a prima facie case that his counsel had performed incompetently. Even accepting the premise in the third attorney's affidavit that was filed with the application and that we referenced above — that any competent attorney would have researched this issue — Lampley failed to offer any reason to believe that the research would have borne fruit.

*Lampley's claim against the Department of Corrections*

Lampley asserts that the Department of Corrections violated his right under the Department's policies and procedures to have his forfeited "good time" restored. In his appeal, Lampley generally asserts that he is challenging the Department's calculation of his "good time." But in his application, Lampley framed his allegation differently. There, he claimed that he was wrongly denied restoration of his forfeited good time because the Department improperly based its decision on allegations of misconduct that Lampley was not given notice of, nor allowed the opportunity to rebut. Judge Smith ruled that Lampley could not pursue this claim in a post-conviction relief action because he was

---

[14] *See Jones*, 759 P.2d at 569-70.

challenging the Department's disciplinary decision; rather, Lampley's avenue for review was an administrative appeal. We agree with Judge Smith.

In *Department of Corrections v. Kraus*,[15] the supreme court held that the superior court had jurisdiction to review the Department's disciplinary decisions to determine whether the defendants had received fundamental due process.[16] But the supreme court specifically rejected the State's suggestion that any review of the Department's decision should be conducted as a post-conviction relief action.[17] The supreme court reasoned that the proper procedural vehicle was an appeal of the administrative decision rather than an application for post-conviction relief.[18]

Later, in *Higgins v. Briggs*,[19] we said that under *Kraus* and *McGinnis v. Stevens*,[20] an inmate's "sole procedural mechanism for challenging a Department of Corrections disciplinary decision was an administrative appeal[.]"[21] Higgins was challenging disciplinary decisions that had resulted in what he claimed was an excessive loss of his "good time" credit. After analyzing supreme court decisions, we concluded that Higgins's "sole procedural mechanism" for challenging the revocations of his good time was an administrative appeal.[22]

---

[15]  759 P.2d 539 (Alaska 1988).

[16]  *Id*. at 540.

[17]  *Id*.

[18]  *Id*.

[19]  876 P.2d 539 (Alaska App. 1994).

[20]  543 P.2d 1221 (Alaska 1975).

[21]  *Higgins*, 876 P.2d at 543.

[22]  *Id*.

Lampley's case is similar. He challenged the Department's decision not to restore his forfeited "good time." This decision was apparently based on Lampley's entire record of conduct while incarcerated. Even though there was no formal hearing, this is the type of decision that the supreme court ruled must be reviewed for an abuse of discretion based on the record in an administrative appeal rather than litigated as a new claim in a post-conviction relief action.[23]

Our conclusion is supported by the fact that Lampley's claim is similar to the claim raised in *Kraus.* Both Kraus and Lampley claimed that the Department had made decisions regarding good time based on reports of bad conduct that the inmates were not allowed to contest.

We note that under the Administrative Procedure Act, an appeal of a final administrative order is resolved by the superior court.[24] Even had Judge Smith characterized Lampley's pleading as an administrative appeal, Judge Smith, sitting in the district court, lacked jurisdiction to review the Department's decision. Thus, Lampley may have an administrative appeal to the superior court, but Judge Smith correctly refused to hear this claim as a ground for post-conviction relief.

*Conclusion*

The judgment of the district court is AFFIRMED.

---

[23]   *See Kraus*, 759 P.2d at 540 & n. 4.

[24]   *See* AS 44.62.560(a); *see also* AS 44.62.570, which provides for the scope of judicial review.