IN THE SUPREME COURT OF THE STATE OF ALASKA

JIMMY LAMPLEY,

    Petitioner,

vs.

STATE OF ALASKA,

    Respondent.

Supreme Court No. S-11849
Court of Appeals No. A-8629
District Court Nos. 3AN-00-13209 Cr.
3AN-S98-397 Cr.

## PETITION FOR HEARING

### VRA AND FONT CERTIFICATION

I, David R. Weber, certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any crime unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court. I further certify that the fonts used in this document are Times New Roman and Garamond, each 13 point type.

### I.    Prayer

COMES NOW Jimmy Lampley, Appellant, by and through counsel David R. Weber, of the firm of Vasquez & Weber, P.C., and enters this his Petition For Hearing. In this petition, Mr. Lampley seeks review of the Court of Appeals' final decision as reflected in its Memorandum Opinion and Judgment of February 16, 2005 dismissing all his claims and affirming the Trial Court's dismissal of his Application For Post Conviction Review. Pursuant to AS §§ 22.05.010(d), 22.07.030 and Alaska Rule Of Appellate Procedure ("AR") 301(a)(1), Mr. Lampley respectfully requests that his petition be granted and the Supreme Court accept his case for hearing.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123

## II. Facts

Mr. Lampley was convicted of violating a Domestic Violence Restraining Order ("DVRO")in violation of AS § 11.56.740. Mr. Lampley wrote thirteen letters from jail. There were thirteen counts of conviction. 3AN-S98-397 Cr.

In 2000, Mr. Lampley filed an Application for Post Conviction Relief ("PCR"). 3AN-00-13209 Ci. Mr. Lamply raised constitutional challenges to his convictions. Mr. Lampley raised claims of ineffective assistance of counsel. Mr. Lampley's claims were briefed extensively. His claims of ineffective assistance were supported by the appropriate affidavits of the counsel involved and by a well-respected attorney well versed in the criminal law.

Mr. Lampley's PCR was dismissed summarily by the Trial Court. Mr. Lampley appealed.

The Court of Appeals affirmed the Trial Court. In doing so the Court of Appeals did not mention or discuss the six Alaska cases Mr. Lampley cited and argued touching on freedom of speech. Nor did the Court of Appeals mention or discuss the eleven United States Supreme Court cases Mr. Lampley cited and argued touching on freedom of speech. Mr. Lampley's Due Process arguments and citations were not discussed.

This Petition follows.

## III. Statement of Points and Reasons

### A. The Court of Appeals Decision is in Conflict With The Decisions of this Court, The United States Supreme Court And The Court Of Appeals.

#### 1. Speech

The Court of Appeals simply ignored the Alaskan and Federal authority cited by Mr. Lampley in support of his freedom of speech argument. Instead, it relied (without meaningful discussion) upon poorly reasoned or inapposite decisions from sister States, none of which give any meaningful creadence to controlling authority from the United

States Supreme Court. Nor did the Court of Appeals address controlling Alaskan precedent..

Prior restraints on freedom of speech[1], where justified at all, are limited to narrowly tailored and reasonable time, place and manner restrictions. State v. Alaska Civil Liberties Union, 978 P.2d 597 (Alaska 1999). A statute regulating speech is unconstitutionally overbroad "when constitutionally protected conduct as well as conduct which the state can legitimately regulate are included within the ambit of [a] statute's prohibition." Marks v. City of Anchorage, 500 P.2d 644, 646 (Alaska 1972).

Many of the seminal freedom of speech cases are directed at judicial orders. New York Times Co. v. United States, 403 U.S. 713 (1971); National Socialist Party v. Skokie, 432 U.S. 43 (1977); Vance v. Universal Amusement Co., 445 U.S. 308 (1980); Madsen v. Women's Health Center, Inc., 512 U.S. 753, (U.S. 1994).

"No contact, direct or indirect," (the Order at issue in this case, and sadly, inmost DV Writ cases) fails to make even a token effort at complying with Madsen's requirement to "burden no more speech than necessary." Indeed, the second DVRO was crafted to be sure to burden letter writing. Society's very real domestic violence problem is not rooted in the triviality of being annoyed by whinny, self-pitying letters.

Madsen holds that the traditional time, place and manner analysis *is insufficient* in addressing a judicial injunction. Injunctions carry *"greater risks of censorship and discriminatory application* than do general ordinances [...] these differences require a somewhat *more stringent application* of general First Amendment principles in this context." The Court "must ask instead whether the challenged provisions of the injunction *burden no more speech than necessary to serve a significant government interest."* Madsen, 512 U.S. at 764 – 765 [emphasis supplied]; citing Califano v. Yamasaki, 442 U.S.

---

[1] U.S. Const. Amend. I, XIV; Alaska Const., Art. I § 5.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123

682, 702 (1979) and Railway Express Agency, Inc. v. New York, 336 U.S. 106, 112 - 113 (1949) ("[T]here is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally.") In evaluating a content-neutral injunction, the governing standard is whether the challenged provision burdens no more speech than necessary to serve a significant government interest. Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 184 (1968). The order must be couched in the narrowest terms that will accomplish its pinpointed objective. Id., at 183.

The cross burning decision(s) in Virginia v. Black, 538 U.S. 343 (2003), after analyzing cross burning as a potential "true threat" *and* as permissible, protected speech, allowed (5/3) the criminalization of cross burning only *where done with the intent to intimidate* if that intimidation amounted to a *"true threat."* The same Court found the statutory *presumption of an intent to intimidate unconstitutional*: that is, not all cross burnings, all the time, everywhere may be forbidden. Black, 123 S. Ct. at 1550 - 1551. Thus, *some narrow tailoring was required*.

An intent to "intimidate" or to establish "power and control" does not automatically equate to a "true threat." "Establishing power and control" are not within the "certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem." Chaplinsky v. New Hampshire, 315 U.S. 568, 571 - 572 (1942). Nor is mere "intimidation" sufficient.

> Intimidation *in the constitutionally proscribable sense* of the word is a type of *true threat*, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.

Black, 123 S. Ct. at 1548 [emphasis supplied]. Causing fear of court is not the same thing as causing "fear of bodily harm or death."

In <u>Marks v. City of Anchorage</u>, *supra*, the limitation on speech was confined to a place (the courtroom) and a time (court in session). In <u>Anniskette v. State</u>, 489 P.2d 1012, 1014 (Alaska 1971) the "fighting words" comes with built in time, place and manner restrictions: by their nature they require physical and temporal proximity.

The jury tampering statute at issue in <u>Turney v. State</u>, 936 P.2d 533 (Alaska 1997) was upheld precisely because it was narrowly tailored. That is, the statute's prohibition was limited to communications with a juror with the intent to influence the juror's decision in a case.

Recently, in <u>McComas v. Kim</u>, No. 5865 (January 28, 2005), this Court noted the United States Supreme Court's prohibition on limiting speech that was not a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. Yet here no such assessment underlies the criminalization of Mr. Lampley's speech either in the Trial Court or the Court Of Appeals.

<u>Petersen v. State</u>, 930 P.2d 414, 431 (Alaska App. 1996) makes clear that the Court of Appeals is familiar with the requirement that words must constitute an assault before speech may be limited.

> The constitutional arguments raised by the defendants are not trivial. As we noted at the beginning of this section, the stalking statutes' definition of "nonconsensual contact" covers a wide spectrum of social interaction. This definition is undoubtedly the Alaska Legislature's most comprehensive codification of a person's right to be free from unwanted contact. Yet even though our society values and protects individual autonomy and privacy, our society at the same time recognizes a person's right to engage in uncomfortable, distasteful, and annoying contacts - even abrasive confrontations - with other citizens. Such interactions are not merely tolerated; they are explicitly protected by our Constitution.

<u>Petersen v. State</u>, 930 P.2d at 431. That is, the assaultive "threat" must be a "true threat," one that on its face and in the circumstances in which it is made, is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122    FACSIMILE (907) 279-9123

purpose and imminent prospect of execution. <u>Watts v. United States</u>, 394 U.S. 705 (1969); <u>United States v. Kelner</u>, 534 F.2d 1020, 1027 (2d. Cir.1976); <u>Powell v. State</u>, 12 P.3d 1187, 1190 (Alaska App. 2000). While long distance, written efforts to communicate with someone who wishes to be shed of one are, no doubt, uncomfortable, distasteful, annoying and even abrasive, speech remains protected.

Neither the Court of Appeals nor the Trial Court addressed the longstanding requirements for narrowly defined reasonable time, place and manner requirements, prior to approving limitations on speech. The prior jurisprudence of the United State Supreme Court, this Court and the Court of Appeals does. A hearing should be granted for that reason.

**2.    Representation and Due Process**

In <u>Midgett v. Cook Inlet Pre-Trial Facility</u>, 53 P.3d 1105, 1111 (Alaska 2002), this Court set forth a three factor balancing test [1) private interest affected; 3) the risk of error vs. possible value of change; 3) governmental interest] to determine when the State was obliged to supply counsel to a civil litigant. The Court of Appeals did not address this issue directly and therefore did not apply the controlling law of <u>Midgett</u>. As pointed out below, the Court of Appeals avoided performing a <u>Midgett</u> analysis by misapplying AS § 12.72.020(a)(2).

<u>Midgett</u> and the numerous cases wherein Alaska has recognized that counsel must sometime be afforded indigents in putatively civil cases were all cited by Mr. Lampley. None were discussed. The clear, ex parte, uncounseled deprivation of Mr. Lampey's significant liberty interests and the Court of Appeals failure of analysis call for this Court to grant a hearing.

### 3. "Good Time"

In characterizing the Department of Corrections' ("DOC") refusal to restore Mr. Lampley's "good time" as a DOC "disciplinary decision," the Court of Appeals misapprehended and misapplied this Court's authorities and ignored its own. On this record ***no disciplinary proceeding was ever held to deny the restoration of Mr. Lampley's "good time."*** Rather, existing law and policy was misapplied to prevent the restoration of Mr. Lampley's "good time" in a manner that brooked no appeal.

Mr. Lampley submitted documentation establishing the existence of the DOC restoration of good time policy. Mr. Lampley submitted documentation establishing his qualification for application of the policy under its terms. Mr. Lampley submitted documentation establishing DOC's refusal to follow the policy.

In Higgins v. Briggs, 876 P2d 539, 541 (Alaska App. 1994) the Court of Appeals distinguished between an administrative appeal of a DOC "trial like event" (over which the Court of Appeals lacks jurisdiction) and interpretation of pertinent sections of AS 33.20 and the regulations of the DOC in calculating "good time." Recently the Court of Appeals held that a PCR:

> appears to apply to claims that more directly affect a prisoner's conviction and sentence, such as whether the Department of Corrections correctly interpreted the length of a prisoner's sentence or properly computed the amount of good time to which the prisoner was entitled. These matters would fall under the scope of an application for postconviction relief and this court would have jurisdiction over these matters.

Hertz v. State, 81 P.3d 1011, 1015 (Alaska App. 2004). Here, in the absence of any "trial like event" and faced with an effort to interpret and enforce DOC statutes and regulations, the Court of Appeals has performed a *sub silentio* about face.

There is no way to administratively appeal a non decision. The lack of any reviewable hearing process in refusing to restore "good time" is precisely the sort of

abridgment of fundamental constitutional rights that the Alaska Supreme Court has cautioned requires judicial review. McGinnis v. Stevens, 543 P.2d 1221, 1236 n. 45 (Alaska 1975). Accord, Department of Corrections v. Kraus, 759 P.2d 539, 540 (Alaska 1988). Thus the decision below ignores this Court's jurisprudence and the jurisprudence of the Court of Appeals as well. This Court should hear the matter.

### 4.  Effective Assistance

The Court of Appeals apparently concedes the existence of a conflict of interest between Mr. Lampley and the Public Defender Agency. Oddly, while noting that such a conflict can be ineffective assistance of counsel under the Court of Appeals' jurisprudence (citing Hutching s v. State, 53 P.3d 1132, 1135 (Alaska App. 2002)), the Court goes on to say that no such ineffective assistance can for the basis for a PCR because it could be raised on direct appeal (citing AS § 12.71.020(a)(2), see discussion below.)

In essence, conflicted counsel in criminal cases can avoid all accountability by simply surviving an appeal wherein they do not point to their conflict. That is absurd.

Further, because Mr. Lampley (personally, not *via* counsel) somehow failed to force his way in front of the Court Of Appeals during the pendency of the direct appeal (Lampley v. State, 33 P.3d 184 (Alaska App. 2001)) and restate his complaint, the Court questioned whether Mr. Lampley still had a conflict with the Public Defender. This speculation on a possible change of heart is described as a pleading default by Mr. Lampley. The Court of Appeals then pointed to Daniels v. State, 17 P.3d 75, 86-87 (Alaska App. 2001) [where a defendant objected (e.g. waived) to losing his attorney in the face of a conflict] despite its clear inapplicability to a case where the defendant did not waive the conflict and complained bitterly about it whenever given the chance.

Finally the Court of Appeals' treatment of the freedom of speech challenge to the effectiveness of counsel was deficient. All the law set forth above, and more, was provided

to the Court of Appeals. Affidavits for trial and appellate counsel were supplied denying a tactical reason for not recognizing, researching or presenting the speech issue. An affidavit from experienced trial counsel opined that it was ineffective not to recognize and research the issue.[2] Finally, the legal basis for believing the issue would have "borne fruit" was provided. Simply failing to address the decisions of this Court and the United States Supreme Court does not make them vanish.

It is true that Nazis, Racists and Anti Abortionists are not (necessarily) DVRO Respondents. However, the legal framework used in addressing Nazi, Racist or Anti Abortionist challenges to encroachments upon freedom of speech are not born of the fact they are Nazis, Racists or Anti Abortionists. The legal framework applies to all similarly situated people facing the abridgement of their constitutional right to speak. Neither the Court of Appeals nor any of the other cited Courts has performed the basic, mandated constitutional analysis due.

### 5. AS §§ 12.72.010(1) and 12.72.020(a)(2)

Despite the language of AS § 12.72.010(1) allowing PCR in cases involving convictions in violation of the constitutions and laws, the Court of Appeals determined that AS § 12.72.020(a)(2) precluded Mr. Lampley's constitutional claims because they were not raised on direct appeal. The Court of Appeals cited no authority for this proposition. It makes AS § 12.72.010(1) "dead letter." When couldn't a violation of the constitutions or laws be raised on direct appeal?

---

[2] It is debatable whether this last affidavit was necessary. It pointedly does not reach the ultimate issue of whether the constitutional issue was meritorious. From Ms. Orlanski's point of view this was no doubt attributable to her high standards of careful research. From undersigned counsel's point of view, an "opinion" on the deciding point of law, though permissible under Evidence Rule 704, would have invaded the province of the Court in this sort of case. If the Court of Appeals is describing a "factual" affidavit on an ultimate legal issue (as opposed to an allegation in the petition) as a pleading requirement, then the requirement is, in a word, novel.

The Court of Appeals recently pointed out that "plain error" refers to a Judge's mistakes. Dupree v. State, MO&J No. 4952 (Alaska App. December 15, 2005). Apparently, tactical choices of counsel that bypass controlling constitutional issues at trial or on appeal, and not noticed by the judiciary, are utterly irredeemable. "Tactics" will preclude relief on an ineffective assistance of counsel attack while the *ability* to raise or appeal the issue below will preclude any constitutional collateral attack. No matter how patently unlawful the conviction and glaring the constitutional error, no relief is possible under the Court of Appeals' formulation.

A fine example rests in the Court of Appeals' decision. Counsel was conflicted. The challenge to the representation was rejected. The rejection was not appealed. Now, despite the error, no relief is available because conflicted counsel "could have" appealed the conflict decision, but did not.

If that is the law then AS 12.72.020(a)(2) does abrogate the writ of *habeas corpus* as it existed at common law. "If ... limits on petitions for post-conviction relief amount to a "suspension" of the writ of habeas corpus, then AS 12.72.020 ... would violate Article I, Section 13 of our state constitution." Flanigan v. State, 3 P.3d 372, 378 (Alaska App. 2000) (Mannheimer, J., concurring). Similarly, such a limitation on constitutionally based post conviction relief applications would deny Due Process and suspend the Great Writ. AS 12.72.020(a)(2) should not be interpreted to extinguish to constitutional claims.[3] A hearing should be granted.

---

[3] Imagine a direct appeal through the civil courts challenging the routine DVRO "no speech, no time, no where" to a successful conclusion in this Court. Imagine the free speech issue to be such an obscure and fine point of law that no judge could be accused of "plain error" in having overlooked it and no lawyer "ineffective" for having failed to raise it without a tactical reason. The reading of AS § 12-72.020(a)(2) adopted by the Court of Appeals means that all persons jailed for their protected speech under that unconstitutional scheme would remain so jailed with no avenue of relief available to them.

## IV. Reasons For Hearing

Mr. Lampley has set forth above the law effecting the points he has raised and how the Court of Appeals decision fails to address his points. It is to this Court that Mr. Lampley now turns.

As set forth above, the Court of Appeals has failed to address or comply with its own authority, the authority of this Court and the authority of the United States Supreme Court. Pursuant to AR 304(a) that each point of departure from controlling authority is sufficient reason for granting a hearing.

Speech, is an important constitutional right, as is the right to Due Process of Law. While ostensibly not deciding the constitutional free speech issue at hand, the Court of Appeals has nevertheless sent the Trial Courts a message that injunction on speech in Alaska need not be narrowly tailored and will be virtually immune from all review. The chilling effect on speech that jail can have is manifest. Unrepresented indigents will continue to have rights stripped from them and obligations imposed without meaningful thought or analysis. Pursuant to AR 304(b) that "decision" of significant questions of constitutional law is sufficient reason for granting a hearing.

In addition, these matters are of considerable public importance and this Court has not ruled on the matters directly. Can speech be enjoined and criminalized in Alaska without limitation in time place or manner? Can the indigent be stripped of their rights, subjected to additional criminal exposures and obliged to undertake action all without the aid of counsel? Has habeas corpus for glairing constitutional error been abrogated in Alaska? Issues of public importance such as these call for a hearing. AR 304(c).

Finally, and most importantly, this Court needs to take its house in hand. It is easy to look at Mr. Lampley, to hear tales of him and dismiss his stated legal concerns. However, no principled distinction exists between Mr. Lampley and the vast majority of DV

Respondents. This Court should review a sampling of 100 DV cases.[4] It would be so easy to simply perform the narrow tailoring time, place, and manner analysis, but it is simply not being done. Who, if not this Court, is to recall the Trial Courts to their duty? Pursuant to AR 304(d) this Court should grant a hearing.

### III. Conclusion

For the forging reasons the Supreme Court is requested to accept Mr. Lampley's Petition for Hearing.

Respectfully submitted this 28th day of February 2005.

        Vasquez & Weber, P.C.
        Attorneys for Jimmy Lampley

        By: David R. Weber,
        Ak. Bar Assn. # 8409083

### CERTIFICATE OF SERVICE

I certify that the 28th day of February 2005, a true and correct copy of this Petition For Hearing, the Docketing Statement and the Court of Appeals' Decision were mailed to the Anchorage District Attorneys' Office, 310 K Street, Suite 502 Anchorage, Alaska 99501.

        David R. Weber

---

[4] Never having received a hearing, Mr. Lampley could not place this information of the record. In a different action undersigned counsel did undertake the suggested review of DV records. The vast majority enjoined the Respondent's speech and associations rights, not just with the Petitioner, and made no effort at crafting narrowly tailored time, place, and manner restrictions. The Court will find that "Stalking" petitions are numbered in with the DV petitions. The Court need not weed them out, as they tend to suffer from the same lack of analysis.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123