# IN THE COURT OF APPEALS FOR THE STATE OF ALASKA

JIMMY LAMPLEY,

    Appellant,

vs.

STATE OF ALASKA,

    Appellee.

Court of Appeals No.  A-8629
Trial Court Nos.:    3AN-00-13209 Ci.
                    3AN-S98-397 Cr.

## APPEAL FROM THE DISTRICT COURT
### THIRD JUDICIAL DISTRICT AT ANCHORAGE
### HONORABLE JACK W. SMITH, PRESIDING

## BRIEF OF APPELLANT

FILE COPY

David R. Weber (8409083)
Vasquez & Weber, P.C.
943 West 6th Avenue, Suite 132
Anchorage, Alaska 99501
279-9122 voice/297-9123 fax
Attorneys for Appellant,
Jimmy Lampley

Filed in the Court of Appeals
Of the State of Alaska
October 24, 2003
MARILYN MAY, CLERK OF THE
APPELLATE COURTS

Beth Meyer

Deputy Clerk

**VRA AND FONT CERTIFICATION**
I, David R. Weber, certify that this document
and its attachments do not contain (1) the name
of a victim of a sexual offense listed in AS
12.61.140 or (2) a residence or business address
or telephone number of a victim of or witness to
any crime unless it is an address used to identify
the place of the crime or it is an address or
telephone number in a transcript of a court
proceeding and disclosure of the information
was ordered by the court. I further certify that
the fonts used in this document are Times New
Roman and Garamond, each 13 point type.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................II

AUTHORITIES RELIED UPON.........................................................VI

I.   STATEMENT OF JURISDICTION.............................................1

II.   ISSUES PRESENTED FOR REVIEW ......................................2

III.   STANDARDS OF REVIEW........................................................4

IV.   STATEMENT OF THE CASE.....................................................5

V.   ARGUMENT ...............................................................................8

A.   INTRODUCTION ........................................................................8

B.   STANDARDS FOR SUMMARY DISPOSITION .........................9

C.   FREEDOM OF SPEECH ............................................................9

D.   DUE PROCESS AND COUNSEL.............................................16

E.   PD CONFLICT OF INTERESTS ..............................................18

F.   INEFFECTIVE ASSISTANCE OF COUNSEL .........................19

G.   RESTORATION OF "GOOD TIME" .........................................21

VI.   CONCLUSION ...........................................................................22

i

# TABLE OF AUTHORITIES

## Federal Constitution

U.S. Const. Amend. I ................................................................10

U.S. Const. Amend. V ...............................................................17

United States Const. Amend. VI ...............................................19

United States Const. Amend. XIV .................................10, 17, 19

## Alaska Constitution

Alaska Const., Art. I § 5............................................................10

Alaska Const., Art. I § 7............................................................17

Alaska Const. Art. I, § 11..........................................................19

## Federal Cases

Califano v. Yamasaki, 442 U.S. 682, 702 (1979) .....................15

Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 184 (1968)....15

Chaplinsky v. New Hampshire, 315 U.S. 568, 571 - 572 (1942) ............................12

Madsen v. Women's Health Center, Inc., 512 U.S. 753, (U.S. 1994)...............14, 15

National Socialist Party v. Skokie, 432 U.S. 43 (1977)...........................................14

New York Times Co. v. United States, 403 U.S. 713 (1971)..................................14

Railway Express Agency, Inc. v. New York, 336 U.S. 106, 112 - 113 (1949)......15

Strickland v. Washington, 466 U.S. 668, 691 (1984) ..............................................19

United States v. Kelner, 534 F.2d 1020, 1027 (2d. Cir.1976) ................................11

Vance v. Universal Amusement Co., 445 U.S. 308 (1980) ..................................... 14

Virginia v. Black, 538 U.S. ___, 123 S. Ct. 1536; 155 L. Ed. 2d 535 (2003) ...........

.............................................................................................................. 11, 12, 13

Watts v. United States, 394 U.S. 705 (1969) ........................................................ 11

**Alaska Cases**

Aguchak v. Montgomery Ward Co., 520 P.2d 1352 (Alaska 1974) ....................... 16

Anniskette v. State, 489 P.2d 1012, 1014 (Alaska 1971) ...................................... 10

DeJesus v. State, 897 P.2d 608, 618 (Alaska App. 1995) ....................................... 9

Department of Corrections v. Kraus, 759 P.2d 539, 540 (Alaska 1988) ............... 22

Donnelly v. State, 516 P.2d 396 (Alaska 1973) ...................................................... 4

Donnelly v. State, 516 P.2d 396, 399 (Alaska 1973) .............................................. 9

Fielding v. State, 842 P.2d 614 (Alaska App. 1992) ............................................. 13

Flores v. Flores, 598 P.2d 893 (Alaska 1979) ...................................................... 17

Frajeriak v. State, 520 P.2d 795, 806 (Alaska 1974) ........................................... 18

Hampel v. State, 911 P.2d 517, 524 (Alaska App. 1996) ........................................ 9

Hensel v. State, 604 P.2d 222 (Alaska 1979) ......................................................... 4

Higgins v. Briggs, 876 P2d 539, 541 (Alaska App. 1994) ..................................... 22

In re. K.L.J., 813 P.2d 276 (Alaska 1991) ............................................................ 17

Kollodge v. State, 757 P.2d 1024 (Alaska 1988) ..................................................... 9

Lampley v. State, 33 P.3d 184 (Alaska App. 2001) ................................................. 5

Love v. State, 630 P.2d 21, 25 (Alaska App. 1981)......................................19

Marks v. City of Anchorage, 500 P.2d 644, 646 (Alaska 1972).......................10, 20

McCracken v. State, 521 P.2d 499 (Alaska 1974) .....................................19

McGinnis v. Stevens, 543 P.2d 1221, 1236 n. 45 (Alaska 1975) ...........................22

McKillop v. State, 857 P.2d 358 (Alaska App. 1993) .......................................13, 20

Midgett v. Cook Inlet Pre-Trial Facility, 53 P.3d 1105, 1111 (Alaska 2002) ........18

Otton v. Zaborac, 525 P.2d 537 (Alaska 1974) .......................................17

Pananen v. State, 711 P.2d 528 (Alaska App. 1985) ...............................18

Petersen v. State, 930 P.2d 414, 431 (Alaska App. 1996) ...........................10, 14, 20

Powell v. State, 12 P.3d 1187, 1190 (Alaska App. 2000)..................................11, 20

Rae v. State, 884 P.2d 163 (Alaska 1994) ...................................................13

Siggelkow v. State, 731 P.2d 57 (Alaska 1987).......................................14

Smithart v. State, 988 P.2d 583 (Alaska 1999)........................................4

State v. Alaska Civil Liberties Union, 978 P.2d 597 (Alaska 1999) ......................10

State v. Peel, 843 P.2d 1249 (Alaska App. 1992).....................................18

State v. Strane, 61 P.3d 1284, 1292 (Alaska 2003) ...............................16

Turney v. State, 936 P.2d 533 (Alaska 1997) .........................................11

V.F. v. State, 666 P.2d 42 (Alaska 1983)...............................................17

Widermyre v. State, 452 P.2d 885 (Alaska 1969) ....................................4

## <u>Alaska Statutes</u>

AS 11.56.740 .................................................................................5, 24

AS 12.72.010 ..............................................................................8, 18, 19

AS 12.72.020 ....................................................................................8

AS 22.07.020 ....................................................................................1

## <u>Alaska Rules of Court</u>

Alaska Evidence Rule 201 ......................................................................12

Alaska Evidence Rule 202 ......................................................................12

Alaska Evidence Rule 203 ......................................................................12

Alaska Criminal Rule 35.1 ..................................................................8, 16

Alaska Rule of Appellate Procedure 202 ...................................................1

## <u>Other Authorities</u>

<u>Domestic Violence</u>, APRI 1997 ............................................................12

## AUTHORITIES RELIED UPON

### Constitutional Provisions

United States Constitution, Amend. I, provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

United States Constitution, Amend. V, provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

United States Constitution, Amend. VI, provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation;  to be confronted with the witnesses against him;  to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

United States Constitution, Amend. XIV, provides, in relevant part:

> SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of

## AUTHORITIES RELIED UPON

**Constitutional Provisions**

United States Constitution, Amend. I, provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

United States Constitution, Amend. V, provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

United States Constitution, Amend. VI, provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

United States Constitution, Amend. XIV, provides, in relevant part:

> SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of

v

citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Alaska Constitution Article I, § 5 provides:

Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right.

Alaska Constitution Article I, § 7 provides:

No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

Alaska Constitution Article I, § 11 provides:

In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve, except that the legislature may provide for a jury of not more than twelve nor less than six in courts not of record. The accused is entitled to be informed of the nature and cause of the accusation; to be released on bail, except for capital offenses when the proof is evident or the presumption great; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

## Statutory Provisions

AS 11.56.740, "Violating a protective order," states:

(a) A person commits the crime of violating a protective order if the person is subject to a protective order containing a provision listed in AS 18.66.100(c)(1) - (7) and knowingly commits or attempts to commit an act in violation of that provision;
(b) Violation of this section is a class A misdemeanor.
(c) In this section, "protective order" means an order issued or filed under AS 18.66.100 - 18.66.180.

AS 12.72.010 provides:

vi

A person who has been convicted of, or sentenced for, a crime may institute a proceeding for post-conviction relief if the person claims

(1) that the conviction or the sentence was in violation of the Constitution of the United States or the constitution or laws of this state;

(2) that the court was without jurisdiction to impose sentence;

(3) that a prior conviction has been set aside and the prior conviction was used as a statutorily required enhancement of the sentence imposed;

(4) that there exists evidence of material facts, not previously presented and heard by the court, that requires vacation of the conviction or sentence in the interest of justice;

(5) that the person's sentence has expired, or the person's probation, parole, or conditional release has been unlawfully revoked, or the person is otherwise unlawfully held in custody or other restraint;

(6) that the conviction or sentence is otherwise subject to collateral attack upon any ground or alleged error previously available under the common law, statutory law, or other writ, motion, petition, proceeding, or remedy;

(7) that

   (A) there has been a significant change in law, whether substantive or procedural, applied in the process leading to the person's conviction or sentence;

   (B) the change in the law was not reasonably foreseeable by a judge or a competent attorney;

   (C) it is appropriate to retroactively apply the change in law because the change requires observance of procedures without which the likelihood of an accurate conviction is seriously diminished; and

   (D) the failure to retroactively apply the change in law would result in a fundamental miscarriage of justice, which is established by demonstrating that, had the changed law been in effect at the time of the applicant's trial, a reasonable trier of fact would have a reasonable doubt as to the guilt of the applicant;

(8) that after the imposition of sentence, the applicant seeks to withdraw a plea of guilty or nolo contendere in order to correct manifest injustice under the Alaska Rules of Criminal Procedure; or

(9) that the applicant was not afforded effective assistance of counsel at trial or on direct appeal.

AS 12.72.020, "Limitations on applications for post-conviction relief" provides:

(a) A claim may not be brought under AS 12.72.010 or the Alaska Rules of Criminal Procedure if

(1) the claim is based on the admission or exclusion of evidence at trial or on the ground that the sentence is excessive;

(2) the claim was, or could have been but was not, raised in a direct appeal from the proceeding that resulted in the conviction;

(3) the later of the following dates has passed, except that if the applicant claims that the sentence was illegal there is no time limit on the claim:

(A) if the claim relates to a conviction, two years after the entry of the judgment of the conviction or, if the conviction was appealed, one year after the court's decision is final under the Alaska Rules of Appellate Procedure;

(B) if the claim relates to a court revocation of probation, two years after the entry of the court order revoking probation or, if the order revoking probation was appealed, one year after the court's decision is final under the Alaska Rules of Appellate Procedure;

(4) one year or more has elapsed from the final administrative decision of the Board of Parole or the Department of Corrections that is being collaterally attacked;

(5) the claim was decided on its merits or on procedural grounds in any previous proceeding; or

(6) a previous application for post-conviction relief has been filed under this chapter or under the Alaska Rules of Criminal Procedure.

(b) Notwithstanding (a)(3) and (4) of this section, a court may hear a claim

(1) if the applicant establishes due diligence in presenting the claim and sets out facts supported by admissible evidence establishing that the applicant

(A) suffered from a physical disability or from a mental disease or defect that precluded the timely assertion of the claim; or

(B) was physically prevented by an agent of the state from filing a timely claim;

(2) based on newly discovered evidence if the applicant establishes due diligence in presenting the claim and sets out facts supported by evidence that is admissible and

(A) was not known within

(i) two years after entry of the judgment of conviction if the claim relates to a conviction;

(ii) two years after entry of a court order revoking probation if the claim relates to a court's revocation of probation; or

(iii) one year after an administrative decision of the Board of Parole or the Department of Corrections is final if the claim relates to the administrative decision;

(B) is not cumulative to the evidence presented at trial;

(C) is not impeachment evidence; and

(D) establishes by clear and convincing evidence that the applicant is innocent.

(c) Notwithstanding (a)(6) of this section, a court may hear a claim based on a final administrative decision of the Board of Parole or the Department of Corrections if

(1) the claim was not and could not have been challenged in a previous application for post-conviction relief filed under this chapter or under the Alaska Rules of Criminal Procedure; and

(2) a previous application for post-conviction relief relating to the administrative decision has not been filed under this chapter or under the Alaska Rules of Criminal Procedure.

## Alaska Rules of Court

Alaska Criminal Rule 35.1 provides, in pertinent part:

(a) Scope.  A person who has been convicted of or sentenced for a crime may institute a proceeding for post-conviction relief under AS 12.72.010 - 12.72.040 if the person claims:

(1) that the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of Alaska; [...]

(5) that the applicant's sentence has expired, that the applicant's probation, parole or conditional release has been unlawfully revoked, or that the applicant is otherwise unlawfully held in custody or other restraint;

(6) that the conviction or sentence is otherwise subject to collateral attack upon any ground or alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy; [...]

(9) that the applicant was not afforded effective assistance of counsel at Trial or on direct appeal.

[...]

(c) Commencement of Proceedings -- Filing -- Service.   A proceeding is commenced by filing an application with the clerk at the court location where the underlying conviction is filed. Application forms will be furnished by the clerk of court.   An application must be filed within the time limitations set out in AS 12.72.020.   The clerk shall open a new file for the application, promptly bring it to the attention of the court and give a copy to the prosecuting attorney.

[...]

(f) Pleadings and Judgment on Pleadings.

(1) The state shall file an answer or a motion within 45 days of service of an original, amended, or supplemental application filed by counsel or by an applicant who elects to proceed without counsel, or of a notice of intent to proceed on the original application under (e)(2)(A) of this rule. The applicant shall have 30 days to file an opposition, and the state shall have 15 days to file a reply.   The motion, opposition, and reply may be supported by affidavit. At any time prior to entry of judgment the court may grant leave to withdraw the application.  The court may make appropriate orders for amendment of the application or any pleading or motion, for pleading over, for filing further pleadings or motions, or for extending the time of the filing of any pleading.  In considering a pro se application the court shall consider substance and disregard defects of form, but a pro se applicant will be held to the same burden of proof and persuasion as an applicant proceeding with counsel.  If the application is not accompanied by the record of the proceedings challenged therein, the respondent may file with

x

its answer the record or portions thereof that are material to the questions raised in the application.

[...]

(3) The court may grant a motion by either party for summary disposition of the application when it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

(g) Hearing -- Evidence -- Order. The application shall be heard in, and before any judge of, the court in which the underlying criminal case is filed. An electronic recording of the proceeding shall be made. All rules and statutes applicable in civil proceedings, including pre-trial and discovery procedures are available to the parties except that Alaska Rule of Civil Procedure Rule 26(a)(1)-(4) does not apply to post-conviction relief proceedings. The court may receive proof by affidavits, depositions, oral testimony, or other evidence. Unless otherwise required by statute or constitution, the applicant bears the burden of proving all factual assertions by clear and convincing evidence. The court may order the applicant brought before it for the hearing or allow the applicant to participate telephonically or by video conferencing. If the court finds in favor of the applicant, it shall enter an appropriate order with respect to the conviction or sentence in the former proceedings, and any supplementary orders as to rearraignment, retrial, custody, bail, discharge, correction of sentence, or other matters that may be necessary and proper. The court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented. The order made by the court is a final judgment.

[...]

Alaska Rule of Evidence 201, "Judicial Notice of Fact" states:

(a) Scope of Rule. This rule governs only judicial notice of facts. Judicial notice of a fact as used in this rule means a court's on-the-record declaration of the existence of a fact normally decided by the trier of fact, without requiring proof of that fact.

(b) General Rule. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within this

state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) When Discretionary.  A court may take judicial notice as specified in subdivision (b), whether requested or not.

(d) When Mandatory.  Upon request of a party, the court shall take judicial notice of each matter specified in subdivision (b) if the requesting party furnishes sufficient information and has given each party notice adequate to enable the party to meet the request.

Alaska Rule of Evidence 202, "Judicial Notice of Law" states:

(a) Scope of Rule.  This rule governs only judicial notice of law.

(b) Without Request -- Mandatory.  Without request by a party, the court shall take judicial notice of the common law, the Constitution of the United States and of this state, the public statutes of the United States and this state, the provisions of the Alaska Administrative Code, and all rules adopted by the Alaska Supreme Court.

(c) Without Request -- Optional.  Without request by a party, the court may take judicial notice of:

>    (1)    All duly adopted federal rules of court, and the constitutions, public statutes and duly adopted regulations and rules of court of every state, territory and jurisdiction of the United States.
>
>    (2) Private acts and resolutions of the Congress of the United States and of the legislature of this state and duly published regulations of agencies of the United States.
>
>    (3)    Duly enacted ordinances of municipalities or other governmental subdivisions, and emergency orders or unpublished regulations adopted by agencies of this state.
>
>    (4)    The laws of foreign countries, international law and maritime law.
>
>    (5)    Any matter of law which would fall within the scope of this subdivision or subdivision (b) of this rule but for the fact that it has been replaced, superseded or otherwise rendered no longer in force.

(d)  With Request -- Mandatory. Upon request of a party, the court shall take judicial notice of each matter specified in subdivision (c) if the requesting party furnishes sufficient information and has given each party notice adequate to enable the party to meet the request.

Alaska Rule of Evidence 203, "Rule 203. Procedure for Taking Judicial Notice.," states:

(a)  Determining Propriety of Judicial Notice.  Upon timely request, a party is entitled to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of proper notification, the request may be made after judicial notice has been taken. In determining the propriety of taking judicial notice on a matter or the tenor thereof, the judge may consult and use any source of pertinent information, whether or not furnished by a party.

(b)  Time of Taking Notice.  Judicial notice may be taken at any stage of the proceeding.

(c)  Instructing the Jury.  In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but it is not required to, accept as conclusive any fact judicially noticed. Judicial notice of any matter of law falling within the scope of Rule 202 shall be a matter for the court and not the jury.

## I.  STATEMENT OF JURISDICTION

Appellant Jimmy Lampley appeals from the final order of the Honorable Jack W. Smith, Third Judicial District at Anchorage, Alaska dismissing, Mr. Lampley's Application for Post Conviction Relief.  Judge Smith's decision was final on June 16, 2003. [Exc. 108]  A Notice of Appeal was filed on July 2, 2003.  (Exc. 122)

This Court has jurisdiction under AS 22.07.020(a)(2) [post conviction relief].  This appeal is brought pursuant to Alaska Rule of Appellate Procedure 202(b).

1

## II.    ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court erred in dismissing Mr. Lampley's Second Amended Application For Post Conviction Relief?

2.    Whether the District Court erred in revoking not giving Mr. Lampley notice of alleged procedural defects in his petition and an opportunity to correct those defects?

3.    Whether the District Court erred in taking judicial notice of disputed facts/studies?

4.    Whether the District Court erred in determining that Mr. Lampley's rights to freedom of speech were not implicated or violated by the underlying conviction?

5.    Whether the District Court erred in determining that Mr. Lampley's rights to due process of law were not violated when he was deprived of liberty and property interests without the benefit of counsel in the underlying civil Domestic Violence matter by the failure to provide him with counsel?

6.    Whether the District Court erred in determining that Mr. Lampley's rights to effective assistance of counsel at trial were not violated?

7.    Whether the District Court erred in determining that Mr. Lampley's rights to effective assistance of counsel on appeal were not violated?

8.    Whether the District Court erred in determining that Mr. Lampley's rights to the assistance of counsel at trial and on appeal were not violated as a result of the conflicts of interest and lack of trust?

2

9. Whether the District Court erred in determining that an administrative appeal was the sole procedural mechanism for challenging concerning the Department of Corrections' refusal to restore Mr. Lampley's statutory "good time"?

10. Whether the District Court erred in faulting Mr. Lampley for not establishing undisputed facts on the record prior to initiation of the discovery phase of the Post Conviction action?

3

## III.    <u>STANDARDS OF REVIEW</u>

This Court utilizes the "abuse of discretion" standard in reviewing post conviction relief factual determinations.  The "abuse of discretion" standard is only applicable where the Trial Court has used the appropriate legal standards.  <u>Hensel v. State</u>, 604 P.2d 222 (Alaska 1979).  Legal determinations are to be reviewed *de novo*.  <u>Smithart v. State</u>, 988 P.2d 583 (Alaska 1999).

Where there has been no "factual determination" by the Trial Court, the question before the Court of Appeals is whether the appellant's application made a sufficient showing to require an evidentiary hearing.  <u>Widermyre v. State</u>, 452 P.2d 885 (Alaska 1969).  The party seeking summary disposition has the burden of showing the complete absence of genuine issues of law and fact.  <u>Donnelly v. State</u>, 516 P.2d 396 (Alaska 1973).

4

## IV.    STATEMENT OF THE CASE

This is a post conviction relief ("PCR") proceeding arising from the same case as Lampley v. State, 33 P.3d 184 (Alaska App. 2001).  Mr. Lampley was convicted of thirteen counts of violating domestic violence restraining orders ("DVRO") (Exc. 124, 130) in violation of AS 11.56.740(a).  Each count was founded on one of thirteen letters from jail.  (R. 397 000586 – 000627).[1]  Mr. Lampley was represented at his criminal trial and upon appeal by attorneys from the Alaska Public Defender Agency ("PD").

On January 21, 1998 the PD moved to withdraw.  (R. 397 000245 – 000248)  On February 5, 1998 a motion to have the PD withdraw was denied.  (R. 397 000578)  Around July 30, 1998, while in State custody, Mr. Lampley was assaulted by another PD client.  (R. 397 000517 – 000521)  On October 5, 1998 Mr. Lampley's effort to have the PD withdraw because it represented his assailant was denied.  (R. 397 000511 [Tape 33-750, l 550])  On October 6, 1998, Mr. Lampley again tried to have the PD withdraw and he was again denied.  (R. 397 [Tape 35-852, l. 657 – 1618])  On October 8, 1998, Mr. Lampley sought new counsel because his counsel had become a witness to an alleged in-court assault.  (R. 397 [Tape B2-835, l. 3950 – end; Tape B2-836, l. 1 – 831; 1380; 2025

---

[1]    The record in this case includes the record from Lampley v. State, 33 P.3d 184 (Alaska App. 2001).  That record was incorporated by reference into this one and is among the materials provided to the Appellate Court by the Trial Court.  It includes a two volume transcript.  The "old" record was not renumbered.  The new PCR materials are numbered in such a was to create duplicate record numbers.  To avoid confusion, Mr. Lamply will use the designation "R. 397" for references to the "old" record and "Tr. 397" for references to the "old" transcript..

– 2144]) On December 30, 1998 Mr. Lampley's effort to obtain new counsel was rebuffed. (R. 397 000086 – 000092; R. 397 000344 [Tape 35-908, l. 1260 – 2704]) On January 15, 1999, Mr. Lampley sought to have the PD discharged. (R. 397 000058 – 000060).[2]

Mr. Lampley was sentenced on February 5, 1999. (Tr. V. II, p. 879 – 962) This Court's decision denying relief on direct appeal was issued on October 12, 2001.

While incarcerated, Mr. Lampley ran afoul of the Department of Corrections ("DOC"). Because of alleged misbehavior, and after following certain procedural steps, DOC took "good time" away from Mr. Lampley. Eventually, DOC stopped following the procedural steps for imposing discipline, because it had imposed all the discipline it could. (Exc. 90) Because no disciplinary action was taken against Mr. Lampley for a period of more than 180 days, Mr. Lampley sought restoration of his "good time." Despite DOC policies (Exc. 97 – 100) calling for restoration of Mr. Lampley's "good time," DOC refused to restore Mr. Lampley's "good time." (Exc. 89 – 96)

Mr. Lampley made a *pro se* application for PCR on December 1, 2000, and his application was filed by the Court on December 6, 2000. (R. 000036). On April 30, 2001 Mr. Lampley's counsel filed a First Amended Application For Post Conviction

---

[2]    In its Order Dismissing Mr. Lamply's PCR application, the Trial Court faulted Mr. Lampley for failing to provide citations to the record concerning his ongoing problems with counsel. This (and other) deficiencies were first noted in that Order. The State did not contest (and did not complain about the lack of citations) that the criminal trial record was "replete" with Mr. Lampley's incessant efforts to have the PD withdraw. Had the deficiency been noted it could have been easily cured.

Relief. (R. 000216 – 000256)[3] The State moved to dismiss the application. (Exc. 1 - 5) In addition, the State "replied" to the application in a document that was part Answer, part motion to dismiss. (Exc. 6 - 33) Mr. Lampley opposed the State's Answer/motion. (Esc. 34 - 37) The State replied. (Esc. 38 - 40) Mr. Lampley again opposed. (Esc. 41 - 51) The State again replied. (Esc. 52 - 54)

The Trial Court ruled, *sub silentio*, that Mr. Lampley was obliged to pursue an ineffective assistance of counsel claim against his PD appellate lawyer and invited a Second Amended Application For Post Conviction Relief. (Exc. 55) Mr. Lampley complied. (Exc. 56 -104). The State was directed to file an Answer to Mr. Lampley's second amended application (Exc. 105), and did so. (Exc. 106 - 107) An Order Denying Post Conviction Relief was entered on June 13, 2003. (Esc. 108 - 121) This appeal followed. (Exc. 122 - 123)

---

[3]    Mr. Lampley has not included the first amended application in his excerpt because the second amended application duplicates its contents.

## V.    ARGUMENT

### A.    Introduction

Mr. Lampley tailored his application to AS 12.72.010 - 020 and Alaska Criminal Rule 35.1.  His first series of claims alleged constitutional violations.  There were four subparts to *that* claim: 1) Letter writing is constitutionally protected speech that cannot be prohibited or criminalized; 2). A conviction based upon a DVRO process that does not provide appointed counsel, and where the State prevents the defendant from attending or responding, is a violation of due process of law; and 3) the PD provided ineffective assistance of counsel.[4]

Mr. Lampley also claimed that he is and was subjected to "unlawful restraint."  AS 12.72.020(5) and CR 35.1(a)(5).  Finally, Mr. Lampley claimed that his PD counsel were ineffective.  AS 12.72.010(9) and CR 35.1(a)(9).

This is not just an ineffective assistance of counsel claim.  The constitutional claims for effective assistance of counsel, the AS 12.72.010(9) and CR 35.1(a)(9) claims for effective assistance of counsel, and the freedom of speech issue are closely *related*.[5]

---

[4]    At the State's insistence the ineffective assistance of counsel claim was extended to PD appellate counsel.

[5]    That is, Mr. Lampley is asserting that competent practitioners of the Criminal Law should be aware of freedom of speech issues in cases involving communication, but even if they are not required to be aware, the constitutional issue remains.

8

They are not the same.   Conversely, the due process claim is presented solely as a constitutional claim.[6]

### B.    Standards For summary Disposition

The State, being the party seeking summary disposition, bore the entire burden of showing the complete absence of genuine issues of law and fact.   Donnelly v. State, 516 P.2d at 399 .

> [A]t the first phase of the post-conviction relief process, resolution of factual disputes is not involved; the sufficiency of the pleadings must be assessed by viewing the application and all factual information incorporated therein in the light most favorable to the applicant.

Hampel v. State, 911 P.2d 517, 524 (Alaska App. 1996).   See also DeJesus v. State, 897 P.2d 608, 618 (Alaska App. 1995).   Motions to dismiss are disfavored and should rarely be granted.   Kollodge v. State, 757 P.2d 1024 (Alaska 1988).   A post conviction litigant is entitled to be informed of the deficiency and given a reasonable time to correct the deficiency.   State v. Jones, 759 P.2d 558, 565 – 566 (Alaska App. 1988); Wood v. Endell, 702 P.2d 248, 249 – 50 (Alaska App. 1985).

### C.    Freedom of Speech

Prior restraints on freedom of speech[7], where justified at all, are limited to narrowly tailored and reasonable time, place and manner restrictions.   State v. Alaska

---

[6]    Mr. Lampley s not arguing that it was ineffective assistance of counsel for the PD to fail to seek an extension of the right to counsel into the realm of DVRO Order proceedings. He is arguing that it is a denial of due process to take (direct and derivative) action against the liberty or property interests of incarcerated persons if appointment of counsel is not offered.

9

Civil Liberties Union, 978 P.2d 597 (Alaska 1999).  A statute regulating speech is unconstitutionally overbroad "when constitutionally protected conduct as well as conduct which the state can legitimately regulate are included within the ambit of [a] statute's prohibition." Marks v. City of Anchorage, 500 P.2d 644, 646 (Alaska 1972).

The Trial Court opined, "There are in fact times when we speak by sufferance, not right." (Exc. 109 – 110).  Then, without addressing narrowly defined reasonable time, place and manner requirements, the Trial Court provided citations to cases (ostensibly) approving limitations on speech.

But in each of the cases cited by the Trial Court were not overbroad and were limited in time, place or manner.  Thus, in Marks v. City of Anchorage, supra the limitation on speech was confined to a place (the courtroom) and a time (court in session).  In Anniskette v. State, 489 P.2d 1012, 1014 (Alaska 1971) the "fighting words" comes with built in time, place and manner restrictions: by their nature they require physical and temporal proximity.

The Trial Court's citation to Petersen v. State, 930 P.2d 414, 431 (Alaska App. 1996) edited out the requirement that words constitute an *assault*, and all the constitutional time, place, and manner gloss that comes with that requirement, before speech may be limited.  That is, the assaultive "threat" must be a "true threat," one that on its face and in the circumstances in which it is made, is so unequivocal, unconditional,

---

[7]    U.S. Const. Amend. I, XIV; Alaska Const., Art. I § 5.

immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution. <u>Watts v. United States</u>, 394 U.S. 705 (1969); <u>United States v. Kelner</u>, 534 F.2d 1020, 1027 (2d. Cir.1976); <u>Powell v. State</u>, 12 P.3d 1187, 1190 (Alaska App. 2000).

The jury tampering statute at issue in <u>Turney v. State</u>, 936 P.2d 533 (Alaska 1997) was upheld precisely because it was narrowly tailored. That is, the statute's prohibition was limited to communications with a juror with the intent to influence the juror's decision in a case.

Finally, the Trial Court pointed, without analysis, to the cross burning decision(s) in <u>Virginia v. Black</u>, 538 U.S. ___, 123 S. Ct. 1536; 155 L. Ed. 2d 535 (2003). Those cases, after analyzing cross burning as a potential "true threat" ***and*** as permissible, protected speech, allowed (5/3) the criminalization of cross burning only ***where done with the intent to intimidate*** if that intimidation amounted to a "***true threat***." The same Court found the statutory presumption of an intent to intimidate unconstitutional: that is, not all cross burnings, all the time, everywhere may be forbidden. <u>Black</u>, 123 S. Ct. at 1550 - 1551. Thus, ***some narrow tailoring was required***.

The Trial Court found "there can be no doubt" that Mr. Lampley's letter writing was intended to establish "power and control" over D.M., thereby intimidating her. (Exc. 110) There are several problems with the Trial Court's analysis.

First, the trial Court based its "finding" on "<u>Domestic Violence</u>, APRI 1997."[8]
Mr. Lampley has never been allowed to see, much less test that document. It is not in the
record, was not cited by or to the parties. The Trial Court "established" contested fact by
taking judicial notice in a manner forbidden by Alaska Evidence Rules 201, 202 and 203.
The "fact" is subject to "reasonable dispute." Absent prior notice, mandatory notice of
the "fact" was not required, nor was it among the list of items of the sort where judicial
notice is optional.

An intent to "intimidate" or to establish "power and control" does not
automatically equate to a "true threat." "Establishing power and control" are not within
the "certain well-defined and narrowly limited classes of speech, the prevention and
punishment of which has never been thought to raise any Constitutional problem."
<u>Chaplinsky v. New Hampshire</u>, 315 U.S. 568, 571 - 572 (1942). Nor is mere
"intimidation" sufficient.

> Intimidation *in the constitutionally proscribable sense* of the word is a type
> of *true threat*, where a speaker directs a threat to a person or group of
> persons with the intent of placing the victim in fear of bodily harm or death.

<u>Black</u>, 123 S. Ct. at 1548 [emphasis supplied]. Causing fear of court is not the same
thing as causing "fear of bodily harm or death."

---

[8]    A web search reveals a likely full title (but not the text): "Domestic Violence -
Prosecutors Take the Lead." The APRI stands for the American Prosecutors Research
Institute. Mr. Lampley can be forgiven for lacking faith in the dispassionate and objective
views and scientific accuracy of an organization so named. For his judicial officer to cite to
and rely upon the organization without warning was wholly improper.

Third, even if "power and control" with intent to "intimidate" were among those limited classes, the Trial Court's "finding" was not an element of the offense charged and certainly not a finding made by a jury. This is precisely the sort of automatic criminalization (via presumption, in this case judicial notice of fact)[9] of multiple purpose speech that the <u>Black</u> Court condemned! While "there [is] no doubt" on the intent to intimidate question in the Trial Court's mind, the matter is debatable given even a cursory read of the letters. Mr. Lampley's letters are not "one note" affairs. They communicate many thoughts, perhaps badly, but they clearly have protected communicative intent well beyond intimidation or "power and control." See <u>McKillop v. State</u>, 857 P.2d 358 (Alaska App. 1993) [harassment statute had to take on additional gloss to avoid running afoul of free speech.]

This Court has recognized that Alaska's stalking statutes come perilously close to chilling protected speech.

> The constitutional arguments raised by the defendants are not trivial. As we noted at the beginning of this section, the stalking statutes' definition of "nonconsensual contact" covers a wide spectrum of social interaction. This definition is undoubtedly the Alaska Legislature's most comprehensive codification of a person's right to be free from unwanted contact. Yet even though our society values and protects individual autonomy and privacy, our society at the same time recognizes a person's right to engage in uncomfortable, distasteful, and annoying contacts - even abrasive confrontations - with other citizens. Such interactions are not merely tolerated; they are explicitly protected by our Constitution.

---

[9]    <u>Rae v. State</u>, 884 P.2d 163 (Alaska 1994) and <u>Fielding v. State</u>, 842 P.2d 614 (Alaska App. 1992) each condemn such judicial overreaching.

Petersen v. State, 930 P.2d at 431.  Long distance, written efforts to communicate with

someone who wishes to be shed of one are, no doubt, uncomfortable, distasteful,

annoying and even abrasive.  But speech is protected, even when it intrudes on privacy.

Siggelkow v. State, 731 P.2d 57 (Alaska 1987) does not establish the primacy of

privacy over freedom of speech.  Freedom of speech was neither raised nor addressed in

Siggelkow.   The Supreme Court made it very clear that it was not passing on the

propriety of the scope of the underlying order:

> The circumstances which led to the issuance of the no-contact order in this
> case are not in the record on appeal, and Walter does not contend that they
> are insufficient to justify the challenged remedy.  Rather, Walter contests
> generally the authority of the court to issue a no-contact order.   The
> question thus before us is whether, under any circumstances, a court is
> justified in enjoining contact with a former spouse.

Siggelkow v. State, 731 P.2d at 61.  Siggelkow only addressed the jurisdiction of the

Superior Court, not the constitutionality of any resultant restraint on speech.

Many of the seminal freedom of speech cases are directed at judicial orders.  New

York Times Co. v. United States, 403 U.S. 713 (1971); National Socialist Party v.

Skokie, 432 U.S. 43 (1977); Vance v. Universal Amusement Co., 445 U.S. 308 (1980);

Madsen v. Women's Health Center, Inc., 512 U.S. 753, (U.S. 1994).

Madsen holds that the traditional time, place and manner analysis *is insufficient* in

addressing a judicial injunction.  Injunctions carry "*greater risks of censorship and*

*discriminatory application* than do general ordinances [...] these differences require a

14

somewhat *more stringent application* of general First Amendment principles in this context."    The Court "must ask instead whether the challenged provisions of the injunction *burden no more speech than necessary to serve a significant government interest*."    Madsen, 512 U.S. at 764 – 765 [emphasis supplied]; citing Califano v. Yamasaki, 442 U.S. 682, 702 (1979) and Railway Express Agency, Inc. v. New York, 336 U.S. 106, 112 - 113 (1949) ("[T]here is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally.")    In evaluating a content-neutral injunction, the governing standard is whether the challenged provision burdens no more speech than necessary to serve a significant government interest. Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 184 (1968).  The order must be couched in the narrowest terms that will accomplish its pinpointed objective. Id., at 183.

"No contact, direct or indirect," fails to make even a token effort at complying with Madsen's requirement to "burden no more speech than necessary."  Indeed, the second DVRO was crafted to be sure to burden letter writing. (Exc. 131)  Society's very real domestic violence problem is not rooted in the triviality of being annoyed by whinny, self-pitying letters.

15

Nor does <u>State v. Strane</u>, 61 P.3d 1284, 1292 (Alaska 2003) obviate or address the problem:  Speech, generally, is <u>designed</u> to be heard.  Speech was clearly prohibited by the orders.[10]

There is an obvious constitutional problem with a conviction predicated on criminalizing protected speech.  CR 35.1(a)(1)(6) and AS 12.72.010(1)(6) provide Mr. Lampley an avenue of redress for this constitutional violation, regardless of the effectiveness/ineffectiveness of his PD counsel.  Further, CR 35.1(a)(9) and AS 12.72.010(9) provide redress for the failure of Mr. Lampley's PD counsel to pursue such a constitutional defense.

### D.    Due Process and Counsel

The Trial Court characterized Mr. Lampley's claim to a right to counsel as being limited to the second DVRO proceeding and Counts XII and XIII.  Mr. Lampley's claim was not so limited.  Mr. Lampley's liberty interests were truncated, and his property interests at risk, at both hearings.  Mr. Lampley was readily available and at the disposal of the State for both hearings.  Mr. Lampley's need for assistance (indeed, for any opportunity to respond) was the same at both hearings.

A fundamental tenant of Due Process of Law[11] is an opportunity to respond. <u>Aguchak v. Montgomery Ward Co.</u>, 520 P.2d 1352 (Alaska 1974).  Mr. Lampley was

---

[10]    The Trial Court's observation that the bail statute authorizes no contact provisions is not at issue here.  The societal interests are different, although the freedom of speech analysis would be the same.  That Mr. Lampley has not challenged the bail statute in this regard in no way implies that the orders at issue here were constitutional.

denied his opportunity to respond: he was in jail. He was not allowed to attend by person or by telephone.[12] Nor was he afforded or offered the assistance of counsel.

Counsel has been mandated for indigent litigants facing situations where significant personal rights may be impacted. Otton v. Zaborac, 525 P.2d 537 (Alaska 1974) [nonsupport hearing]; Flores v. Flores, 598 P.2d 893 (Alaska 1979) [child custody battle]; Reynolds v. Kimmons, 569 P.2d 799 (Alaska 1977) [paternity suit]; V.F. v. State, 666 P.2d 42 (Alaska 1983) [termination of parental rights]; In re. K.L.J., 813 P.2d 276 (Alaska 1991) [contested adoption]. The obligation of the State to provide legal representation where the litigant is there to at least try to protect themselves becomes more obvious where the litigant is forcibly kept from the hearing by action of the State.

The potential penal consequences of a DVRO make these very critical proceedings. DVROs intrude into the most basic of constitutionally protected rights and behaviors (speech, association, right to bear arms, possession/use of real and personal property, obligations to pay money, requirements of substance abuse counseling including residential treatment, obligations to refrain from the lawful ingestion of alcohol, loss of child custody and visitation.)

---

[11]    U.S. Const. Amend. V, XIV: Alaska Const., Art. I § 7.

[12]    The Trial Court found fault with Mr. Lampley's failure to present State documents or testimony concerning the Department of Corrections policy. Of course, Mr. Lampley's opponent controls those documents and witnesses. Further, this matter was disposed on summary disposition, before the parties were allowed to engage in any civil discovery. Finally, neither the State nor the Court asserted this evidentiary "failure" as a basis for dismissal prior to dismissal.

Citing the three factor [1] private interest affected; 3) the risk of error vs. possible value of change; 3) governmental interest] balancing test from <u>Midgett v. Cook Inlet Pre-Trial Facility</u>, 53 P.3d 1105, 1111 (Alaska 2002), and noting that the private interest limited was on "contact," the Trial Court concluded that Mr. Lampley had no due process right to counsel at the DVRO proceeding. (Exc. 114) But the liberty to speak is not so easily denigrated by changing its name to "contact." Liberty interests are precisely the sort of interests the Alaska Supreme Court described as "compelling" in comparison to Mr. Midgett's interest in obtaining a money judgment. <u>Midgett</u>, 53 P.3d at 1112. Nor is the "temporary" nature of the deprivation an answer: deprivation of the right to speak today is not remedied by being allowed to speak in six months from now.

The failure to offer Mr. Lampley the assistance of counsel at the DVRO proceedings was unconstitutional. Convictions founded on DV Orders entered in derogation of this due process right are void. See generally, <u>Pananen v. State</u>, 711 P.2d 528 (Alaska App. 1985); <u>State v. Peel</u>, 843 P.2d 1249 (Alaska App. 1992).

### E.    PD Conflict of Interests

Mr. Lampley's PD counsel labored under a conflict of interests such that they should have withdrawn from his representation.[13] Mr. Lampley was represented by the same Agency that represented a man he had accused of assault.

---

[13]    The Trial Court correctly faults counsel for failing ("[t]he trial record is replete") to point to the portions of the record at which the challenges to counsel were made. <u>Frajeriak v. State</u>, 520 P.2d 795, 806 (Alaska 1974). That failing has been remedied in the Statement

Further, his trial counsel was a potential witness against him, having already provided a statement to authorities. The Trial Court's policy analysis as to the latter (no free firing of PD by expedient of committing crime in their presence) aside, it did not address the former problem.

Alone and in conjunction, Mr. Lampley's problems with his PD counsel resulted in the breakdown of the attorney-client relationship. <u>Love v. State</u>, 630 P.2d 21, 25 (Alaska App. 1981).

**F.     Ineffective Assistance of Counsel**

Mr. Lampley's PD counsel provided ineffective assistance. The Trial Court erred in concluding otherwise.

The United States Const. Amend. VI and XIV and Alaska Const. Art. I, § 11 guarantee criminal defendants the right to the effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 691 (1984); <u>McCracken v. State</u>, 521 P.2d 499 (Alaska 1974).

The Trial Court accurately set forth the case law governing claims of ineffective assistance of counsel. The Trial Court conceded that Mr. Lampley submitted the materials for a *prima facie* case. The Trial Court simply chose to reject the affidavit establishing that competent criminal defense lawyers consider constitutional defenses. (Exc. 85 – 87). Instead, the Trial Court concluded that its inability to find ***reported***

---

Of The Case. Had the Trial Court issued a Notice of Intent To Dismiss on this ground in conformance with <u>State v. Jones</u>, 759 P.2d at 565 and <u>Wood v. Endell</u>, 702 P.2d at 249 - 250 the omission was easily fixed.

Alaska cases asserting a freedom of speech challenge to AS 11.56.740 equated to: 1) no such challenge ever having been mounted; and 2) minimal competence not requiring such a challenge.

It does not follow that a lack of reported cases equates to a lack of claims. Some defendants win in the Trial Courts. Some prosecutors dismiss cases or reduce them when faced with meritorious defenses. Some prosecutors screen cases out. None of those cases are reported. In any event, it is entirely possible that no other case presented such a pristine example of punishing freedom of speech uncluttered by other acts in violation of a DVRO.

Secondly, by focusing on AS 11.56.740 alone the Trial Court ignored a significant number of reported Alaska cases involving free speech defenses to criminal charges. The Trial Court even cited three of those cases earlier in its opinion. E.g. Petersen v. State, supra; Marks v. City of Anchorage, supra; McKillop v. State, supra. Nor did the Trial Court note Powell v. State, supra. Minimally competent members of the Alaska criminal defense bar are charged with knowledge of our constitutions.

Even were reported DVRO cases a valid barometer of free speech defenses made, the premise that Mr. Lampley's PD counsel were competent in this particular so long as the remainder of the criminal bar was incompetent does not follow. The standard of minimal competence (State v. Jones, supra) still requires *competence.* As Ms. Orlansky's affidavit points out, "an Alaskan trial counsel who does not at least recognize and

20

research possible constitutional defenses in cases where the *actus reus* is some form of speech fails to meet the applicable standard of practice and is thus ineffective."

The Trial Court's following conclusion: that no such freedom of speech challenge would have succeeded if made, relies on its previous analysis. Likewise, Mr. Lampley asserts that his constitutional analysis is meritorious and would have been so had his PD counsel asserted it.

### G.    Restoration of "Good Time"

The Trial Court faulted Mr. Lampley for failure to provide certain State documents to the Court in support of his claim concerning the DOC. Neither the State nor the Court provided Mr. Lampley with notice of the alleged deficiency so that he could correct it. State v. Jones, 759 P.2d at 565 and Wood v. Endell, 702 P.2d at 249 - 250. Secondly, the Trial Court's decision assumes that Mr. Lampley has some helpful memory of the precise details of his disputations with DOC. Third, the discovery phase of the PCR process had yet to begin.

In any event, Mr. Lampley did supply sufficient documentation to support his claim that DOC wrongfully refused to restore his "good time" and thus subjected (and subjects) him to unlawful restraint. (Exc. 88 – 100)

The Trial Court erroneously characterized this issue as a complaint about Mr. Lampley's "loss of good time" in a DOC disciplinary decision. (Exc. 121) Mr. Lamply's complaint was with regard to the *failure to restore* "good time," not its initial loss. The

21

Trial Court's characterization of the claim as a challenge to "disciplinary decisions" (Exc. 121) ignored the fact that *no such disciplinary proceeding was ever held*. Mr. Lampley submitted documentation establishing the existence of the DOC policy, his qualification for application of the policy under its terms and of DOC's refusal to follow the policy.

The Trial Court's citation to <u>Higgins v. Briggs</u>, 876 P.2d 539, 541 (Alaska App. 1994) is inapt. There is no way to administratively appeal a non decision. The lack of any reviewable hearing process in refusing to restore "good time" is precisely the sort of abridgment of fundamental constitutional rights that the Alaska Supreme Court has cautioned requires judicial review. <u>McGinnis v. Stevens</u>, 543 P.2d 1221, 1236 n. 45 (Alaska 1975). Accord, <u>Department of Corrections v. Kraus</u>, 759 P.2d 539, 540 (Alaska 1988). The <u>Higgins</u> Court noted a distinction between an administrative appeal of a DOC "trial like event" (over which this court lacks jurisdiction) and interpretation of pertinent sections of AS 33.20 and the regulations of the DOC in calculating 'good time.'" Mr. Lampley seeks, and is entitle to, precisely that: review of the DOC "good time" restoration regulations and determination if he is entitled to have his "good time" restored.

## VI.    CONCLUSION

For the foregoing reasons, the court should reverse the dismissal of Mr. Lampley's application and remand it to the Trial Court.

22

Respectfully submitted this 24th day of October 2003.

Vasquez & Weber, P.C.
Attorneys for Jimmy Lampley

By: David R. Weber,
Ak. Bar Assn. # 8409083

23