IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

JIMMY A. LAMPLEY, )
                  Petitioner, )
vs. )
MARC ANTRIM, and )
SCOTT J. NORDSTRAND, )
                  Respondents )
) Case No.: A05-293 Cv. (RRB)

**PETITIONER'S RESPONSE TO RESPONDENTS' BRIEFING AT DOCKET 34**

COMES NOW Jimmy A. Lampley, by and through counsel, David R. Weber, of the firm of Vasquez & Weber, P.C., and submits this, Petitioner's Response To Respondents' Briefing At Docket 34.

**A.   Introduction**

Mr. Lampley opposed Respondents' Motion to Dismiss his Federal Habeas action, in part, by pointing out that the Respondents had not borne the burden of establishing the *affirmative defense* of procedural default. Vang v. Nevada, 329 F.3d 1069, 1073 (9th Cir. 2003). Mr. Lampley pointed out that unless the state procedural rule was "firmly established and regularly followed", it is not an adequate bar to Federal review. Ford v. Georgia, 498 U.S. 411, 424 (1991); Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999). Unless standards or discretion can be gleaned "according to standards that, at least over time, can become known and understood within reasonable operating limits" the rule is inadequate to bar Federal review. Morales v. Calderon, 85 F.3d 1387, 1392 (9th Cir. 1996); Wood v. Hall, 130 F.3d 373, 377 (9th Cir. 1997). State rules that are selectively applied or are so unsettled due to ambiguous or changing state authority are inadequate to create a

bar to Federal review. Id. ***"Well established" rules do not include new interpretations of old rules.*** Collier v. Bayer, 408 F.3d 127 (9th Cir. 2005).

In light of the forgoing, Mr. Lampley posed seven questions. The questions were designed to put Respondents to the proof of their affirmative defense. Failing in that proof was designed to show the Court that the relied upon procedural rule was new, not well established and impossible to know and understand within reasonable operating limits. The questions were:

1. When and in what cases were previously un-litigated collateral challenges claiming constitution [sic] innocence of an underlying conviction dismissed based on A.S. § 12.72.020(a)(2)?

2. When and in what cases were previously un-litigated collateral challenges claiming constitutional due process violations having nothing to do with search, seizure or evidence dismissed based on A.S. § 12.72.020(a)(2)?

3. When and in what cases were collateral challenges to any species of IAC claim dismissed based on A.S. § 12.72.020(a)(2)?

4. Can A.S. § 12.72.010(a)(1) and (6) and A.Cr.R. 35.1(a)(1) and (6) be harmonized with A.S. § 12.72.020(a)(2) without making them dead letter law?

5. Other than constitutional claims sounding in IAC or newly discovered evidence, when couldn't a claim be raised on direct appeal?

6. Did A.S. § 12.72.020(a)(2), passed in 1995, overrule the Court of Appeals created procedure for IAC enunciated in Barry v. State, thus requiring all IAC claims to be raised on direct appeal?

7. What is the regularly and consistently applied policy governing when the various subsections of A.S. § 12.72.020(a) will bow to Alaska Due Process concerns under Grinols v. State, 10 P.3d 600 (Alaska App. 2000)?

1    This Court, recognizing the cogence of the proposed inquiries, ordered
2 Respondents to respond to the proffered questions. (Docket 30). Respondents
3 have replied (Docket 34), providing a string of citations that, upon analysis, fail to
4 address the questions posed.

5 **B.    Procedural and Factual Background**

6    Respondents have asserted that Mr. Lampley made threats against D.M.,
7 citing Exhibit B. Mr. Lampley utilizes the word "threat" to connote some
8 prediction or promise of the future infliction physical pain or an attempt at such
9 infliction.[1] (Of note, constitutionally protected speech may include threats
10 divorced from the present ability to carry them out. However, Mr. Lampley's
11 comments from jail were not even of that ilk.) Mr. Lampley did not threaten D.M.
12 in Exhibit B. Respondents' repetition of that allegation does not make it so.
13 Further, that misrepresentation of fact is irrelevant to the issue at hand.

14    It is telling that the Respondents try to recast Mr. Lampley's letters as
15 threats. It betrays a recognition that the criminalization of unthreatening speech
16 presents a problem of constitutional dimension.

17    Mr. Lampley was tried in October of 1998. He was sentenced in February
18 of 1999. His opening brief on direct appeal in State Court was filed in September
19 of 2000. Grinols v. State, 10 P.3d 600 (Alaska App. 2000) was issued in October
20 of 2000 and affirmed in 2003. Grinols v. State, 74 P.3d 889 (Alaska 2003). Mr.

---

[1]    Thus, noting a need to sue for payment for work done for D.M.'s mother and Mr. Lampley's promise to pursue his right to litigate the case and confront/cross-examine D.M. are not "threats." If Respondents have some other "threats" in mind, they should advise the Court. Exhibit B has page numbers.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122    FACSIMILE (907) 279-9123
VW.LAW@ACSALASKA.NET

1  Lampley filed his State post conviction action in December of 2000.  The Alaska
2  Court of Appeals denied Mr. Lampley relief on direct appeal in October of 2001.

3  **C     The Questions**

4      As noted previously, Respondents have provided this Court with a string
5  citation of cases.  The same case list may be acquired by inquiring of the Alaska
6  State Cases database in Westlaw with the query "12.72.020(a)(2)".  All but one of
7  the cases is a Memorandum Opinion & Judgment ("MO&J").  Not all of the cited
8  cases rely upon or discuss the statute or its application.

9      Alaska Appellate Rule 214(d) provides that a MO&J may not be cited as
10  binding precedent for any proposition of law.  That rule dates to 1980.  However,
11  McCoy v. State, 59 P.3d 747 (Alaska App. 2002) allows citation to MO&J's for
12  whatever persuasive power the case might have.  In any event, Respondents have
13  provided a list of 27 cases having no precedential value in an effort to establish the
14  existence of a "firmly established and regularly followed" rules in 2000.  Mr.
15  Lampley would counter that the MO&Js, by their nature, "established" nothing,
16  much less did so "firmly," for anyone other than the litigants appearing in the case
17  styles.

18      Of the twenty-eight cases in Respondents' string citation (Docket 34, page
19  9, fn. 2), ***all but six post date Mr. Lampley's direct appeal***.  Thus, in addition to
20  being inapposite to the questions at hand, they are "new" *vis a vis* Mr. Lampley and
21  irrelevant this inquiry.

22      Several of those "old" cases are of particular interest.  Reakoff v. State, WL
23  224919 (Alaska App. MO&J A-6564 May 6, 1998) dealing with a jurisdictional
24  claim (e.g. the type of claim that could be raised on direct appeal), determined it
25  was the sort of claim a petitioner is entitled to raise this claim in his petition for

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123
VW.LAW@ACSALASKA.NET

post-conviction relief. The Alaska Court cited A.S. § 12.72.010(2) and Alaska Criminal Rule 35.1(a)(2) for the proposition.[2]

Similarly, in the space of seven months in 2001 (e.g. the year after Mr. Lampley's opening brief on direct appeal and post conviction actions were filed) the Alaska Court of Appeals first allowed a double jeopardy issue to be addressed in a post conviction action then barred such consideration pursuant to AS § 12.72.020(a)(2). Compare, <u>Simmons v. State</u>, 2001 WL 1563698 (Alaska App. MO&J A-7493 December 5, 2001) [AS § 12.72.020(a)(2) used to bar consideration of Double Jeopardy claim.] with <u>McDonald v. State</u>, 2001 WL 649946 (Alaska App. MO&J A-7454 June 13, 2001) [Double Jeopardy claim in post conviction action addressed on its merits. Justice Rabinowitz sitting.]

<u>Burks v. State</u>, 1999 WL 603012 (Alaska App. MO&J A-7055, 4096 August 11, 1999) and <u>Waldron v. State</u>, 2001 WL 1691626 (Alaska App. MO&J A-7693 October 17, 2001) were worthy of more notice and discussion by Respondents. Both involved that "species of ineffective assistance of counsel" that arises from a conflict of interest. In <u>Burks</u> the State initially argued the conundrum that Mr. Lampley poses here: that Respondents' reading of AS § 12.72.020(a)(2) effectively overrules the presentation of post conviction claims of IAC sanctioned by <u>Barry v. State</u>, 675 P.2d 1292 (Alaska App. 1984).[3] The State abandoned its

---

[2] Mr. Lampley's MO&J is the first in which the "yes" of A.S. § 12.72.010(2) and Alaska Criminal Rule 35.1(a)(2) is held to be universally trumped by the "no" of A.S. § 12.72.020(a)(2).

[3] A possible exception might be for IAC of appellate counsel. But then again, motions are allowed in appellate practice and the IAC of the appellate counsel could thus be raised on appeal. Pursuant to the Alaska Court's reasoning in Mr. Lampley's case, having appellate counsel file that motion and preserve that issue presents no obstacle.

trial position on appeal and Mr. Burks prevailed upon his appeal. In <u>Waldron</u> the conflict based IAC claim was analyzed and addressed in the post conviction action without resort to AS § 12.72.020(a)(2).

In each of the "old" cases where AS § 12.72.020(a)(2) is used, it is used to dismiss repetitive or previously dismissed claims. <u>Frank v. State</u>, 2001 WL 21198 (Alaska App. MO&J A-7375, 4328 January 10, 2001) [attempt to relitigate direct appeal]; <u>Patterson v. State</u>, 2000 WL 178744 (Alaska App. MO&J A-7298, 4314 December 6, 2000) [a sentencing attack after numerous prior post conviction actions and a direct appeal]; <u>Harris v. State</u>, 2000 WL 1350601 (Alaska App. MO&J A-7306, 4278 September 20, 2000) [post conviction claim mirrored pending direct appeal]; <u>Deveraux v. State</u>, 21998 WL 652179 (Alaska App. MO&J A-6696 September 23, 1998) [post conviction sentence appeal rejected because not raised in direct appeal]; <u>Hertz v. State</u>, 1998 WL 557611 (Alaska App. MO&J A-6503, 3880 September 2, 21998) [AS § 12.72.020(a)(2) utilized to dismiss repetitive application in the face of at least four prior post conviction actions and a direct appeal]; <u>Reakoff v. State</u>, WL 224919 (Alaska App. MO&J A-6564 May 6, 1998) [dismissed issues raised in the direct appeal]; and <u>Van Dyke v. State</u>, 1998 WL 224919 (Alaska App. MO&J A-6175 August 13, 1997) [same issue litigated in the direct appeal]. The vast majority of the "new" cases are of similar ilk.

Surely, an invalid waiver of the right to counsel can be raised on direct appeal. However, in <u>Tocktoo v. State</u>, 2003 WL 22208555 (Alaska App MO&J A-8295 September 24, 2003) the Court of Appeals addressed the merits of Mr. Tocktoo's claim despite the State's effort to have the matter resolved pursuant to A.S. § 12.72.020(a)(2). Indeed, in <u>Nelson v. State</u>, 2003 WL 1731624 (Alaska App. MO&J A-8031 April 2, 2003) the Court noted that "whether a claim could

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122    FACSIMILE (907) 279-9123
VW.LAW@ACSALASKA.NET

have been litigated in a direct appeal [. . .] depends on when the defendant became aware of the potential claim[.]"[4]

Thus the bar of A.S. § 12.72.020(a)(2) as applied to Mr. Lampleys claims was "new" as of 2001 when the Alaska Court of Appeals used it to dispose of Mr. Lampley's claims sans analysis of their merits. Worse, it was contrary to its previous analysis of post conviction relief applications. Finally, in the years since, the application of the bar has been neither consistent nor cohearant.

**1.     Question One**

Mr. Lampley's first query was as follows:

> When and in what cases were previously un-litigated collateral challenges claiming constitution innocence of an underlying conviction dismissed based on A.S. § 12.72.020(a)(2)?

Whether constitutional innocence equates to "freestanding innocence" may be mere tautology.[5] Mr. Lampley has demonstrated that his liberty is restrained for engaging in speech. He has provided the Court with the very speech that has caused him to be restrained (Exhibit B). Mr. Lampley has provided citations to case law standing for the proposition that his speech may not be criminalized as a matter of constitutional law. That is what Mr. Lampley means by "constitutional innocence."

While hastening to restate that his conduct did not involve any threats, Mr. Lampley notes that Respondent is incorrect in asserting that "the Constitution of

---

[4] In saying so, the Court was in the process of excusing a pleading error by the State. Nevertheless, Alaska litigants are not obliged to be cynical in their analysis of what the Court of Appeals says.

[5] It is language designed to distinguish the issue from factual innocence based upon newly discovered evidence.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123
VW.LAW@ACSALASKA.NET

the United States does not guarantee the right to threaten people." (Docket 34 at page 10.) The primary case cited by Respondents in support of their proposition is <u>Watts v. United States</u>, 394 U.S. 705 (1968), wherein the "threat" at issue ("If they ever make me carry a rifle the first man I want to get in my sights is L. B. J.") was found to be constitutionally protected. As the Supreme Court noted, the matter is not so simple.

> Certainly the statute under which petitioner was convicted is constitutional on its face. The Nation undoubtedly has a valid, even an overwhelming, interest in protecting the safety of its Chief Executive and in allowing him to perform his duties without interference from threats of physical violence. See H. R. Rep. No. 652, 64th Cong., 1st Sess. (1916). Nevertheless, a statute such as this one, which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech.

<u>Watts v. United States</u>, 394 U.S. at 707. "[W]hatever the "willfulness" requirement implies, the statute initially requires the Government to prove a true "threat." Id. at 708.

Respondents' repeated assertions that Mr. Lampley uttered threats and that threats are unprotected speech thus suffer from two faults. The first fault is their failure to identify a single discrete threat of physical harm to D.M. contained in the subject letters (Exhibit B). The second fault arises from the first, Respondents seek to avoid analysis of whether a "true threat", which may be the constitutionally proscribed, was uttered. Lacking a "true threat", Mr. Lampley's liberty is restricted for his engagement in constitutionally protected speech.

In any event, the question goes to whether the Alaska Appellate Courts have ever used A.S. § 12.72.020(a)(2) to dismiss a claim that constitutionally protected

behavior (e.g. speech) is the basis for a criminal conviction. Other than Mr. Lampley's, not one of the MO&J's cited by the Respondents supports that proposition. In the one reported case Respondents cited, the Court, in *dicta*, observed that where a constitutional violation has probably resulted in the conviction of one who is actually innocent, the due process clause of the Alaska Constitution probably requires allowing a barred claim to be heard. Grinols, 10 P.3d at 615.

Stripped of gloss and bluster, the response to the question is that the Respondents cannot point to a firmly established and regularly followed rule that establishes Alaska will not entertain post conviction claims of constitution innocence. Mr. Lampley's MO&J stands as lone support for that proposition. Thus, it is a "new," not a "well established" rule.

**2.   Question Two**

Mr. Lampley's second query was as follows:

> When and in what cases were previously un-litigated collateral challenges claiming constitutional due process violations having nothing to do with search, seizure or evidence dismissed based on A.S. § 12.72.020(a)(2)?

Again, Respondents have no answer other than that the question should not be asked.

The purpose of the question is manifest. It distinguishes the types of claims normally precluded from collateral attack from the case at hand. This is not a claim that a conviction is defective because a tainted confession or evidence was obtained by the State. It is not a claim of some procedural error at trial. This is a claim that the constitutions were violated by criminalizing protected conduct.

The inability to produce any such cases reveals that Respondents cannot meet their burden. Respondents cannot point to a firmly established and regularly followed rule that establishes Alaska will not entertain post conviction due process claims of innocence. Again, Grinols states, in dicta, that such claims will be heard. In Nelson v. State, 2003 WL 1731624 (Alaska App. MO&J A-8031 April 2, 2003) the Court did address and did analyze the due process claims instead of summarily dismissing them.

### 3. Question Three

Mr. Lampley's Third query was as follows:

> When and in what cases were collateral challenges to any species of IAC claim dismissed based on A.S. § 12.72.020(a)(2)?

Rather than responding to the inquiry, Respondents counted cases. Mr. Lampley's case is among the 28 cited. A review of the cited cases reveals only Mr. Lampley's IAC claim (conflict) was dismissed on the basis of A.S. §12.72.020(a)(2). As pointed out above, both Burks and Waldron involved IAC claims based upon conflict of interest claims that were addressed on their merits.

Respondents were unabile to produce any other case where an IAC claim was given such short shrift. Burks and Waldron established an entirely different approach to the same sort of claim. Respondents cannot point to a firmly established and regularly followed rule that establishes Alaska will not entertain post conviction IAC claims based on some parsing of the theory (conflict) of IAC involved.[6]

---

[6] The form of legal writing uses Mr. Lampley's name for occurrences below, as in "Mr. Lampley did not object." While in most cases that conceit may be fine, here it obscures that fact that it was conflicted counsel doing the objecting and non-objecting

**4     Questions Four and Five**

Mr. Lampley's Fourth and Fifth queries were as follows:

Can A.S. § 12.72.010(a)(1) and (6) and A.Cr.R. 35.1(a)(1) and (6) be harmonized with A.S. § 12.72.020(a)(2) without making them dead letter law?

Other than constitutional claims sounding in IAC or newly discovered evidence, when couldn't a claim be raised on direct appeal?

Respondents did not like these questions. They refused to answer them. Simply put, the questions point out that all claims short of newly discovered evidence could be raised on direct appeal.

It has just never been put so bluntly. Give it time. In <u>Gardner v. State</u>, 2006 WL 829758 (Alaska App. MO&J A-8881 March 29, 2006) (among the cases cited by Respondents), Judge Mannheimer candidly admits that due to Alaska's statutory scheme, Mr. Gardner's "numerous claims for post-conviction relief could go forward only if they were framed in terms of attorney incompetence." Mannheimer, J. concurring.

In the face of the sweeping scope of the language of A.S. § 12.72.020(a)(2), the Court of Appeals has taken at least three tacks. As with Mr. Lampley, all merits may be summarily dismissed. As with Messers. Burks and Waldron, the merits may be addressed and A.S. § 12.72.020(a)(2) dispensed with or ignored. As with Messers. Grinols, Nelson, McDonald, and Reakoff, the allegation of a constitutional infirmity can result in A.S. § 12.72.020 being trumped, limited or

---

below. It equates with an observation that conflicted counsel, who disputed the conflict, did not make a record of the fact of their conflict, then blaming Mr. Lampley.

ignored. No discernable rule or pattern reveals how Alaska applies A.S. § 12.72.020(a)(2).

### 5.     Question Six

Mr. Lampley's Sixth query was as follows:

> Did A.S. § 12.72.020(a)(2), passed in 1995, overrule the Court of Appeals created procedure for IAC enunciated in Barry v. State, thus requiring all IAC claims to be raised on direct appeal?

Having come to interpret AS § 12.72.020(a)(2) to eliminate all post conviction relief other than IAC and newly discovered evidence, IAC must be the next to go. Barry v. State, 675 P.2d 1292, 1295 (Alaska App. 1984) created an IAC *preference* for post conviction IAC litigation. It did not *mandate* post conviction IAC action. Barry noted a motion for a new trial was also an appropriate vehicle to raise IAC claims. Consequently, an IAC action could be brought on direct appeal.[7] A.S.§ 12.72.020(a)(2) post dates Barry.

The question is more than a wild foray envisioning a unrealistic legal claim. It is the very claim the State advanced successfully in the trial court in Burks. Though the State backpedaled, the question remains pregnant. The Court of Appeals acceptance of the State's confession of error failed to address A.S. §

---

[7]  Barry also noted that absent "plain error," IAC claims needed development in the trial court. Plain error is the sort of error that appears on the record, within the knowledge of the trial court and is of a particularly gross kind. Thus the relevant IAC focus is on the trial court's mistake in allowing the trial attorney's error to go un-remedied: For example, allowing counsel to consume alcohol and sleep though a trial. Given Respondents' theory, such counsel's failure to recognize and thus note the problem in their points on appeal and brief should, logically, preclude all further review of counsel's drunken, somnolent performance.

12.72.020(a)(2), opting instead for the circular observation: "We conclude that the state's concession is supported by Barry."

If, as Respondents must claim, the application of A.S. § 12.72.020(a)(2) is firmly established and regularly followed, and its application to Mr. Lampley's claims was such that it could have been anticipated according to standards that, at least over time, are known and understood within reasonable operating limits, how then is it that IAC claims that can be brought on direct appeal continue to be heard in post conviction actions?

Respondents protest that Mr. Lampley's questions call for speculation. Indeed they do.[8] That is precisely the point. The scope of A.S. § 12.72.020(a)(2)'s bar in the face of A.S. § 12.72.010(a)(1) and (6) and A.Cr.R. 35.1(a)(1) and (6) requires defendants and their counsel to speculate as to what remedies are available and how they may be secured. The aggressive use of the bar in recent years may come to be a "firmly established" rule, but the continued unofficial exception of Barry IAC claims (except Mr. Lampley's) and Grinols "actual innocence" claims (except Mr. Lampley's) casts confusion upon the whole edifice.

**6.     Question Seven**

Mr. Lampley's Seventh query was as follows:

> What is the regularly and consistently applied policy governing when the various subsections of A.S. § 12.72.020(a) will bow to Alaska Due Process concerns under Grinols v. State, 10 P.3d 600 (Alaska App. 2000)?

---

[8]  This question not so much so, perhaps. The State's trial court position in Burks, supra, simply represents the logical end of the A.S. § 12.72.020(a)(2) trumps all rule. Why the State backed down may call for speculation. That the State can and has made the very claim does not.

1  Respondents misapprehend the scope of Mr. Lampley's question. It was not
2  directed at Mr. Lampley securing a second post conviction action. <u>Grinols</u> also
3  addresses the application of procedural bars in the face of constitutional claims.
4  While the firmly established and regularly followed parameters of each exception
5  is of interest, it is the latter's application to Mr. Lampley's claims that Respondents
6  need to address.

That is, what is the standard that, at least over time, has become known and understood within reasonable operating limits, such that Mr. Lampley would reasonably know that his constitutional claims were not within the purview of <u>Grinols</u>? Double Jeopardy claims are and are not barred: throw a dart. Compare, <u>Simmons</u> and <u>McDonald</u>. Jurisdictional claims (<u>Reakoff</u>) are not barred: but wait, that was an un-citable MO&J, maybe they are!

In <u>Nelson v. State</u>, 2003 WL 1731624 (Alaska App. MO&J A-8031 April 2, 2003) the Court at least addressed the merits of Mr. Nelson's due process claims for an A.S. § 12.72.020(a)(2) exemption. Less than two years later, Mr. Lampley's much stronger due process based claims were given a simple heave ho.

**D.   Conclusion**

Respondents have advanced an affirmative defense. They have not established even a *prima facia* case for the application of that affirmative defense. An examination of the cases advanced by Respondents in support of their affirmative defense reveal instead that their affirmative defense has no merit. As applied to Mr. Lampley, A.S. § 12.72.020(a)(2) was a "new" rule, inconsistently and selectively applied, utilizing standards and discretion that, as of 2000, could not be gleaned, known or understood within reasonable operating limits.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123
VW.LAW@ACSALASKA.NET

Respectfully submitted this 7th day of July 2006.

> Vasquez & Weber, P.C.
> Attorneys for Jimmy Lampley
> S/: David R. Weber,
> 943 West 6th Ste. 132
> Anchorage, Alaska 99502
> (907) 279-9122/9123 fax
> vw.law@acsalaska.net
> Ak. Bar Assn. No. 8409083

CERTIFICATE OF SERVICE

I certify that on July 7, 2006 electronic service of a copy of this Petitioner's Response To Respondents' Briefing At Docket 34 was provided to the Court for all counsel of record pursuant to Criminal Rule 49(b), Civil Rule 5(b)(2)(D) and Local Rules 5, 5.1(a) and 5.2(c)(2).

> S/: David R. Weber