IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JIMMY A. LAMPLEY, | ) |
| | ) CASE NO: 3:05-cv-00293-RRB |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) |
| MARC ANTRIM and | ) |
| SCOTT J. NORSTRAND, | ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

**PETITIONER'S AMENDED PETITION**

Jimmy Lampley, through his counsel, Hugh W. Fleischer, hereby amends his Petition for Habeas Corpus petition under 28 U.S.C § 2254. This amendment incorporates the petition filed by Mr. Lampley as well as the First Amended Petition for Habeas Corpus and Supplement and Exhibit List and Exhibits.

Based upon previous rulings of the District Court, Mr. Lampley's claims are limited to Count 1 and Count 5.

Count 1 relates to a most important First Amendment to the U.S. Constitution violation of Mr. Lampley's right to freedom of speech, which will be discussed in detail below.

Count 5 contends that Mr. Lampley was denied his

Constitutional right to self-representation, which will, also, be discussed below, in detail.

### 1) COUNT ONE-DENIAL OF FREE SPEECH

On January 7, 1998 an ex parte hearing was held in the Alaska District Court.  Mr. Lampley had no prior notice of the hearing.  Mr. Lampley did not attend the hearing.  Mr. Lampley was then incarcerated.  An order issues as a result of the hearing forbidding Mr. Lampley to speak at any time, at any place or in any manner to D.M.  On January 28, 1998, a long-term order issued with the same prohibition.  Mr. Lampley was convicted of writing thirteen letters to D.M., none of which were threatening, while these orders were in effect.

Prior restraints on freedom of speech, under the First Amendment to the United States Constitution, were justified, if at all, are limited to narrowly tailored and reasonable time, place and manner restrictions. ***Freedman v. Maryland***, 380 U.S. 51 (1965); ***New York Times Co. v. United States***, 403 U.S. 713 (1971); ***Nationalist Socialist Party v. Skokie***, 432 U.S. 43 (1977); ***Southeastern Promotions, Ltd. V. Conrad***, et al., 420 U.S. 546 (1975); ***Vance v. Universal Amusement Co.***, 445 U.S. 308 (1980); ***Madsen v. Women's Health Center, Inc.***, 512 U.S. 753 (1994); ***Metropolitan Opera Ass'n v. Local 100, Hotel Employees' and Restaurant Employees' Union***, 239

F. 3d 172 ( 2nd Cir. 2001).

"No contact, direct or indirect,"(the order at issue in this case, in most Domestic Violence ("DV") Writ cases) fails to make even a token effort at complying with ***Madsen's*** requirement to "burden no more speech that necessary." Indeed, the second DVRO was crafted to be certain to burden letter writing.

Madsen holds that the traditional time, place and manner analysis is insufficient in addressing a judicial injunction.  Injunctions carry "greater risks of censorship and discriminatory application than do general ordinances […] these differences require a somewhat more stringent application of general First Amendment principles in this context."  The Court "must ask instead whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest." ***Madsen***, 512 U.S. @ 764-765; citing ***Califano v. Yamasaki***, 442 U.S. 682,702 (1979). ***Railway Express Agency, Inc. v. New York***, 336 U.S. 112-113 (1949)("[T]here is no more effective practical guaranty arbitrary and unreasonable government than to require that the principles of law, which officials would impose upon a minority must be imposed generally.")  In evaluating a content-neutral injunction, the governing standard is whether the challenged provision

burdens no more speech that necessary to serve a significant government interest. *Carroll v. President and Comm'rs of Princess Anne*, 389 U.S. 175, 184 (1968). The order must be couched in the narrowest terms that will accomplish its pinpointed objective. *Id.* @ 183.

The cross burning decision in *Virginia v. Black*, 538 U.S. 343, 123 S. Ct. 1536 (2003), after analyzing cross burning as a potential "true threat" and as permissible, protected speech, allowed the criminalization of cross burning only where done with the intent to intimidate if that intimidation amounted to a "true threat." The same Court found the statutory presumption of an intent to intimidate unconstitutional: that is, not all cross burnings, all the time, everywhere may be forbidden. *Black*, 123 S. Ct. @ 1550-1551.

The assaultive "threat" must be a "true threat", one that on its face and in the circumstances in which it is made, is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of carrying the threat into execution. *Watts v. United States*, 394 U.S. 705, 706(1969); *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992). The letters written by Mr. Lampley, while uncomfortable, distasteful, annoying and abrasive, were protected by the

4

First Amendment.


### **COUNT 5-SELF REPRESENTATION AND DUE PROCESS**


*Faretta v. Brewer*, 422 U.S. 806 (1975) establishes the right, pursuant to the Sixth Amendment to the U.S. Constitution, that a criminal defendant, who knowingly and voluntarily waives his/her right to counsel, has the constitutional right to represent himself.  The record of the exchange with the Alaska District Court is contained in the opinion of *Lampley v. State of Alaska*, 33 P. 3d 184 @ 187-189.  It is clear that Mr. Lampley did make a request to represent himself.  At that point in the proceeding, the trial judge, rather than conducting the appropriate inquiry of Mr. Lampley about his knowledge and understanding of such step and his ability to minimally understand the court procedures, simply ruled against him.  The State will continue to assert that the conduct of Mr. Lampley set out in the above case @ 188-189 justifies the refusal to allow Mr. Lampley to represent himself, however, this argument is without merit.  The conduct **followed** the negative ruling.  It can be reasonably assumed that had the court below

taken the proper course and permitted Mr. Lampley to represent himself such conduct would not have occurred.

As the Court stated, in *Faretta* @ 826-827,

> In the American Colonies the insistence upon a right of self-representation was, if anything, more fervent than in England.
> The colonists brought with them an appreciation of the virtues of self-reliance and a traditional distrust of lawyers.  When the Colonies were first settled, 'the lawyer was synonymous with the cringing Attorneys-General and Solicitors-General of the Crown and the arbitrary justices of the King's Court, all bent on the convictions of those who opposed the King's prerogatives, and twisting the law to secure convictions.' C. Warren, A History of the American Bar 7(1911)  This prejudice gained strength in the Colonies where 'distrust of lawyers became an institution.' D. Boorstin, The Americans; The Colonial Experience 197 (1958)  Several Colonies prohibited pleading for hire in the 17th century.  The prejudice persisted into the 18th century as 'the lower classes came to identify lawyers with the upper class.'  The years of Revolution and Confederation saw an upsurge of antilawyer sentiment, a 'sudden revival, after the War of the Revolution, of the old dislike and distrust of lawyers as a class.'  In the heat of these sentiments the Constitution was forged.

Later in the 18th century, as the *Faretta* Court again references, "§ 35 of the Judiciary Act of 1789, signed one day before the Sixth Amendment was proposed, guaranteed in the federal courts the right of all parties to 'plead and manage their own causes personally or by the assistance of …counsel' 1 Stat. 92 ….  No State or Colony had ever forced counsel upon an accused; no spokesman had ever suggested

6

such a practice would be tolerable, much less advisable. If anyone had thought that the Sixth Amendment, as drafted, failed to protect the long-respected right of self-representation, there would undoubtedly have been some debate or comment on the issued. But there was none." @ 2539.

On the issue of whether Lamply was too disruptive to represent himself the **Faretta** Court said, "We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. But the right of self-representation has been recognized from our beginnings by federal law and most of the States, and no such result has thereby occurred. Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. See *Illinois v. Allen*, 397 U.S. 337. Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." @ 2541

In terms of what preparatory steps are required by the trial court when the defendant has requested to represent himself, The **Faretta** Court said, "When an accused manages

his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel.  For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. *Johnson v. Zerbst*, 304 U.S. @ 464-465. Cf. *Von Moltke v. Gillies*, 332 U.S. 708, 723-724 (plurality opinion of Black, J.).  Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams v. United States ex rel McCann*, 317 U.S. @ 279." @ 2541.

In this case, Mr. Lampley clearly and unequivocally stated to the trial judge that he wanted to represent himself and was denied such an indelible right.

## CONCLUSION

For the reasons set out above, it is respectfully requested that Mr. Lampley's conviction be set aside and that he be released from custody, immediately.

8

Dated this 2nd day of July, 2007.

                LAW OFFICES OF HUGH W. FLEISCHER

            By: ____S/Hugh W. Fleischer____
                Hugh W. Fleischer
                AK Bar # 7106012
                Law Offices of Hugh W. Fleischer
                310 K. Street, Suite 200
                Anchorage, AK 99501
                (907) 264-6635
                (907) 264-6602 (fax)
                hfleisch@aol.com

9438/508

CERTIFICATE OF SERVICE

I certify that on the 2nd day of July, 2007, a true copy of the foregoing was delivered electronically to the following counsel:

Tamara E. de Lucia
Assistant Attorney General
Office of Special Prosecutions
310 K. St., Suite 308
Anchorage, AK 99501

S/ Hugh W. Fleischer
Law Offices of Hugh W. Fleischer

9

10