Tamara E. de Lucia
Assistant Attorney General
Office of Special Prosecutions
and Appeals
310 K Street, Suite 308
Anchorage, Alaska 99501
Telephone: (907) 269-6250
Facsimile: (907) 269-6270
Email: tamara.delucia@alaska.gov

Attorney for Respondent Scott J. Norstrand

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| JIMMY A. LAMPLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 3:05-cv-00293-RRB |
| | ) | |
| MARC ANTRIM, and | ) | RESPONSE IN OPPOSITION TO |
| SCOTT J. NORSTRAND, | ) | PETITIONER'S MOTION FOR |
| | ) | MISCELLANEOUS RELIEF FILED |
| Respondent. | ) | JULY 2, 2007 |
| | ) | |

A.    Introduction

        Jimmy Lampley has filed with this Court a document titled "Petitioner's Amended Petition" in which he seeks to amend his already third-amended petition for habeas corpus which is currently pending before the Court. [Docket 61] However, at the status conference held in this case on Lampley's motion for a continuance on May 23, 2007 it was made clear that Lampley was not entitled to file another amended petition, but rather was directed to file an opening brief on the merits. [*See Order* dated May 23, 2007]   Additionally, this

Court issued orders directing Lampley to title his motion a "Motion for Miscellaneous Relief" and to address the merits of his claims in an opening brief. [*See Order,* dated May 24, 2007; *Order,* dated May 23, 2007; *Order,* dated July 5, 2007]

Lampley's current motion advances no request for miscellaneous relief but rather is another recitation of his legal argument with respect to Lampley's two remaining claims which survived the respondents' motion to dismiss. [Docket 44]  Accordingly, and pursuant to this court's order of May 23, the respondents will address Lampley's motion as a briefing on the merits of his claims and respond on the merits below.

B.     <u>Overview of Argument</u>

Lampley challenges on two grounds his convictions for violating state domestic violence restraining orders.  First, Lampley argues that the restraining orders constituted an impermissible prior restraint on his free speech and, second, he claims that he was denied his right to self-representation. The Alaska Superior Court rejected Lampley's free-speech claim finding that Lampley's speech did not fall under the category of protected speech as it was designed to threaten or intimidate.  The Alaska Court of Appeals rejected Lampley's free-speech claim on procedural grounds, holding that Lampley was

barred under state law from raising his First Amendment claim for the first time in an application for post-conviction relief. The Alaska Court of Appeals also rejected his second claim, that he was denied the right to self-representation, finding that Lampley had been granted co-counsel status but that his behavior in court warranted denial of that right. Lampley has failed to meet his burden of showing that the Alaska state courts unreasonably applied federal law or based any decisions on an unreasonable determination of the facts. Accordingly, Lampley cannot show that he is entitled to *habeas* relief under 28 U.S.C. § 2254.

C.    Procedural Posture

In 2005 Lampley filed in this court a *pro se* petition seeking a writ of *habeas corpus* wherein he sought to vacate his 1998 Alaska convictions for 13 counts of violating a domestic violence restraining order (DVRO). *See* AS 11.56.740. Counsel was appointed for Lampley and two amended petitions were filed; Lampley ultimately raised five claims. [Docket 7; Docket 7 at 5-12] The respondents filed a motion to dismiss Lampley's amended petition. [Docket 12]

After litigating the respondents' motion to dismiss Lampley's amended petition, only two claims (Lampley's first and fifth claims) remained. [Docket 44] In 2006, Lampley's attorney withdrew and a new counsel was substituted. [Docket 43] Lampley's new counsel filed the present "Motion for

Miscellaneous Relief" now pending before this court. [*See Order,* dated May 24, 2007] In his present motion, Lampley argues the merits of his first and fifth claims for relief. Specifically, before this court are Lampley's claims that: (1) his 13 convictions for violating a DVRO violated his freedom of speech as the DVRO restricted his ability to write letters to D.M.; and (2) he was denied his right to self-representation.

D.    Factual History

1.    *The Convictions*

In 1998, Jimmy Lampley's then-girlfriend, D.M., obtained a short-term (20-day) DVRO after Lampley assaulted her. [Docket 7 at Petitioner's Exhibit A] The order, which was served on Lampley while he was in custody following the assault, prohibited him from contacting D.M. in any manner. After having been served with the order, Lampley wrote 11 letters to D.M. which included several threats against her and in which he acknowledged that he was violating the order. [Docket 7 at Petitioner's Exhibit B] D.M. then obtained a long-term (six-month) DVRO. [Docket 7 at Petitioner's Exhibit C] After being served with the long-term DVRO, Lampley wrote two more letters to D.M. Lampley was subsequently charged with, and convicted of, 13 counts of violating the DVRO for his repeated contact with D.M. His convictions were affirmed by

the Alaska Court of Appeals on direct appeal. [Docket 7 at Petitioner's Exhibit K (*Lampley v. State,* 33 P.3d 184, 185 (Alaska App. 2001))]  The Alaska Supreme Court denied his petition for hearing from the court of appeals' opinion. [Docket 12 at Respondent's Attachment C (*Order,* dated January, 8 2002, *filed in Lampley v. State*, Alaska Supreme Court No. S-10389)]

2.      *Lampley's Direct Appeal of His Convictions*

Lampley's direct appeal to the Alaska Court of Appeals raised four issues: (1) the trial court should have granted his motion for acquittal based upon a clerical error in the DVRO document; (2) he was precluded from disputing an element of the crime charged before the jury; (3) he was denied his right to self-representation and forced to proceed with counsel whom he did not trust; and (4) his sentence was excessive.  The Alaska Court of Appeals rejected Lampley's claims and upheld the convictions and sentence.  *See Lampley*, 33 P.3d at 185.

Lampley did not raise in his direct appeal what is now his first claim for relief in his *habeas* petition, that is, he did not argue that the DVROs constituted a violation of his free-speech rights.

On what is now Lampley's fifth *habeas* claim, the claim that he was denied the right to  self-representation, the Alaska Court of Appeals found that

the trial court properly allowed Lampley to act as co-counsel during trial as an alternative to allowing him to exclusively represent himself. *Lampley*, 33 P.3d at 189. His disruptive behavior – including threatening the judge twice during proceedings – warranted denial of permission for Lampley to independently represent himself. *Id.* at 187-89.

Lampley sought review by the Alaska Supreme Court, but only of the Alaska Court of Appeals' affirmation of the trial court's determination that Lampley was incapable of representing himself because he was incapable of conducting his trial without being unduly disruptive. [Docket 12 at Respondent's Attachment B] The Alaska Supreme Court summarily denied Lampley's petition for a hearing from this decision. [Docket 12 at Respondent's Attachment C]

3.      *Lampley's Post-Conviction Relief Application to the Alaska Superior Court*

During the pendency of his direct appeal, Lampley on December 26, 2000, submitted a *pro se* state application for post-conviction relief. [Docket 7 at Petitioner's Exhibit H] Counsel was appointed to represent Lampley. An amended application was filed on April 30, 2002. A second amended application for post-conviction relief was filed on November 18, 2002. [Docket 7 at Petitioner's Exhibit L] Lampley's second amended post-conviction relief

application raised four grounds for relief. Among them was his claim that his convictions for violating the short and long-term DVROs violated his constitutional right to free speech.

The Alaska Superior Court denied Lampley's application for post-conviction relief. [Docket 7 at Petitioner's Exhibit M]

The Alaska Superior Court found that "the law is clear that limits can be placed on speech." [Docket 7 at Petitioner's Exhibit M at 2] The court took notice of the fact that "it is routinely reported in domestic violence studies that abusers control victims not solely through violence, but also through establishing power and control in their relationship." [Docket 7 at Petitioner's Exhibit M at 3] Because of this power and control dynamic, the court explained, Lampley's letters demonstrated that "there can be no doubt [that Lampley] intended to demonstrate power over D.M. and to intimidate her by these letters." [Docket 7 at Petitioner's Exhibit M at 3] The Alaska Superior Court went on to find that the DVRO statutes at issue legitimately regulated the conduct of an individual toward his victim of domestic violence. [Docket 7 at Petitioner's Exhibit M at 5] This was because the state maintained a significant and legitimate interest in protecting victims of domestic violence from further abuse. [Docket 7 at Petitioner's Exhibit M at 4-5]

4.    *The Alaska Court of Appeals' Decision Affirming the Denial of Lampley's Application for Post-Conviction Relief*

The Court of Appeals affirmed the Superior Court's denial of Lampley's application for post conviction relief.  [Docket 7 at Petitioner's Exhibit N (*Lampley v. State*, M.O. & J. No. 4968 (Alaska App., February 16, 2005))]

With regard to Lampley's free speech claims, the Alaska Court of Appeals held that Lampley was barred from arguing, for the first time in an application for post-conviction relief, that the underlying DVRO violated his constitutional right to freedom of speech.  *Lampley*, mem. op. at 4.  The Alaska Court of Appeals based this holding on AS 12.72.020(a)(2), which provides that a "claim may not be brought under AS 12.72.010 or the Alaska Rules of Criminal Procedure if . . . the claim was, or could have been but was not, raised in a direct appeal from the proceeding that resulted in the conviction."

Lampley's petition for writ of habeas corpus relief followed.

<u>ARGUMENT</u>

I.    THE *HABEAS CORPUS* STANDARD

The applicable standard for a writ of *habeas corpus* is set forth in 28 U.S.C. § 2254(d). Under this statute, a habeas application must be denied unless the state court's handling of a claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In order to obtain *habeas* relief, Lampley must demonstrate that the state court's decision in his case was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" Supreme Court precedent only "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently that th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an "unreasonable

application" of Supreme Court precedent if the state court "identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, at 413, 120 S.Ct. at 1523.

Lampley has failed to meet his burden of showing that the decision of the Alaska Court of Appeals or the Alaska Superior Court involves an unreasonable application of clearly established federal law or is based on an unreasonable determination of the facts.

II.    THE ALASKA SUPERIOR COURT'S FINDING THAT THE DOMESTIC VIOLENCE RESTRAINING ORDERS IN LAMPLEY'S CASE DID NOT VIOLATE HIS FREEDOM OF SPEECH WAS REASONABLE

A.    <u>Exhaustion</u>

Respondents maintain that did not exhaust this claim in state court. Lampley did not raise his freedom-of-speech argument at trial or on direct appeal, and in this way the claim does not appear to have been fairly presented in the Alaska state courts. To exhaust a constitutional claim properly, Lampley must have invoked one complete round of the state's established appellate review process, giving the state courts a full and fair opportunity to correct the alleged error at each level of appellate review. *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347 (2004).

B.    Merits

The Alaska Superior Court's finding that the DVROs in this case represented the furtherance of a legitimate and substantial government interest relied upon the probable cause determination conducted by the Alaska District Court prior to issuing the DVROs.  Specifically, AS 18.66.100 and AS 18.66.110 require, as a predicate to issuing a DVRO, that a court first find probable cause to believe that domestic violence had occurred between the parties, that the victim's safety is in jeopardy, and that a protective order is necessary to ensure the victim's safety.  Lampley never objected to the predicate probable cause determinations which justified issuance of the short-term and later long-term DVROs, and therefore he cannot prevail in his challenge to the statute. This is because in order to have obtained a DVRO against Lampley, D.M. had to show that she was a victim of domestic violence perpetrated by Lampley.  And the government has an interest in ensuring the safety and well-being of victims of domestic violence through the regulation of otherwise legal activities.  *See e.g.,* H.R. Conf. Rep. No. 103-711, at 391 (1994) (recognizing that domestic violence is a pervasive problem in the United States and enacting 18 U.S.C. §. 922(g)(8) prohibiting persons convicted of domestic violence from possessing firearms in order to protect victims of domestic violence).

The Alaska Superior Court found that "the legislature has determined victims of domestic violence may need to be protected by the courts through issuance of [DVROs]." [Docket 7 at Petitioner's Exhibit M at 5]  And that the practice of issuing DVROs "meets a significant societal interest to protect victims of domestic violence." [Docket 7 at Petitioner's Exhibit M at 5]

Lampley makes no argument that the Alaska Superior Court based its decision on an unreasonable application of the facts of his case, nor can he. Lampley has never disputed the fact that he assaulted D.M. and that due to this assault, D.M. was granted a protective order wherein Lampley was prohibited from further assaulting, harassing, or intimidating her.  Given these facts, Lampley cannot show that the Alaska Superior Court decision involves an unreasonable application of clearly established federal law or is based on an unreasonable determination of the facts.

1.      *The Guarantee Of Freedom Of Speech Does Not Protect Threatening Words Or Conduct*

The protections afforded by the First Amendment are not absolute, and the government may regulate certain categories of expression consistent with the Constitution. *See, e.g., Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-572, 62 S.Ct. 766, 769 (1942) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never

been thought to raise any Constitutional problem.").  Lampley argues that prior restraints on freedom of speech are only justified when narrowly tailored and when limited to reasonable time, place, and manner restrictions.  [Docket 61 at 2]  What his argument completely overlooks is the fact that threatening words and conduct are not protected speech.  *See, e.g., Watts v. United States,* 394 U.S. 705, 707-08; 89 S.Ct. 1399, 1401-02 (1969); *Lovell v. Poway Unified School District,* 90 F.3d 367, 371 (9th Cir. 1996) ("In general, threats are not protected by the First Amendment.").

   2.    *Lampley's Words And Conduct Were Threatening And Intended To Intimidate*

   The Alaska Superior Court, in denying Lampley's application for post-conviction relief predicated on his freedom-of-speech claim, expressly found that Lampley's intent in writing these letters to D.M. was to "demonstrate power over D.M." and to intimidate her.  [Docket 7 at Petitioner's Exhibit M at 4] Lampley cannot show that these findings represent an unreasonable determination of the facts or an unreasonable application of federal law.

   In order to understand why Lampley's speech was not protected speech, one must first understand the context in which this case arose.  In his current motion, Lampley advances a statement of facts that differs from the both the facts of the case and the fact statements advanced in his prior pleadings.

[Docket 61 at 2]  Lampley's incorrect recitation of the factual circumstances of his case proves fatal to his current argument that the protective order unconstitutionally limited his freedom of speech.  As the Alaska Superior Court found, the DVROs issued to D.M. were necessary to advance the legitimate and compelling state interest of protecting victims of domestic violence from further harm, and that therefore Lampley's speech was not protected speech.  In this way, the DVROs did not unconstitutionally limit Lampley's speech.

Lampley committed a physical assault against his then-girlfriend, D.M.  [Respondent's Attachment A (criminal judgment in 3AN-97-10543 Cr. Lampley's assault case); *see also* Docket 7 at 2; Petitioner's Exhibits K at 10 and M at 1]  It was that physical assault which resulted in D.M.'s petition to the Alaska District Court wherein she sought a protective order prohibiting Lampley from having any further contact with her.

In his current motion, Lampley alleges – for the first time and incorrectly – that he was incarcerated *after* the protective order hearing held on January 7, 1998.  [Docket 61 at 2]  One inference from Lampley's statement of the facts was that his incarceration was somehow resulting from the protective order proceedings.  That allegation is both incorrect and inconsistent with Lampley's previous admissions advanced in his second amended petition for

relief.  [Docket 7 at 2 (Lampley recognizes that he was in custody on January 7th due to having assaulted D.M.)]

In actuality, Lampley was incarcerated on December 30, 1997 after assaulting his girlfriend, D.M.  [Respondent's Attachment A; *see also* Docket 7 at 2; Petitioner's Exhibits K at 10 and M at 1]  As a result of that assault, D.M. sought protection from further contact with Lampley.  At the short-term protective order hearing held on D.M.'s request for a DVRO, the magistrate specifically found that "Respondent [Lampley] is in custody and is threatening to kill Petitioner [D.M.]."  [Docket 7, Petitioner's Exhibit A at 2]  On January 26, 1998 a long-term protective order hearing was held wherein Lampley was specifically prohibited from writing letters to D.M. – a specific admonition added because Lampley had been, in the intervening period, writing threatening letters to D.M. in violation of the short-term order.  [Docket 7, Petitioner's Exhibit C at 2]

Thus, at the time that Lampley was ordered to have no contact with D.M., he had just been arrested for physically assaulting her – an act which in itself triggered D.M.'s right to ask the courts of the state to limit Lampley's ability to further contact her.  *See* AS. 18.66.100(a), (c)(1) ("a person who is or has been a victim of a crime involving domestic violence may file a petition in the

district or superior court for a protective order against a household member"
wherein they may seek to "prohibit the respondent from threatening to commit
or committing domestic violence, stalking, or harassment").   In fact, Lampley
was later found guilty of assaulting D.M. after a jury trial; Lampley did not file
an appeal of that case or of his sentence for having committed that assault.
[Respondent's Attachment A]

   The second factual error in Lampley's current motion is his claim
that his 13 letters to D.M., written while he was in jail for having assaulted her,
were not threatening.  [Docket 61 at 2]  As noted earlier, the Alaska District
Court specifically found that Lampley had threatened to kill D.M.  [Docket 7,
Petitioner's Exhibit A at 2]   Therefore, by the time the long-term protective
order was issued against Lampley, two separate Alaska courts had already
found (1) that probable cause existed to charge Lampley with having perpetrated
a physical assault against D.M.; and (2) that Lampley was indeed threatening
D.M.  The effect of these aforementioned findings make reasonable D.M.'s belief
that *any* further contact from Lampley was both threatening and intimidating.

   Lampley likewise cannot argue that the Alaska Superior Court's
finding that Lampley's intent in writing these letters to D.M. – to wit, to
"demonstrate power over D.M." and to intimidate her – was unreasonable under

these circumstances. [Docket 7 at Petitioner's Exhibit M at 4]  This is because, even barring the subjective belief of D.M. that Lampley's words were intended to threaten, harass, and intimidate her, the content of the letters themselves are objectively threatening.  For instance, in his first letter, Lampley admits that he threatens D.M. and tells her that he does so because "I guess I want you to feel the same pain and hurt your [*sic*] inflicting on me, I do not like threatening you or anyone else at all, but [I do]." [Docket 7, Petitioner's Exhibit B at 2]

In his next letter, Lampley acknowledges that he is breaking the law by contacting D.M. (a further indication that he is undeterred by orders of the court), and more disturbingly states that he will continue to do so in order to see her in court:  "As you can see by this letter I do not care about the papers that were served to me, I guess I am breaking the law  [but] . . . [a]ll that means is I get another trial date to go to with you." [Docket 7, Petitioner's Exhibit B at 5]

Next, Lampley threatens D.M. with murder, telling her that "I WILL see you in trial against me . . .  NOT A GOOD THING. . .  I'm doing my best to get out now or stay the rest of my life . . . getting life is about a 2 second murder . . . [and better that than to] keep on going in and out for [the] phony crime that I am accused of." [Docket 7, Petitioner's Exhibit B at 11]

Lampley later explains that he continues to violate court orders by writing to D.M. so that she will "have to go to court for each complaint and sit in each trial, that I will DEMAND!!"  [Docket 7, Petitioners Exhibit B at 20]

Notably, Lampley later exclaims:

> Fuck the COPS, JUDGES, D.A.'s all to the Greatest Depths of HELL!! I'm done being screwed for No reason, so now I'm gonna give a whole lot of reason unless I'm cut loose outta here soon!! . . .  Action is the sole medium of expression.

[Docket 7 at Petitioner's Exhibit B at 29]

All together, between January 10 and February 1, 1998 –  while Lampley was in custody for perpetrating a domestic assault against D.M., and after having been served with both the short and long-term DVROs – Lampley wrote a total of 13 letters consisting of 39 pages to D.M. in knowing violation of the orders prohibiting him from contacting D.M. either directly or indirectly. [Docket 7 at Petitioners Exhibit D]  It was that conduct which formed the basis for the conviction which Lampley now seeks to have overturned – specifically, Lampley's 13 counts of violating a DVRO.  *See* AS 11.56.740.  But Lampley cannot show that the Alaska Superior Court erred in finding that Lampley possessed no constitutional right to harass and threaten D.M. and accordingly, that neither the DVROs nor his convictions for having violated them are in error.

3.     *Lampley Cannot Now Dispute The Factual Findings Made By The Alaska District Court Prior To Issuance Of The DVROs*

In his current motion, Lampley argues that the "letters written by Mr. Lampley, while uncomfortable, distasteful, annoying and abrasive, were protected by the First Amendment." [Docket 61 at 4]  In this way, Lampley raises an as-applied challenge to the DVRO statutes because he argues that the content of his letters were not true threats and therefore protected speech. [Docket 61 at 4]  Lampley has never challenged the predicate findings of the Alaska District Court which formed the basis for issuance of the DVROs in this case.  He cannot do so now, for the first time, in an application for *habeas* relief.

Lampley has never raised *any* challenge to the factual findings which were foundational to the determination that he posed a true threat to D.M.  The Alaska Superior Court found that, by virtue of that very probable cause determinations made by the Alaska District Court pursuant to AS 18.66.100 and 18.66.110 prior to issuance of the DVROs at issue in this case, the state maintained a legitimate and compelling interest in ensuring D.M.'s safety as a victim of domestic violence.  There is no indication that the Alaska District Court applied the law in an objectively unreasonable manner in granting D.M. the underlying DVROs nor that the Alaska Superior Court applied the law in an

objectively unreasonable manner in upholding Lampley's convictions for having violated them.

The Alaska District Court necessarily found that Lampley had assaulted D.M., posed a continuing threat to D.M., that her safety was in jeopardy and that a protective order was necessary in order to protect her from Lampley. [Docket 7, Petitioner's Exhibit A; Petitioners Exhibit C] Lampley cannot now claim that his letters were not true threats, as it was established that Lampley did indeed assault D.M. prior to her request for the protective order and Lampley has failed to raise any objection whatsoever to the Alaska District Court's factual findings in that regard.

Alaska Statute 18.66.110(a) outlines the requirements for obtaining an *ex parte* protective order of the kind that D.M. obtained on January 7, 1998:

> A person who is a victim of a crime involving domestic violence may file a petition under AS 18.66.100(a) and request an ex parte protective order. If the court finds that the petition establishes probable cause that a crime involving domestic violence has occurred, it is necessary to protect the petitioner from domestic violence, and if the petitioner has certified to the court in writing the efforts, if any, that have been made to provide notice to the respondent, the court shall ex parte and without notice to the respondent issue a protective order.

AS 18.66.110(a). In order to issue the *ex parte* or short-term DVRO that was issued to D.M. on January 7, 1998, the Alaska District Court necessarily found

probable cause that a crime involving domestic violence has occurred and that a protective order was necessary to protect D.M. from domestic violence. *See* AS 18.66.110(a). Lampley does not now nor has he ever disputed those factual findings.

Alaska Statute 18.66.100 outlines the requirements for obtaining a long-term protective order of the kind that D.M. obtained on January 26, 1998:

> (a) A person who is or has been a victim of a crime involving domestic violence may file a petition in the district or superior court for a protective order against a household member. . . .

> (b) . . . If the court finds by a preponderance of evidence that the respondent has committed a crime involving domestic violence against the petitioner, regardless of whether the respondent appears at the hearing, the court may order any relief available under (c) of this section.

AS 18.66.100(a), (b). In order to issue a long-term DVRO, as was issued to D.M. on January 26, the Alaska District Court necessarily found by a preponderance of evidence that Lampley did commit a crime involving domestic violence against D.M. *See* AS 18.66.100(b).

Only after the court made the aforementioned findings, could D.M. obtain the relief available under AS 18.66.100(c). That is, D.M. could only obtain either a short-term or a long-term protective order prohibiting Lampley from contacting her *after* the court undertook the appropriate probable cause inquiry.

S*ee* AS 18.66.110(a), AS 18.66.100(b), (c)(1), (c)(2).  Lampley does not now, nor has he ever, disputed those factual findings which gave rise to the probable cause finding.

Given the Alaska District Courts' findings of fact, Lampley cannot now argue that the state did not maintain a legitimate and compelling interest in preventing further instances of domestic violence against, and harassment of, D.M. by Lampley.  *See, e.g.,* H.R. Conf. Rep. No. 103-711, at 391 (1994) (recognizing that domestic violence is a pervasive problem in the United States and enacting 18 U.S.C. §. 922(g)(8) prohibiting persons convicted of domestic violence from possessing firearms in order to protect victims of domestic violence);  *see also Henderson v. City of Simi Valley,* 305 F.3d 1052, 1058 (9th Cir. 2002) (recognizing compelling government interest in preventing domestic violence and in keeping potential combatants separated by a domestic restraining order); *Williams v. State,* 151 P.3d 460, 465-66 (Alaska App. 2006) (recognizing the state's legitimate and compelling interest in preventing domestic violence in the context of the "no contact" bail conditions which prevent the perpetrator of a domestic assault from contact with the victim); *Spence v. Kaminski,* 12 P.3d 1030, 1035 (Wash. App. 2000) (the threat to the victim justifies the infringement on the constitutional rights of the alleged abuser

through the issuance of a temporary protection order under the state domestic violence prevention act).

4.     *The Government Can Regulate Speech Or Conduct Directed Towards A Specific Person With The Intent Of Placing That Person In Fear*

In Lampley's case, his speech was subject to regulation because it was no longer protected speech, falling instead under the rubric of a "true threat" due to the context in which the contact occurred. *See, e.g., Watts,* 394 U.S. at 707, 89 S.Ct. at 1401 (what constitutes a true threat must be distinguished from what is constitutionally protected speech.)

"True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. *See Id.* at 708, 89 S.Ct. at 1399 ("political hyperbole" is not a true threat). There is no required intent associated with the threat, rather the prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." *R.A.V. v. St. Paul*, 505 U.S. 377, 388, 112 S.Ct. 2538 (1992). Intimidation is a type of true threat, where a speaker directs a

threat to a person with the intent of placing the victim in fear.  *See Virginia v. Black,* 538 U.S. 343, 360, 123 S.Ct. 1536, 1548 (2003).

Here, the Alaska Superior Court, in denying Lampley's application for post-conviction relief, found that Lampley's letters were indeed true threats by virtue of the domestic violence dynamic of power and control which existed between Lampley and D.M.  [Docket 7 at Petitioner's Exhibit M at 4-6]  Looking at Lampley's letters in the context of the surrounding events, D.M. had every reason to believe that Lampley's words were genuine threats.  Lampley does not argue that the Alaska Superior Court misapplied the facts to arrive at the conclusion that his letters were indeed threatening, nor can he.

Judging by his own letters, Lampley was admittedly angry with D.M. for pursuing assault charges against him in connection with the December 30, 1997 assault.  Further, D.M. had every reason to believe that he would follow through with even vague threats of harm, particularly since he had already proven himself willing and able to perpetrate acts of violence against her.  The obvious intent of his letters was to continue, from jail, the tactics of violence and intimidation that he had inflicted on D.M. prior to his arrest.  Such was the finding of the Alaska Superior Court and Lampley makes no argument that this finding represented an unreasonable analysis of what constitutes a true threat.

5.      *The DVRO Statutes At Issue Here Promote A Legitimate Societal Interest*

Lampley looks to *Madsen v. Women's Health Center, Inc.,* to argue that the "no contact, direct or indirect, (the order at issue in this case)" fails to burden no more speech than necessary to serve a significant government interest.  [Docket 61 at 3]  *Madsen v. Women's Heath Center, Inc.*, 512 U.S. 753, 763, 114 S.Ct. 2516, 2523 (1994).  Lampley's reliance on that case is misplaced, as the Supreme Court in *Madsen* recognized the "obvious differences, however, between an injunction and a generally applicable ordinance. Ordinances represent a legislative choice regarding the promotion of particular societal interests." *Madsen*, 512 U.S. at 764, 114 S.Ct. at 2524.

The DVRO provision at issue here is the product of two statutes – AS 18.66.100 and 18.66.110 – and represents a legislative choice by the state to allow victims of domestic violence to obtain protective orders prohibiting their abusers from threatening, stalking, or harassing them and, when also necessary to protect the victims, prohibiting their abusers from telephoning, contacting, or otherwise communicating directly or indirectly with them.  *See* AS 18.66.100(a), (c); AS 18.66.110.  The Alaska Court of Appeals has previously held that the state has a valid interest in preventing harassment when domestic violence restraining orders are issued.  *See Jacko v. State,* 981 P.2d 1075, 1079 (Alaska

App. 1999). The notion that D.M. should wait until further threatened acts actually occur before seeking a protection order would undermine the state's strong interest in preventing domestic violence. *Accord Spence v. Kaminski,* 12 P.3d 1030, 1035-36 (Wash. App. 2000).

The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 295, 104 S.Ct. 3065, 3070 (1984). The government's purpose is the controlling consideration and government regulation of expressive activity and speech is content neutral so long as it is "justified without reference to the content of the regulated speech." *Id.* 468 U.S. at 293, 104 S.Ct. at 3069.

Looking again at the statute at issue here – the DVRO provisions found in AS 18.66.100 – Lampley was prohibited from having any contact with D.M. upon her request after he perpetrated a domestic violence assault against her. The government did not restrict all of Lampley's speech or ability to write letters. Rather, D.M. sought protection from the courts in an effort to reduce the harassment and intimidation which she suffered by Lampley. Lampley's suggestion that his threats lacked a "gravity of purpose" [Docket 61 at 4] is

nonsensical in light of the fact that he was – at the time he wrote the threatening letters in question – incarcerated for having physically assaulted D.M., an act which he was later tried and found guilty of having committed.

In evaluating a facial challenge to state law, a federal court must consider any limiting construction that state has placed on law, including any administrative interpretation or implementation of law. *Ward v. Rock Against Racism*, 491 U.S. 781, 795, 109 S.Ct. 2746, 2756 (1989); *Gooding v. Wilson,* 405 U.S. 518, 521-522, 92 S.Ct. 1103, 1106 (1972) (statutes which are narrowly drawn and limited to define and punish specific conduct lying within the domain of state power are constitutional).  The limitation or check on government power in this instance was the probable cause determinations which were necessary predicates for issuance of the protective order.  Lampley has never raised a challenge to the Alaska District Court's factual findings and cannot now claim that the protective orders issued to D.M. lacked foundation.  As such Lampley's claim that his free-speech rights were violated must fail, because the state's legitimate and compelling interest in preventing the furtherance of domestic violence justifies issuance of the restraining orders in this case.    *Accord Henderson,* 305 F.3d at 1058; *Williams,* 151 P.3d at 465-66 ; *Spence,* 12 P.3d at 1035.

States may regulate speech when it falls with in "narrowly limited class [ ] of speech." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571, 62 S.Ct. 766, 769, (1942). However, "in every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom." *Cantwell v. Connecticut*, 310 U.S. 296, 304, 60 S.Ct. 900, 903, (1940). The statute, then must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression. The Alaska Superior Court found that the permissible end attained in this case was the protection of a victim of domestic violence from her abuser and therefore Lampley's speech was categorically unprotected speech. Lampley cannot show that the Alaska Superior Court, in arriving at this conclusion, did so through an unreasonable application of clearly established federal law, or based that decision on an unreasonable determination of the facts.

III.    THE HOLDING OF THE ALASKA COURT OF APPEALS THAT LAMPLEY WAS NOT UNCONSTITUTIONALLY DENIED HIS RIGHT TO SELF REPRESENTATION WAS REASONABLE

The Alaska Court of Appeals rejected Lampley's claim that he was denied his right to self-representation, finding that the trial court had properly denied his request to represent himself (although the trial judge did at first allow Lampley to act as co-counsel). *Lampley v. State,* 33 P.3d 184, 189 (Alaska

App. 2001).  The Alaska Court of Appeals' decision found reasonable the trial judge's finding that Lampley could not conduct himself appropriately in a courtroom and he was therefore unable to act as his own attorney at trial. Lampley has not demonstrated that the Alaska Court of Appeals' decision involves an unreasonable application of the law.  Instead, Lampley apparently argues that the Alaska Court of Appeals' decision relied upon an unreasonable application of that facts.

Lampley argues that his conduct which would have otherwise justified denying his request to represent himself (*i.e.,* his inflammatory statements that included the exclamation, "I'm going to start killing people") occurred only *after* Judge Finn denied his the right to represent himself.  [Docket 61 at 5]  Therefore, Lampley argues, he was unconstitutionally denied his right to self-representation as he acted out only after the adverse ruling.  Lampley is incorrect.

1.    *The Right to Self-Representation is Not Absolute*

As the United States Supreme Court has stated, "the right to self-representation is not absolute."  *Martinez v. Court of Appeal of California,* 528 U.S. 152, 161, 120 S.Ct. 684, 691 (2000).  That right cannot be "a license not to comply with relevant rules of procedural and substantive law," and a trial court

may terminate self-representation and even remove a defendant from the courtroom where a defendant "deliberately engages in serious and obstructionist misconduct." *Cooks v. Newland,* 395 F.3d 1077, 1080 (9th Cir. 2005).

The facts as recited by the Alaska Court of Appeals' opinion show that Lampley was first granted co-counsel status but he persisted in attacking the court verbally until finally the court ruled that he could not conduct himself appropriately in court. *Lampley,* 33 P.3d at 188. The Alaska Court of Appeals noted that at the beginning of trial, Lampley's assistant public defender informed Alaska District Court Judge Finn that Lampley wished to discharge her and represent himself. *Id.* at 187. Judge Finn then inquired appropriately of Lampley as to the reasons for his request.

In response to questions from Judge Finn, "Lampley explained at length (and often in a rambling fashion) that he wished to represent himself because he believed that his assistant public defender was manipulating him (*i.e.,* counseling him to do things that he did not wish to do), and was refusing to accede to his wishes about how to litigate the case." *Lampley*, 33 P.3d at 188. As an initial matter, the Supreme Court has held that "absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel." *Reed v. Ross*, 468 U.S. 1, 13, 104 S.Ct. 2901, 2909 (1984); *accord*

*United States v. Marshall,* 488 F.2d 1169, 1192 (9th Cir. 1973) ("where counsel is competent, he, rather than his client, is the master of the lawsuit . . . this proposition applies as much to appointed counsel as it does to retained counsel"). Therefore, Lampley's assertion that his attorney refused to accede to his wishes about how to litigate his case did not establish grounds to force that attorney's withdrawal.

Further, Judge Finn's numerous courtroom experiences with Lampley formed the basis for her finding that Lampley was unable to conduct himself appropriately in court and could not solely represent himself during his criminal jury trial:

> The Court: You know, you're a really smart guy, and you have a lot of [courtroom] experience and a lot of ability. But the reason why [your proceeding] *pro se* does not strike me as a very good idea is that you tend to get a little wound up in your own matters.  And I don't think, frankly, that you would be very effective in representing yourself in a jury trial. . . .  I think there are . . . times when you are going to be best off having somebody speak for you, because you can't stick to the topic sometimes . . .  When you get wound up, you tend to go astray.  And you can't do that in a jury trial. So I'm not going to let you [represent yourself].

*Lampley,* 33 P.3d at 188.

Lampley raised no objection in response to the trial court's findings of fact in that regard.  Further, on appeal to the Alaska Court of Appeals,

Lampley also did not dispute the trial court's findings of fact – that Lampley was indeed unable to conduct himself appropriately in a courtroom – and Lampley cannot now demonstrate that those findings are without sound basis.  Lampley has not – other than by conclusory assertions in his brief – established that the facts, as recited by the Alaska Court of Appeals, were not an accurate reflection of the proceedings.

Lampley further proved himself unable to stay focused on the issue before the court when he was told that he could act as co-counsel but could not represent himself.  "Lampley continued to argue that he should be allowed to represent himself because many of his previous lawyers had violated his constitutional rights and had acted dishonestly."  *Lampley*, 33 P.3d at 188. When Judge Finn told Lampley that if he could not behave, then she would have him removed from the courtroom and taken to a place where he could participate in the trial by telephone, Lampley responded by threatening the court:

> Lampley:  [Then] I can guarantee you [that] I'll spend the rest of my life in jail, because I will start stopping where the problem starts. [*sic*] That is a threat to the court. . . .  Note that for the record.

*Lampley,* 33 P.3d at 188.

Lampley was granted the right to act as his own co-counsel, to in fact represent himself, but dissatisfied with the dual representation arrangement

Lampley – instead of lobbying the court to reconsider the ruling – actually *threatened* the court. As Lampley points out, a "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." [Docket 61 at 7] Here Lampley was granted a form of self-representation and immediately proved to the court why that ruling was in error.

As the Alaska Court of Appeals held, the trial judge in Lampley's case "was justifiably concerned that Lampley would later be disruptive in front of the jury, and that the jury would not be able disregard Lampley's behavior when deciding the case." *Lampley,* 33 P.3d at 189. While criminal defendants have the right to represent themselves, that is a conditional right which may "be forfeited or waived by his disruptive behavior." *Illinois v. Allen,* 397 U.S. 337, 342-43, 90 S.Ct. 1057, 1060 (1970); *Badger v. Cardwell,* 587 F.2d 968, 970 (9th Cir. 1978). Since "[i]t is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country," a trial judge need not allow a defendant to harass and threaten the court as Lampley did in this case. *Allen,* 397 U.S. at 341, 90 S.Ct. at 1061. The Supreme Court has recognized that "the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's

interest in acting as his own lawyer." *Martinez*, 528 U.S. at 161-162, 120 S.Ct. at 691.

Here, Lampley was given the opportunity to share representation and nonetheless Lampley demonstrated his unsuitability even for that. Lampley's history with that trial judge was such that he was frequently argumentative, often interrupted the court proceedings, and made inflammatory statements.  When the trial court told Lampley that his previous behavior formed the basis for the court's ruling, he only proved the court's predictions by threatening the judge. *Lampley,* 33 P.3d at 188-89.  "The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." *Allen,* 397 U.S. at 343, 90 S.Ct. at 1061.  When "trial judges [are] confronted with disruptive, contumacious, stubbornly defiant defendants," the United States Supreme Court has held that those judges must be "given sufficient discretion to meet the circumstances of each case." *Id.*  By the same token, Judge Finn was not obligated to indulge Lampley's outbursts and certainly could hold such outbursts against him when making the determination of whether he was competent to conduct himself as his own attorney during a criminal jury trial.  Lampley has not shown that the Alaska Court of Appeals'

decision in this regard involved either an unreasonable application of the law or an unreasonable determination of the facts.

B.    Conclusion

For the reasons set forth above, this court should dismiss Lampley's petition for writ of *habeas corpus*.

DATED September 17, 2007, at Anchorage, Alaska.

TALIS J. COLBERG
ATTORNEY GENERAL

s/ Tamara E. de Lucia
Assistant Attorney General
State of Alaska, Dept. of Law
Office of Special Prosecutions
    and Appeals
310 K Street, Suite 308
Anchorage, Alaska 99501
Telephone: (907) 269-6250
Facsimile: (907) 269-6270
e-mail: tamara.delucia@alaska.gov
Alaska Bar. No. 9906015

**Certificate of Service**

I certify that on September 17, 2007, a copy of the foregoing Response in Opposition to Petitioner's Motion

for Miscellaneous Relief Filed July 2, 2007 was served electronically on **Hugh Fleischer**

<u>s/</u> **<u>Tamara E. de Lucia</u>**