**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

JIMMY A. LAMPLEY,

                Petitioner,

vs.

MARC ANTRIM, and
SCOTT J. NORSTRAND,

                Respondent.

3:05-cv-00293-RRB-JDR

**RECOMMENDATION**
**REGARDING AMENDED**
**PETITION FOR WRIT OF**
***HABEAS CORPUS***

(Docket No.61)

The court has now before it the merits of Mr. Jimmy A. Lampley's amended petition for writ of *habeas corpus* filed pursuant to 28 U.S.C.§ 2254. (Docket No. 61). The motion is supported by a document styled as an amended petition, which was filed after a status conference directing that Lampley file an opening brief. (Docket No. 61). Docket No. 61 is therefore deemed an opening brief in support of the remaining claims of his petition (others were previously dismissed), specifically, claims a 1 and 5. Count 1 relates to violation of First Amendment-free speech violations, and Count 5 makes a claim of denial to the right to self representation. The respondent filed an opposition at docket No. 68, and Lampley filed a reply brief at docket No. 71. At the court's direction the respondent lodged and identified pertinent portions of the transcript. (Docket No. 73). Oral argument has not been requested and is not deemed necessary. For the reasons that follow, Lampley's petition should be denied.

1

**FACTS**

Lampley was convicted at trial of 13 counts of A.S. 11.56.740 (violating a domestic violence restraining order (DVRO)). Lampley's former girlfriend (D.M.) had obtained the DVRO against him after he assaulted her. The order, which was served on Lampley while in custody following the assault, prohibited him from contacting D.M. in any way. Lampley proceeded to write 11 letters to DM which included several threats against her, and acknowledgments that he was violating the DVRO. D.M. then obtained a long term (six-month) DVRO against Lampley. Lampley proceeded to write two more letters to D.M. The 13 letters served as the basis for 13 charges and convictions against Lampley. The trial judge found that Lampley conducted himself in such a way that he would not be permitted to represent himself. He was, however, permitted to act as co-counsel.

**DISCUSSION**

Much of the initial parts of the respondent's briefing is focused on the failure of Lampley to raise aspects of his claims before the state courts. But the court has now before it the merits of the Claims 1 and 5, not a motion to dismiss them based on a failure to exhaust. Nonetheless, this matter is readily dispensed with in the respondent's favor.

Under 28 U.S.C. § 2254(d) an application for writ of *habeas corpus* must be denied unless the state court's handling of the claim:

> (1) resulted in a decision that was contrary to, or involved and unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**1. The First Amendment Claim**

Lampley's claim that his First Amendment right to free speech was violated by the DVROs borders on frivolous and is flatly untenable. The First Amendment does not protect speech which is threatening. *Watts v. United States,* 394 U.S.705,707-708 (1969). In the context of a threat against the President of the United States, for instance, the threat must be a true "threat", not merely vituperative political hyperbole. *Id.* at 708. *Watts* teaches that the First Amendment protection of speech which can be construed as threatening requires a contextual analysis balancing government interest in accomplishing certain ends (i.e. the "valid, even overwhelming interest" in protection of the President) against the nature of the speech and the constitutional interest in affording it protection (i.e. robust, albeit often sharp and crude, political expression). In *Watts* the context of the speaker's threat was found to be political and insufficiently "true" to be found to violate the statute prohibiting threats of bodily harm against the president. '"True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."' *Virginia v. Black,* 538 U.S. 343, 359-360 (2003) citing *Watts, supra* at 708.

In the case at bar, the context of Lampley's communications to D.M. are against the backdrop of his having been incarcerated for physically assaulting D.M, and then being served with two DVROs prohibiting his communicating with her. He chose to ignore that express prohibition. At first glance, and implicit in Lampley's argument, this case challenges a prior restraint of speech, making consideration of violating a court order impertinent. Lampley would have the court focus instead on the content of the letters, which he contends was "offensive and uncaring" but not "true threats". Even if that were the case – and the court's review of the letters easily reveals that they do

contain passages that might well have intimidated or been intended to intimidate D.M.[1] – it would be of no consequence. The State of Alaska has an overwhelming interest in protecting victims of domestic violence. *See Jacko v. State,* 981 P.2d 1075, 1079 (Alaska App. 1999). Preventing the perpetrators of such violence from communicating in any way with the their victims is consonant and narrowly tailored to that interest. The proper thing for Lampley to have done would have been to challenge the DVROs, not to violate them. Instead, he chose to break the law and then complain that the law was illegal based on the content of the speech in the letters. This case is not a case of "content discrimination". *See R.A.V. v. St. Paul,* 505 U.S. 377, 386-388. Rather, the DVRO's and A.S. 11.56.740 were content neutral. *See Frisby v. Schultz,* 487 U.S. 474 (1988) (upholding, against facial challenge, a content neutral ban on targeted residential picketing). In fact the violation of the DVRO's made the letters *per se* threatening because they showed that despite a court order to not communicate with D.M., Lampley could contact her at will, even while incarcerated. That is another way of saying you can't get away from me, and I can get you. This is precisely the sort of threat of a victim that is not protected speech. The regulation of Lampley's speech under the DVRO's was narrowly tailored so as to attain a permissible end without unduly infringing on freedom of speech. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571 (1942). Ergo, Lampley's letters, taken in context, constituted "true threats", and the DVRO's did not violate his First Amendment right of free speech.

    Thus, Lampley has not met his burden under 28 U.S.C. § 2554(d) because the decision of the Alaska Courts to uphold his convictions was not contrary to, or did

---

[1] For example, references to D.M.'s likely testimony, his anger at her while still loving her, and stating: "Fuck the COPS, JUDGES, D.A.'s all to the Greatest Depths of HELL! I'm done being screwed for no reason, so now I'm gonna give a whole lot of reason unless I'm cut loose otta here soon!!... Action is the sole medium of expression." And stating: "You scrambled my fucking brain all to HELL. I guest what I'm saying is 70-75% of the time I feel that I'm being mentally abused by you."

not involve, an unreasonable application of clearly established Federal Law, as determined by the Supreme Court of the United States. Therefore, his first claim for relief should be denied.

**2. The Claim Of Denial Of The Right To Self Representation**

Lampley's fifth claim for relief alleges that he was denied his right to self representation. Lampley was represented by appointed counsel. The facts surrounding this issue are set out at *Lampley v. State,* 33 P.3d 184, 188-189 (Alaska App. 2001). At the beginning of trial Lampley's counsel informed the trial judge that Lampley wished to discharge her and represent himself. In response to questions from the judge, Lampley explained at length (and in an often rambling fashion) that he wished to represent himself because he believed that his attorney was manipulating him to do things he did not want to do and was refusing to accede to his wishes about how to litigate the case. The court has reviewed that colloquy and other colloquies between the trial court and Lampley. That review leaves the court clearly convinced that the trial court made a legally sound, fundamentally fair, and necessary decision in denying Lampley's request to represent himself.

Lampley's ramblings showed that he was indeed prone to disruption. He went on to become – at least – implicitly threatening to the court by stating that if the court denies him his right to self representation and he "is going to get screwed out of my freedom":

> And when I'm screwed out of my freedom, I'm going to do what every American soldier does to fight for our country: I'm going to start killing people. I'm going to fight for what's mine. I have a constitutional right, and you, Your Honor, are not going to take that from me.

Other pertinent parts of the transcript include *inter alia* Lampley being assaultive – including spitting on the prosecutor – physically uncooperative with court security

personnel, implied threats, and using the phrase "Fucking cunt" which, despite Lampley's later claim that those words were not directed at the trial judge, she concluded they were.  The bottom line is that the trial judge's good judgment was confirmed by Lampley's continued disruptive conduct.

True, a criminal defendant has constitutional right to represent himself. *Faretta v. California,* 422 U.S. 806, 821 (1975).  As the Alaska Court of Appeals aptly stated, however:  "this is a conditional right.  The court can deny a defendant's request for self-representation if the defendant is not minimally capable of presenting their case in a coherent fashion.  And even if the defendant is capable of presenting a coherent case, a court can nevertheless deny a request for self-representation if the defendant is not capable of conducting their defense without being unusually disruptive." *Lampley,* 33 P.3d at 189.  *Lampley* cites to other state court cases on this point.  But as another Alaska case points out *Faretta* indicates an alternate ground for denying self representation "[i]f the trial court is convinced by the defendant's behavior that the defendant, regardless of competence, will not obey reasonable rules governing the presentation of evidence and courtroom decorum, the court may disqualify an otherwise competent individual from self-representation in order to enable the trial to proceed." *Burks v. State,* 748 P.2d 1178 (Alaska App. 1988).  The court's reading of *Faretta* is consonant with the Alaska Court of Appeals in *Burks*.  The trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. *Faretta,* 422 U.S. at 834 n.46 citing *Illinois v. Allen,* 397 U.S. 337 (1970). In *Illinois v. Allen,* 397 U.S. 337, 344 (1970) the Supreme Court also instructs that a defendant whose disruptive behavior threatens to prevent a trial from proceeding may be bound and gagged in the presence of a jury if that is the "fairest and most reasonable way to handle a defendant."  Hence, there is no clearly established federal law that the right to self representation is absolute.  Thus, Lampley's petition fails to meet the

requirement of 28 U.S.C. § 2254(d) that the state court's adjudication resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of The United States. Accordingly, his petition should be denied as to his fifth claim.

## CONCLUSION

For the foregoing reasons, Lampley's remaining claims – his first and fifth claims – are without merit, and his petition for writ of *habeas corpus* at docket No. 61 should be **DENIED.**

DATED this 18<u>th</u> day of February, 2008, at Anchorage, Alaska.

 /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to Federal Rule of Civil Procedure 72(b), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **the close of business on Februray 28, 2008**. The failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers.

Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed **no later than the close of business on March 7, 2008**.

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).